# UNITED STATES DISTRICT COURT DISTRICT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **GERALD GEORGE, CATHY DUNN,** | ) | |
| **TIMOTHY STREFF, and** | ) | |
| **ANDREW SWANSON,** | ) | **CASE NO.** |
| **individually and as representatives** | ) | |
| **of a class of similarly situated persons,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **CLASS ACTION COMPLAINT** |
| | ) | **FOR BREACH OF FIDUCIARY** |
| **v.** | ) | **DUTY** |
| | ) | |
| **KRAFT FOODS GLOBAL, INC.,** | ) | |
| **KRAFT FOODS GLOBAL INC.** | ) | **JURY TRIAL** |
| **ADMINISTRATIVE COMMITTEE,** | ) | **DEMANDED ON ALL** |
| **BENEFITS INVESTMENT** | ) | **COUNTS AND ISSUES SO** |
| **COMMITTEE, and JIM DOLLIVE,** | ) | **TRIABLE** |
| **KAREN MAY, MARC FIRESTONE,** | ) | |
| **PAMELA KING and TIMOTHY** | ) | |
| **McLEVISH, all in their** | ) | |
| **capacities as members of the** | ) | **FILED: JULY 2, 2008** |
| **Benefits Investment Committee,** | ) | **08CV3799** |
| | ) | **JUDGE CASTILLO** |
| **KRAFT FOODS, INC.,** | ) | **MAGISTRATE JUDGE NOLAN** |
| | ) | |
| **KRAFT FOODS** | ) | **AEE** |
| **GLOBAL, INC. MANAGEMENT** | ) | |
| **COMMITTEE OF EMPLOYEE** | ) | |
| **BENEFITS,** | ) | |
| | ) | |
| **COMPENSATION** | ) | |
| **AND GOVERNANCE COMMITTEE** | ) | |
| **OF THE KRAFT FOODS, INC. BOARD** | ) | |
| **OF DIRECTORS,** | ) | |
| | ) | |
| **KRAFT BENEFITS** | ) | |
| **INVESTMENT GROUP,** | ) | |
| | ) | |
| **CORPORATE EMPLOYEE PLANS** | ) | |
| **INVESTMENT COMMITTEE OF THE** | ) | |
| **BOARD OF DIRECTORS OF** | ) | |
| **ALTRIA GROUP, INC.** | ) | |
| **(f/k/a Philip Morris Companies Inc.** | ) | |

ALTRIA CORPORATE )
SERVICES, INC., )
                )
BENEFITS )
INVESTMENT GROUP OF ALTRIA )
CORPORATE SERVICES, INC., )
                )
        Defendants. )

## COMPLAINT FOR BREACH OF FIDUCIARY DUTY

### INTRODUCTION

1.      In this action, pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a), Plaintiffs

and Class Representatives on behalf of the Kraft Foods Global Inc. Thrift Plan, Plan No.

125, (the "Plan") and similarly situated participants and beneficiaries in the Plan seek to

recover the losses suffered by the Plan on a plan wide basis and to obtain injunctive and

other equitable relief for the Plan from the defendants based upon their breaches of their

fiduciary duties.

2.      As set forth in detail below, by subjecting the Plan and its participants to

the conduct set forth below, the defendants violated their fiduciary obligations under

ERISA.

### PARTIES, JURISIDCTION, AND VENUE

#### Plaintiffs

3.      Plaintiff and Class Representative Gerald George is a resident of Rancho

Cucamonga, California.  He is a participant in the Plan within the meaning of ERISA §

3(7), 29 U.S.C. § 1002(7).

4.      Plaintiff and Class Representative Cathy Dunn is a resident of Marion, Illinois, within the Southern District of Illinois. She is a participant in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

5.      Plaintiff and Class Representative Timothy Streff is a resident of Shawnee, Kansas. He is a participant in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

6.      Plaintiff and Class Representative Andrew Swanson is a resident of Columbia, Missouri. He is a participant in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

## Defendants

7.      Defendant Kraft Foods, Inc. is a Virginia corporation with its headquarters in Northfield, Illinois. Defendant Kraft Foods, Inc. is the parent company and holding company for the Kraft family of companies. Upon information and belief, Defendant Kraft Foods, Inc. entered into a Services Agreement with Altria Corporate Services, Inc., formerly known at that time as the Philip Morris Management Corp., for the purpose of Altria Corporate Services, Inc. and its agents providing a variety of services to Defendant Kraft Foods, Inc. including but not limited to certain employee retirement services including, *inter alia*, identifying, selecting, and monitoring investment options and advisors for the Plan. Further, and upon information and belief, Defendant Kraft Foods, Inc., through its board members and agents, exercised discretionary control and authority over Plan assets and the administration of the Plan. As such, Defendant Kraft Foods, Inc. was and/or is a fiduciary within the meaning of ERISA, § 3(21)(A), 29 U.S.C. § 1002(21)(A).

8.      Defendant Kraft Foods Global, Inc., formerly known as Kraft Foods North America Inc. is a Delaware registered corporation with its headquarters in Northfield, Illinois.  It employs more than 94,000 people worldwide.  Kraft is the world's second largest food and beverage company, manufacturing and marketing many popular snacks and other food items.  It is the sponsor of the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B), and is the employer and principal of the Plan's administrators.  It is a "named fiduciary" to the Plan within the meaning of ERISA § 402, 29 U.S.C. § 1102, and a fiduciary with respect to the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

9.      Upon information and belief, Defendant Kraft Foods Global, Inc. Management Committee of Employee Benefits ("MCEB"), acting by and through its members and/or employees, was and/or is the Plan Administrator of the Plan within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).  It is also a fiduciary within the meaning of ERISA, § 3(21)(A), 29 U.S.C. § 1002(21)(A).

10.     Defendant Kraft Foods Global Inc. Administrative Committee ("Administrative Committee") has been and/or was delegated the authority and discretion to control the operation and administration of the Plan by the MCEB.  It is thus a Plan Administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).  It is also a fiduciary within the meaning of ERISA, § 3(21)(A), 29 U.S.C. § 1002(21)(A).

11.     Upon information and belief, Defendant Compensation and Governance Committee of the Kraft Foods, Inc. Board of Directors ("CGC") acting by and/or through its members, W. James Farrell, John C. Pope, Mary L. Shapiro, and Deborah Wright, was a named fiduciary and/or was and/or has been delegated the authority and discretion to

control and manage the investments of the Plan, and is responsible for appointing investment managers, trustees, and monitoring investment performance. Thus it is a fiduciary within the meaning of ERISA, § 3(21)(A), 29 U.S.C. § 1002(21)(A).

12.    Upon information and belief, the Compensation and Governance Committee of the Kraft Foods, Inc. Board of Directors has and/or had five (5) members: (1) W. James Farrell, (2) John C. Pope; (3) Mary L. Shapiro; and (4) Deborah C. Wright. As members of this committee, these individuals were and/or are fiduciaries to the Plan within the meaning of ERISA § 402, 29 U.S.C. § 1002, and ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

13.    Defendant Kraft Foods Global, Inc. Benefits Investment Committee ("BIC") has and/or had the authority and discretion to control and manage the investment operations of the Plan. Specifically, it has and/or had the authority and discretion to

> determine the advisability of establishing or modifying the description of any Investment Fund … made available under the Plan, to establish investment guidelines … to monitor the investment performance of each of the Investment Funds under the Plan and the fiduciaries responsible for the investment of Plan assets … and to coordinate with [other fiduciaries] on making available sufficient information to enable Participants, inactive Participants and beneficiaries to make informed investment decisions; and on performing any and all acts necessary to obtain the relief offered by section 404(c) of ERISA.

The BIC is a named fiduciary within the meaning of ERISA § 402, 29 U.S.C. § 1102, and is a Plan administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

14.    According to the documents describing the Plan, the Benefits Investment Committee has and/or had five members: (1) Jim Dollive, the former Executive Vice

President and Chief Financial Officer; (2) Karen May, the Executive Vice President, Global Human Resources; (3) Marc Firestone, the Executive Vice President, Corporate & Legal Affairs and General Counsel, a newly created position believed to be the successor position to the duties of the position known as "Executive Vice President, General Counsel and Corporate Secretary"; (4) Pamela King, the current occupant of the position of Senior Vice President and Controller; and (5) Timothy McLevish, the new Executive Vice President and Chief Financial Officer.  As members of this committee, Mr. Dollive, Ms. May, Mr. Firestone, Ms. King, and Mr. McLevish are and/or were fiduciaries to the Plan within the meaning of ERISA § 402, 29 U.S.C. § 1102, and ERISA§ 3(21)(A), 29 U.S.C. § 1002(21)(A), and are also Plan administrators within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

15.    Upon information and belief, Defendant Kraft Benefits Investment Group, acting by and/or through its members and/or employees, was and/or has been delegated authority and discretion to control the investment operations of the Plan.  It is thus a Plan administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).  It is also a fiduciary within the meaning of ERISA, § 3(21)(A), 29 U.S.C. § 1002(21)(A).

16.    Corporate Employee Plans Investment Committee of the Board of Directors of Altria Group, Inc. f/k/a the Investment Committee of the Philip Morris Companies Inc. Board of Directors (herein referred to as "CEPIC"), acting by and/or through its members John O. Nichols, Carlos Slim Helu, John S. Reed, Jane Evans, Harold Brown, and L. C. Camilleri was a named fiduciary and/or was and/or has been delegated authority and discretion to control the operation, administration, management and/or investment operations of the Plan.  It was and/or is a Plan administrator within the

6

meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).  It was and/or is also a

fiduciary within the meaning of ERISA, § 3(21)(A), 29 U.S.C. § 1002(21)(A).

17.    Upon information and belief, Defendant Altria Corporate Services, Inc.

("Altria CSI"), formerly known as the Philip Morris Management Corp. and a subsidiary

to Altria Group, Inc., was and/or is a service provider providing advice, assistance,

compliance and associated services in areas such as human resources, corporate affairs,

and finance to its parent company, Altria Group, Inc and its operating companies,

including Kraft.  Altria CSI and its predecessors was and/or has been delegated authority

and discretion to, among other things, control and manage the investment operations of

the Plan.  In this role, Altria CSI exercised discretionary control and authority over Plan

assets, plan administration, and/or plan management.  Altria CSI was and/or is a fiduciary

to the Plan within the meaning of ERISA, § 3(21)(A), 29 U.S.C. § 1002(21)(A).  Altria

CSI is and/or was also a Plan administrator within the meaning of ERISA § 3(16)(A), 29

U.S.C. § 1002(16)(A).

18.    Upon information and belief, Defendant Benefits Investment Group of

Altria Corporate Services, Inc. f/k/a the Philip Morris Benefit Investments Group (herein

referred to as "BIG Altria"), has been and/or was delegated authority and discretion to,

among other things, control, track, and manage the investment and administrative

operations of the Plan.  In this role, BIG Altria exercised discretionary control and

authority over Plan assets, Plan administration, and/or Plan management.  BIG Altria is a

fiduciary within the meaning of ERISA, § 3(21)(A), 29 U.S.C. § 1002(21)(A).

19.    Unless specified otherwise, Kraft Foods, Inc., Kraft Foods Global, Inc.,

MCEB, Administrative Committee, CGC, BIC, Mr. Dollive, Ms. May, Mr. Firestone, Ms.

King, Mr. McLevish, and Kraft Benefits Investment Group are referred to herein as "Kraft Defendants" and CEPIC, Altria CSI, and BIG Altria are referred to herein as "Altria Defendants."[1]

## Jurisdiction and Venue

20.    Plaintiffs bring this action pursuant to ERISA §§ 502(a)(2) & (3), 29 U.S.C. § 1132(a)(2) & (3), which provide that participants may pursue civil actions on behalf of the plan to remedy breaches of fiduciary duty as set forth in ERISA § 409, 29 U.S.C. § 1109, and to obtain other appropriate equitable relief.  This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. §1132(e)(1)(2).

21.    All Defendants are subject to service of process issued from this Court pursuant to 29 U.S.C. § 1132(e)(1).

22.    Venue is proper in this Court pursuant to 29 U.S.C. § 1132 (e)(2).

## The Plaintiff Class

23.    Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and all similarly situated Plan participants and beneficiaries.  They seek to represent the following class (the "Class"):

> All persons, *excluding the Defendants, the Committees and their members and/or other individuals who are or may be liable for the conduct described in this Complaint,* who are or were participants or beneficiaries of the Plan and who are, were or may have been affected by the conduct set forth in this Complaint, as well as those who will become participants or beneficiaries of the Plan in the future.

---

[1]   For those allegations claimed "upon information and belief," Plaintiffs state that the information detailing and explaining the corporate organization of the Defendants, the management and oversight of the Plan and involvement with the Plan is in the exclusive possession of the Defendants.

24.    Certification of this class is proper under Rule 23(a) because all of its prerequisites are satisfied:

   a. **Numerosity.** The members of the Class are so numerous that joinder of all members is impracticable. Although the Plaintiffs do not know the exact number of class members as of the date of filing, there were 43,737 participants with account balances in the Plan at the end of the 2004 plan year.

   b. **Commonality.** Common issues of fact and law predominate over any issues unique to individual class members. Issues that are common to all class members include, but are not limited to, whether the Kraft Defendants and the Altria Defendants, as described in more detail in counts I through IV:

      i.    Charged fees and expenses to the Plan that were, or are, unreasonable and/or not incurred solely for the benefit of Plan participants;

      ii.   Caused the Plan to enter into agreements with third parties which caused and/or allowed the Plan to pay fees and expenses that were, or are, unreasonable and/or not incurred solely for the benefit of Plan participants;

      iii.  Failed to monitor fees and expenses paid by the Plan and, by such failure, caused or allowed the Plan to pay fees and expenses that were, or are, unreasonable and/or not incurred solely for the benefit of Plan participants;

iv.   Failed to inform themselves of, and understand, the various methods by which vendors in the 401(k) retirement industry collect payments and other revenues from 401(k) plans;

v.   Failed to establish, implement, and follow procedures to properly and prudently determine whether the fees and expenses paid by the Plan were reasonable and incurred solely for the benefit of Plan participants;

vi.   Failed properly to inform and/or disclose to Plan participants the fees and expenses that are, or have been, paid by the Plan;

vii.   Failed to inform and/or disclose to Plan participants in proper detail and clarity the transaction fees and expenses which affect participants' accounts balances in connection with the purchase or sale of interests in investment alternatives;

viii.   Breached their fiduciary duties by failing to disclose that hidden and excessive fees were and are being assessed against Plan assets and by failing to stop such hidden excessive fees;

ix.   Appointed and/or delegated as fiduciaries persons who did not fulfill their fiduciary duties, failed to monitor and/or oversee the performance of those fiduciaries and to ensure

that they were fulfilling those duties, and failed to terminate the fiduciaries' appointment after breaches occurred;

x.   In charging, causing to be charged or paid, and failing to monitor the fees and expenses of the Plan, failed to exercise the care, skill, prudence, and diligence that a prudent person would when acting in like capacity and familiar with such matters;

xi.   Caused the Plan to maintain an excessive amount of cash in the investment options, including the stock funds;

xii.   Caused the Plan to include and retain imprudent investment options in the Plan;

xiii.   Failed to prudently oversee the performance of the investment options in the Plan;

xiv.   Failed to investigate the existence and/or availability of prudent investment options available to a retirement plan the size of the Plan at issue;

xv.   Caused and/or allowed fees and expenses to be paid by the Plan for purposes other than those allowed by ERISA;

xvi.   By the conduct above and/or by other conduct set forth in this Complaint, revealed in discovery and/or proven at trial, breached their fiduciary and other ERISA-imposed obligations to the Plan, Plan participants, and members of the Class;

xvii. By the conduct above and/or by other conduct set forth in this Complaint, revealed in discovery and/or proven at trial, caused the Plan to incur substantial losses as a result of the inclusion of imprudent investment options in the Plan;

xviii. Are liable to the Plan and the Class for those losses, including performance losses, suffered as a result of the breaches of their fiduciary and other ERISA-imposed obligations; and

xix. Are responsible to account for the assets and transactions of the Plan and should be charged for any transactions and payments for which they cannot account.

c. **Typicality.** The Claims brought by the Plaintiffs are typical of those of the absent class members because:

i. The Defendants owed the exact same fiduciary and other ERISA-based obligations to each Plan participant and each member of the Class;

ii. The Defendants' breach of those obligations constitutes a breach to each participant and each member of the Class;

iii. To the extent that there are any differences among the Class members' damages, such differences would be a product of simple mathematics based upon their account balances in the Plan. Such minimal and formulaic differences are no impediment to class certification.

d. **Adequacy of Representation.** The Plaintiffs are adequate representatives of the absent class members and will protect such absent class members' interests in this litigation. The Plaintiffs do not have any interests antagonistic to the other class members nor do they have any unique claims or defenses that might undermine the efficient resolution of the class claims. Plaintiffs have retained competent counsel, versed in ERISA, class actions, and complex litigation.

25. Class certification is also appropriate under Rule 23(b) and each subpart because:

a. Pursuant to Rule 23(b)(1)(B), in the absence of certification, there is a risk of inconsistent adjudications with respect to individual class members;

b. Pursuant to Rule 23(b)(2), as set forth above, the Defendants have acted on grounds generally applicable to the Class as a whole;

c. Pursuant to Rule 23(b)(3), as set forth above, common issues of law and fact predominate over any purely individual issues and thus a class action is superior to any other method for adjudicating these claims.

## **FACTS**

### **The Plan**

26. Kraft offers certain of its employees the opportunity to participate in the Plan, as part of their compensation and benefits. The Plan is a "defined contribution

plan," as defined in ERISA § 3(34), 29 U.S.C. § 1002(34) and contains an employee

stock ownership plan provision. It is also a tax-qualified plan of the type popularly

known as a "401(k) plan."

27.    Unlike the traditional pension plan, which is a defined benefit plan

providing a fixed sum to participants, with investment risk and fees borne by the

employer, in a 401(k) plan, which is a defined contribution plan, investment risk and fees

are borne by employees and retirees, 401(k) plans have become the predominant

retirement vehicle in America.

28.    The Plan was established and is operated under a Plan Document. The

assets of the Plan are held in a single trust fund known as the Kraft Foods Global Inc.

Master Defined Contribution Trust (the "Master Trust").

29.    Generally, a "master trust" is a separate trust entity established by an

employer or group of related employers to provide investment and administrative

services to a 401(k) plan or plans. Plan sponsors and administrators generally utilize

master trusts to administer multiple 401(k) plans for an employer or related-employer

group (*e.g.* a company or related companies that maintain salaried and hourly employee

plans; plans formerly sponsored or administered by a company which the employer has

acquired or with whom the employer has merged; plans which include only employees of

a bargaining unit or represented by a labor organization, etc.).

30.    In this case, the Master Trust enables the Plan, along with two of Kraft's

other 401(k) plans, to access common investment options and to share the services of the

Master Trust record-keepers, investment managers, consultants, and other service

providers. The fees incurred for such services are allocated between the plans based

upon each Plan's proportionate share of the assets in the Master Trust. The Plan's assets comprise approximately 91% of the assets held in the Master Trust.

31.     Participating employees chose and/or may choose to invest Plan contributions in any of nine investment options selected, retained, approved, recommended and/or authorized by defendants.

32.     The investment options in the Plan, included and/or include the following non-mutual funds: the Euro Equity Fund, the International Equity Fund, the U.S. Mid Cap/Small Cap Fund, the U.S. Large Equity Index Fund, the U.S. Government Obligations Fund, and the Interest Income Fund. In addition to these investment options, the Plan includes and/or included two actively managed mutual funds, the Balanced Fund and the Growth Equity Fund.

33.     The Plan also offers and/or offered participants the option of investing in two single-stock funds. The Altria Stock Fund was a fund that held, in part, common stock of Altria Group, Inc., (f/k/a Philip Morris, Inc.). The Kraft Foods Stock Fund holds and has held, in part, Kraft's common stock.

34.     Nearly all of the fees and expenses incurred in administering the Plan and investing its assets are paid from the Plan's assets, whether from the Master Trust or directly from the Plan. This means that ultimately the participants bear those costs.

35.     By the end of 2005, the Plan had over $5 billion in assets held in the Master Trust. Of those assets, over $1 billion was in the Altria Stock Fund.

### Fiduciary Duties Owed To The Plan Under ERISA

36.     ERISA §403(c)(1), 29 U.S.C. §1103(c)(1), unambiguously mandates that:

> [T]he assets of a plan shall never inure to the benefit of any employer and shall be held for the **exclusive purposes of providing benefits** to

participants in the plan and their beneficiaries **and defraying reasonable expenses of administering the plan.**

(Emphasis added).

37.    ERISA §§ 404(a)(1)(A)&(B), 29 U.S.C. § 1104(a)(1)(A) & (B), require that Plan fiduciaries, "shall discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries" and:

    a.  [F]or the exclusive purpose of:
        i.  providing benefits to participants and their beneficiaries; and
        ii.  defraying reasonable expenses of administering the plan; and
    b.  [W]ith the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

38.    ERISA § 405(a), 29 U.S.C. § 1105(a), provides that one fiduciary may be held liable for breaches of fiduciary duty committed by another fiduciary where

(1) the fiduciary "participates knowingly in or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach";
(2) the fiduciary, by his or her "failure to comply with section 1104(a) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary" enables "such other fiduciary to commit such a breach"; or
(3) the fiduciary "has knowledge of a breach by such other fiduciary," and does not make "reasonable efforts under the circumstances to remedy the breach."

39.    ERISA § 406, 29 U.S.C. § 1106, prohibits certain transactions between the Plan and "parties in interest." This section provides that unless subject to an exemption as set forth in ERISA § 408, 29 U.S.C. § 1108, a fiduciary

shall not cause the plan to engage in a transaction … if he knows or should know that such a transaction constitutes a direct or indirect – sale or exchange, or leasing, of any property between the plan and a party in interest … furnishing of goods, services or facilities between the plan and a party in interest … transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan.

29 U.S.C. § 1106(a)(1).

40.     For purposes of section 406, a "party in interest" is any plan fiduciary, including the plan administrator, trustee, officer or custodian, any plan services provider, the employer, a relative of any of the above, and certain persons with ownership or leadership roles in any of the above.  ERISA § 3(14), 29 U.S.C. § 1002(14).

41.     Similarly, a fiduciary (1) shall not "deal with the assets of the plan in his own interest or for his own account"; (2) shall not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan" or its participants and beneficiaries; and (3) shall not "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."  29 U.S.C. § 1106(b).

42.     ERISA §104(b)(1), 29 U.S.C. § 1024(b)(1), requires that the Plan Administrator periodically provide to Plan participants and beneficiaries a summary plan description (an "SPD").

43.     ERISA §104(b)(3), 29 U.S.C. § 1024(b)(3), requires that the Plan Administrator at least annually provide to Plan participants and beneficiaries copies of statements and schedules from the Plan's annual report for the previous year, and such additional information "as is necessary to fairly summarize the latest annual report."

44.     The schedules and statements that the Plan Administrator annually must provide to Plan participants and beneficiaries specifically include:

> a.  [A] statement of the assets and liabilities of the plan aggregated by categories and valued at their current value, and the same data displayed in comparative form for the end of the previous fiscal year of the plan; and

        b.  [A] statement of receipts and disbursements during the preceding twelve-month period aggregated by general sources and applications.

*See* ERISA §103(b)(3), 29 U.S.C. §1023(b)(3).

45.      ERISA §104(b)(4), 29 U.S.C. § 1024(b)(4), entitles Plan participants and beneficiaries to receive more detailed information from the Plan Administrator on request:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

46.      ERISA §103(b)(2)&(3), 29 U.S.C. §1023(b)(2)&(3), mandates that, among other extensive disclosures, Plan fiduciaries must include in the Plan's "Annual Report"

> a statement of [the Plan's] assets and liabilities, and a statement of changes in net assets available for plan benefits which shall include details of revenues and expenses and other changes aggregated by general source and application.

47.      ERISA § 404(c) provides to Plan fiduciaries a "Safe Harbor" from liability for losses that a participant suffers in his or her 401(k) accounts to the extent that the participant exercises control over the assets in his or her 401(k) accounts. To be eligible for the protection of this "safe harbor," Plan fiduciaries must, among other things, provide:

> a.  an opportunity for a participant or beneficiary to exercise control over assets in his individual account, and
> b.  a participant or beneficiary an opportunity to choose, from a broad range of investment alternatives, the manner in which some or all of the assets in his account are invested.

29 C.F.R. §2550.404c-1(b)(1).

48.    For a participant or beneficiary to have "an opportunity to exercise control over assets in his individual account," Plan fiduciaries must provide him or her with "the opportunity to obtain sufficient information to make informed decisions with regard to investment alternatives under the Plan." 29 C.F.R. §2550.404c-1(b)(2)(B).

49.    The "sufficient investment information" Plan fiduciaries must provide includes:

> A description of any transaction fees and expenses which affect the participant's or beneficiary's account balance in connection with purchases or sales of interests in investment alternatives (e.g., commissions, sales load, deferred sales charges, redemption or exchange fees).

29 C.F.R. §2550.404c-1(b)(2)(i)(B)*(1)(v)*.  At least upon request, it must include

> A description of the annual operating expenses of each designated investment alternative (e.g., investment management fees, administrative fees, transaction costs) which reduce the rate of return to participants and beneficiaries, and the aggregate amount of such expenses expressed as a percentage of average net assets of the designated investment alternative.

29 C.F.R. §2550.404c-1(b)(2)(i)(B)*(2)(i)*.

50.    ERISA's Safe Harbor Regulations state that the imposition of *reasonable* charges for *reasonable* Plan expenses does not interfere with a participant's opportunity to exercise control over his or her individual account so long as *Plan fiduciaries inform the participant* of such actual expenses:

> A plan may charge participants' and beneficiaries' accounts for the reasonable expenses of carrying out investment instructions, *provided that procedures are established under the plan to periodically inform such participants and beneficiaries of actual expenses incurred with respect to their respective individual accounts.*

29 C.F.R. §2550.404c-1(b)(2)(ii)(A) (emphasis added).

**Operation of the Plan**

51.    During all relevant times, the MCEB was and/or is the Plan Administrator of the Plan and as such had and/or has the responsibility and authority to control and manage certain functions of the Plan.

52.    During all relevant times, the MCEB delegated authority and responsibility to the Administrative Committee.

53.    During all relevant times, the Administrative Committee delegated responsibilities for the day-to-day administration of the Plan to the Kraft Benefits Department.  The responsibilities of the Benefits Department included and/or includes the selection of certain service providers, communicating with Plan participants, and preparing required reports to the government.

54.    Since 2004 the BIC had and/or has authority and/or responsibility to control and manage the investment operations of the Plan, including, among other things, authority to appoint trustees, custodians, and investment managers.  In addition the BIC had and/or has responsibility to monitor the performance of the investment options and the investment managers in and/or for the Plan.  These investment options and their managers included and/or include the Growth Equity Fund and the Balanced Fund.

55.    Prior to the BIC, and between approximately 2001 and 2004, the CGC was named in the Plan as having authority and responsibility to select, control and manage the investment operations of the Plan.

56.    Prior to the CGC, and upon information and belief, from 1990 to 2001, the CEPIC was named in the Plan as having authority and responsibility to select, control and manage the investment operations of the Plan.

57.    Upon information and belief, from 1990 to March 30, 2007, the BIC, CGC, and CEPIC delegated, pursuant to the above-referenced Services Agreement between Kraft Foods, Inc. and Altria Corporate Services, Inc., certain duties, including provision of administrative oversight of the Master Trust and Plan and tracking of investment and other expenses of the Plan to the Benefits Investment Group of ALCS.

58.    Since March 30, 2007, and as of the filing of this Complain, the BIC delegated responsibilities and duties for the investment operations of the Plan to the Kraft Benefits Investment Group.

<u>**The Fees and Expenses Assessed Against The Plan**</u>
**(Altria Defendants)**

59.    The Altria Defendants, either directly or indirectly through the Master Trust, have caused the Plan to purchase services from various plan service providers, including trustee, record-keeping, administration, investment advisory, investment management, brokerage, insurance, consulting, accounting, legal, printing, mailing, and other services.

60.    Either directly or through the Master Trust, the Altria Defendants have caused the amounts that the Plan pays for these services to be assessed against participants' accounts.

61.    Payments in the form of direct disbursements from the Plan or the Master Trust to participants or an entity providing a service to the Plan are characterized as "Hard Dollar" payments.

62.    The Plan discloses to government regulators and Plan participants, in one form or another, Hard Dollar payments made from the Plan to service providers. For

example, the Plan disclosed in filings with government regulators covering plan year 2004, that it paid Hewitt Associates $3,381,789 for record keeping services.

63.     ERISA provides that the fees and expenses incurred in administering and operating the Plan shall be "reasonable" and should only be used for the exclusive purposes of providing benefits to participants in the Plan and their beneficiaries.

64.     When all of the administrative and operational fees and expenses are taken into account, the participants and beneficiaries of the Plan paid unreasonably high fees for the administrative services they received.

## Inclusion of Imprudent Investment Options
### (Kraft Defendants and Altria Defendants)

65.     The prudent and proper selection and monitoring of investment options for the Plan is one of defendants' core fiduciary obligations.

66.     It is and long has been known and recognized in the investment literature that the vast majority of actively managed investments do not consistently outperform passively managed investments such as index funds after fees.  It is equally well known that low cost index funds are easily available in the investment marketplace, that they also have dramatically lower turnover of stocks, producing lower trading costs, and that they guarantee, by definition, a market return.

67.     Kraft and Altria fiduciaries must act as prudent financial experts and, as such, are chargeable with knowledge of the underperformance of actively managed funds after fees, and failed to follow, implement, and/or utilize a process to analyze whether the actively managed investments they selected and maintained were prudent.  They selected and maintained poor performing actively managed investment options for the Plan.

68.    In addition, Kraft and Altria have defined benefit plans, which are corporate obligations in contrast with 401(k) plans.

69.    During the relevant time period, the Plan held in excess of $3 billion in assets. In the financial and investments industry, a large institutional investor with billions of dollars, like the Plan, can routinely capitalize on enormous economies of scale that are prevalent in the investment industry marketplace. Specifically, economies of scale can be leveraged in order to obtain and gain access to far lower cost investment opportunities available to jumbo retirement plans like the Plan.

70.    As fiduciaries, Defendants knew that if they do use actively managed funds, investment options such as separate accounts or co-mingled accounts are available and have far lower expenses than mutual funds because of their massive bargaining power due to the size of the plan, but squandered this leverage and selected and maintained poor performing mutual funds available to much smaller investors, even individual investors with as little as $500 nonetheless as investment options.

71.    The investment options available to jumbo Plans offer various investment styles (large cap, value, growth, balanced growth, small cap, international equity, etc.) like mutual funds yet avoid the costs and drawbacks involved in using mutual funds in a retirement plan, such as imprudent levels of risk, high investment management fees, undisclosed distribution agreements, high portfolio turnover, need for holding cash and hidden trading costs.

72.    Such investment options also avoid subjecting Plan participants to conflicts of interest inherent in large mutual fund organizations. Mutual fund managers'

own profit motive conflict with investors' interest in reducing fees to maximize their returns.

73.    Defendants know and acknowledged the inherent risks and drawbacks of publicly available actively managed mutual funds since other investment options in the Plan were separate accounts and collective funds.

74.    Despite the above, from the mid 1990's until 2005, Defendants have included at least two actively managed mutual funds among the Plan's investment options.

75.    Specifically, in 1994, BIG Altria recommended that the Growth Equity Fund and the Balanced Fund be added to the investment option lineup in the Plan.

76.    The Growth Equity Fund was invested in the Twentieth Century Heritage Investors retail mutual fund which was managed by American Century Investors.  During the relevant time period, the Growth Equity Fund charged annual operating expenses which were multiples of  the operating expenses of other available investment options, incurred extraordinary turnover, and suffered tremendous performance losses.

77.    The Balanced Fund was and is invested in the DWS Lifecycle Long Range mutual fund f/k/a the Deutsche Asset Management – Premier Class Fund, the Scudder Lifecycle Long Range Fund, and the Scudder Asset Management Fund which has been and/or is managed by Bankers Trust, Deutsche Asset Management, and Deutsche Investment Management Americas, Inc.  During the relevant time period, the Balanced Fund charged annual operating expenses of as much as four times the operating expenses of other available investment options and, like the Growth Equity Fund, suffered performance losses.

78.     Defendants breached their fiduciary duties by including these two mutual funds in the Plan, and their breaches continued as they retained those two mutual funds in the Plan.  Defendants also failed to implement, follow, and/or utilize a meaningful process to review the continued presence of the funds in the Plan.

79.     On information and belief, Defendants' selection and maintaining of these funds in the Plan is also a result of conflicts of interest by which Defendants have placed their own corporate interests ahead of the exclusive interest of Plan participants as required, thereby committing prohibited transactions in violation of ERISA § 406(a) and (b).

80.     Defendants deliberately concealed from Plan participants: their knowledge that the funds they selected and maintained could not be expected to outperform an index, that they had far lower cost investment options available, and their conflicts of interest in selecting investment options.

81.     The result of including and maintaining these imprudent investment options in the Plan and Defendants' breaches has been to cause substantial investment losses for the Plan and the participants.

82.     Both Growth Equity Fund and the Balanced Fund tremendously underperformed Kraft's chosen benchmark and accumulated substantial losses to the Plan and the participants, which would have been avoided had Defendants not breached their fiduciary duties.

83.     Defendants' practices regarding the Plan, in which employee money is at stake, are different from their practices in the company pension plan, where corporate money is involved.

84.    Defendants actively concealed material information regarding the inclusion, retention, and performance of the Growth Equity Fund and the Balanced Fund, and as such, the statute of limitations was tolled on the breaches set forth in this Complaint and did not begin to run until such time as Plaintiffs actually discovered them.

## Investment Management and Other Fees Assessed Against Employer Stock Funds
### (Altria Defendants)

85.    The Altria Stock Fund and the Kraft Foods Stock Fund, are and/or were investment options in the Plan.  By their nature, Employer Stock Funds, like the Altria Stock Fund and the Kraft Foods Stock Fund, are and were undiversified and risky, especially when they represent a disproportionately high percentage of a participant's retirement savings.

86.    Employer Stock Funds may cause 401(k) participants to embrace the risks inherent in undiversified investing and ERISA requires that Defendants' fiduciaries must not choose to include or maintain a company stock fund for its own interests or benefit but instead must run the Plan solely for the benefit of participants.  The risk that an undiversified Employer Stock Fund imposes is greater than that of other undiversified investments.

87.    Employer stock funds, since they hold only company stock funds, and thus do not require stock selection, have no need for investment management fees and require either no or minimal administrative fees.

88.    However, if an Employer Stock Fund's charges fees and expenses, and holds cash, with its minimal return, as both the Altria Stock Fund and the Kraft Foods Stock Fund have done and do, this practice reduces the amount of retirement benefits the

holder of such a stock fund would otherwise receive. This is especially true when the Employer Stock Fund's performance is compared to that of investors who purchase the employer's stock directly, instead of through the employer's 401(k) plan.

89.    Participants in the Plan who invest in either the Altria Stock Fund or the Kraft Foods Stock Fund do not own shares of Altria or Kraft Foods stock directly. They own units of the respective Stock Fund.

90.    Each unit represents a portion of the shares of Altria or Kraft Foods stock in the Fund *and* a portion of the cash also held in the Fund, which has been as much as four percent.

91.    The value of the Stock Fund units is, and has been, reduced by the fees and expenses assessed against the assets in the Fund, and the returns are reduced by the cash – rather than the Altria or Kraft Foods stock – the Fund holds.

92.    As a result, the returns the Plan's participants receive on their investment in the Altria or Kraft Foods Stock Funds are, and have been significantly lower than that of an investor holding a portfolio of pure Altria or Kraft Foods stock outside of the Plan.

93.    If the value of Altria or Kraft Foods stock is rising – as Altria did – or if the stock is paying dividends, participants who place their retirement savings in the Stock Funds naturally want *every* dollar they save to earn such investment gains.

94.    However, the portion of the participant's savings that remains in cash, and is not used to purchase the employer's securities, does not generate such investment gains. Instead, its value remains essentially the same.

95.    For example, if a *non-401(k) investor* purchases 100 shares of Altria stock at $100 per share, and the share value thereafter rises by 10%, he or she has reaped a $1,000 gain on the initial $10,000 investment.

96.    However, a participant placing the same $10,000 in the Altria Stock Fund does not receive 100 shares of the employer stock. He or she receives Altria Stock Fund units representing an interest in the shares of Altria stock held in the Fund *and* an interest in the Fund's cash.

97.    If the Altria Stock Fund held 4% cash and 96% employer stock, the 10% increase in the value of the stock would translate into a $960 gain, instead of the $1,000 earned by the non-Plan investor. The value of the cash held in the Altria Stock Fund would remain essentially static.

98.    In this example to make matters worse, participants investing $10,000 in the Altria Stock Fund also will have to pay fees and expenses. These fees and expenses further reduce the participants' return.

99.    The Altria Stock Fund is and/or was one of the largest of all the investment options available to Plan participants, containing more than one billion participant dollars.

100.    Plan participants' returns in the Altria Stock Fund and Kraft Foods Stock Fund have substantially underperformed those of complete strangers to the Company investing outside of the Plan.

101.    The Altria Defendants deliberately failed to disclose and explain to participants of the Plan that the return participants received on employer stock in the Altria Stock Fund and Kraft Foods Stock Fund was lower than that enjoyed by complete

strangers to the company and actively concealed material information about the Stock Funds.

102.    The Altria Defendants violated their fiduciary obligations under ERISA by maintaining and holding, by causing to be maintained or held, or by allowing to be maintained or held, excess cash in the Altria Stock Fund and Kraft Foods Stock Fund and by charging excessive fees and expenses and thereby impairing participants' returns.

103.    Based upon the conduct as set forth above, the statue of limitations was tolled on the breaches set forth in this Complaint and did not begin to run until such time as Plaintiffs actually discovered them.

## COUNT I:
### Breach of Fiduciary Duty – ERISA §502(a)(2)
### (Altria Defendants)

104.    Plaintiffs restate and incorporate the allegations contained in paragraphs 1 through 103 as though fully set forth here.

105.    As set forth in detail above, the Altria Defendants owe and/or owed the Plan, its participants and beneficiaries, and the Class extensive fiduciary duties including, without limitation:

      a.  To conduct themselves as Plan fiduciaries with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent ERISA professional fiduciary would in operating and administering a 401(k) plan the size and character of the Plan;

      b.  To perform their duties as fiduciaries with the utmost loyalty and fidelity to the Plan and its participants and beneficiaries, avoiding at all times conflicts of interest, self-interest, and duplicity;

c.  To ensure, at all times, that Plan assets "shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the Plan and their beneficiaries and defraying reasonable expenses of administering the Plan;"

d.  To track and account for all transactions involving the Plan and Plan assets so as to ensure that Plan assets are retained, managed, and disbursed in compliance with the Plan Document and ERISA;

e.  To track and account for all transactions involving the Plan and Plan assets so as to ensure that Plan assets "never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the Plan and their beneficiaries and defraying reasonable expenses of administering the Plan;"

f.  To ensure that the fees and expenses incurred by the Plan are reasonable and incurred for the sole and exclusive benefit of Plan participants and beneficiaries;

g.  In entering into agreements with service providers to the Plan, to ensure that the payments from the Plan – whether they are direct or indirect – are reasonable for the services provided and made for the sole and exclusive benefit of Plan participants and beneficiaries;

h.  In operating and administering the Plan, to establish, implement, and follow procedures to properly and prudently determine whether the

fees and expenses paid by the Plan were reasonable and incurred solely for the benefit of Plan participants;

i. In operating and administering the Plan, on an ongoing basis to monitor the payments made by the Plan to service providers – whether they are direct or indirect – are and remain reasonable for the services provided and made for the sole and exclusive benefit of Plan participants and beneficiaries;

j. To inform themselves of, and understand, the various methods by which vendors in the 401(k) industry collect payments and other revenues from 401(k) plans;

k. To inform themselves of trends, developments, practices, and policies in the retirement, financial investment and securities industry which affect the Plan; and to remain aware and knowledgeable of such trends, practices and policies on an ongoing basis;

l. To communicate with Plan participants and beneficiaries regarding the Plan honestly, clearly and accurately;

m. To affirmatively and without request provide Plan participants and beneficiaries with honest, accurate and complete information they need to understand their investments in the Plan; the management, risk, potential returns of such investments, and the fees and expenses incurred in connection with those investments;

n.  Upon request, to provide further any information to Plan participants and beneficiaries regarding the operation and administration of the Plan and the expenses incurred in doing so;

o.  To provide honest, accurate and complete information to Plan participants and beneficiaries regarding the costs associated with their various investment choices and directions;

p.  To appoint fiduciaries who lived up to their fiduciary duties, to monitor and oversee those fiduciaries in the performance of their duties, and to remove fiduciaries who breached their fiduciary duties;

q.  To avoid maintaining excessive amounts of cash in the Plan's stock funds;

r.  To include prudent investment options in the Plan; and,

s.  To avoid significant performance losses in any of the Plan's investment options.

t.  To avoid conflicts of interest and self dealing.

u.  To avoid concealing material information.

106.    As set forth in detail above, the Altria Defendants breached their fiduciary obligations to the Plan, Plan participants and beneficiaries and the Class by, among other conduct to be proven at trial:

a.  Causing the Plan to enter into agreements with service providers under which the Plan pays/paid – directly or indirectly – fees and expenses that were, or are, unreasonable and/or not incurred solely for the benefit of Plan participants and beneficiaries;

b.  Allowing the Plan to pay – directly on indirectly – fees and expenses that were, or are, unreasonable and/or not incurred solely for the benefit of Plan participants and beneficiaries;

c.  Failing to monitor the fees and expenses paid by the Plan and, by such failure, causing and/or allowing the Plan to pay fees and expenses that were, or are, unreasonable and/or not incurred solely for the benefit of Plan participants and beneficiaries;

d.  Failing to follow, implement, and/or utilize a prudent process for selection and retention of investment options in the Plan, including monitoring investment performance, and by such failure, allowing the Plan to include imprudent investment options.

e.  Failing to inform themselves of trends, developments, practices, and policies in the retirement, financial investment and securities industry which affect the Plan; and failing to remain aware and knowledgeable of such trends, practices and policies on an ongoing basis;

f.  Failing to inform themselves of, and understand, the various methods by which vendors in the 401(k) industry collect payments and other revenues from 401(k) plans;

g.  Failing to establish, implement, and follow procedures to properly and prudently determine whether the fees and expenses paid by the Plan were reasonable and incurred solely for the benefit of Plan participants;

h.  Failing to communicate with Plan participants and beneficiaries regarding the Plan honestly, clearly and accurately;

i.  Failing properly to inform and/or disclose to Plan participants the fees, costs and expenses that are, or have been, paid by the Plan;

j.  Failing to inform and/or disclose to Plan participants in proper detail and clarity the transactions, fees, costs and expenses which affect participants' accounts balances in connection with the purchase or sale of interests in investment alternatives;

k.  Failing to discover, disclose and stop the charging of hidden and excessive fees and costs to the Plan;

l.  Failing to appoint fiduciaries who lived up to their fiduciary duties, failing to monitor and oversee those fiduciaries in the performance of their duties, and failing to remove fiduciaries who breached their fiduciary duties;

m.  Including and/or retaining imprudent investment options that underperformed the returns prudent investment options would have returned had the Altria Defendants properly exercised their fiduciary duties.

n.  Upon information and belief, failing to develop a process to recapture the interest earned during "float" periods; failing to recapture the interest earned during "float" periods; and allowing service providers to retain the interest earned during "float" periods.

o.  Allowing cash to be held in the stock funds; failing to develop a
    process to ensure that only the minimal amount of cash necessary
    was held in the stock fund; by maintaining and holding excess cash
    in the stock funds; and/or by allowing excess cash to be held in the
    stock funds.

p.  As described above, uniformly failing to properly disclose and
    deliberately concealing material information regarding the stock
    funds and participants' holdings and interests in same.

q.  Actively and deliberately concealing material information about fees,
    benchmarks used, and performance of the funds in the plan and its
    conflicts of interest and corporate benefits received from these
    practices.

r.  Upon information and belief, allowing conflicts of interest and
    failing to monitor conflict of interests among, *inter alia*, service
    providers and investment managers.

s.  Engaging in prohibited transactions, placing its own corporate
    interests ahead of those of Plan participants, and benefiting itself at
    the expense of Plan participants;

t.  By the foregoing conduct, failing to exercise the care, skill, prudence
    and diligence that a prudent person would when acting in like
    capacity and familiar with such matters.

u.  Including and/or retaining imprudent investment options in the Plan,
    including but not limited to, actively managed mutual funds, namely

the Growth Equity Fund and the Balanced Fund, without a process

demonstrating why such funds could be expected to outperform the

market.

107.    As set forth in detail above, as a result of these breaches, Plaintiffs, the

Class, the Plan, and the Plan's participants and beneficiaries have suffered financial

losses and damages.

108.    Further, as set forth in detail above, the Altria Defendants failed to provide

participants and beneficiaries with sufficient investment information and to comply with

the ERISA regulations to qualify for the Safe Harbor immunity of ERISA § 404(c), 29

U.S.C. 1104(c).  Accordingly, the Defendants are liable for participants and beneficiaries'

investment losses in the Plan.

109.    Pursuant to ERISA § 409, 29 U.S.C. § 1109, and ERISA § 502(a), the

Altria Defendants are liable to restore to the Plan the losses it experienced as a direct

result of the Altria Defendants' breaches of fiduciary duty and are liable for any other

available and appropriate equitable relief, including prospective injunctive relief and

declaratory relief, and attorney's fees.

## COUNT II:
### Other Remedies for Breach of Fiduciary Duty – ERISA §502(a)(3)
### (Altria Defendants)

110.    Plaintiffs restate and incorporate the allegations contained in paragraphs 1

through 109 as though fully set forth here.

111.    As an alternative to the causes of action stated in Count I, Plaintiffs seek

further relief pursuant to ERISA § 502(a)(3), 29 U.S.C., § 1132(a)(3).

112.    Under section 502(a)(3), a participant may enjoin any act which violates ERISA or may obtain other appropriate equitable relief to redress such violations or enforce the terms of ERISA.

113.    Altria Defendants are fiduciaries of the Plan and occupy and/or occupied a position of trust and confidence in connection with the Plan, the Plan's assets, and the Plan's participants and beneficiaries.

114.    Altria Defendants have and/or had discretion and control over the Plan's assets and are and/or were strictly obligated to exercise that control "for the exclusive purposes of providing benefits to participants in the Plan and their beneficiaries and defraying reasonable expenses of administering the Plan."

115.    Although *only* Plan participants and beneficiaries are entitled to Plan assets and to the benefit of Plan assets, in the absence of full and candid disclosure from the Defendants, Plan participants and beneficiaries do not know, and have no means of knowing, how their assets have been managed and disbursed.

116.    Accordingly, the Altria Defendants occupy and/or occupied the position of a common law trustee in connection with the Plan, its assets, and its participants and beneficiaries.

117.    As set forth in detail above, the Altria Defendants have caused and/or allowed the Plan to pay – directly or indirectly – excess fees and expenses to Plan service providers.

118.    Also, as set forth in detail above, the Altria Defendants have caused the Plan to include and/or retain imprudent and underperforming investment options in the

Plan to maintain excessive cash and other costs in the stock fund investment options, and to charge excessive fees.

119.     The Altria Defendants, and not the Plaintiffs, are the entities which have and/or should have specific and detailed information regarding how Plan assets have been treated and disbursed in this regard.

120.     Accordingly, the Court should order that the Altria Defendants render an accounting of all transactions, disbursements and dispositions occurring in, in connection with, and/or in respect of, the Plan and its assets.

121.     The Plaintiffs respectfully request that the Court order that such an accounting include, without limitation, detailed and specific information regarding all fees, expenses, and costs incurred by the Plan and/or paid to third parties, whether paid directly by the Plan or indirectly transferred among Plan service providers or other third parties.

122.     Plaintiffs respectfully request that to the extent the Altria Defendants do not or cannot account for all such transactions and their property under ERISA, the plan document and other applicable law, the Court surcharge against the Altria Defendants and in favor of the Plan all amounts for which they cannot account.

123.     To the extent necessary, Plaintiffs further seek injunctive and other appropriate equitable relief to redress the wrongs described above, and to cause them to cease in order for the Plan's participants and beneficiaries to receive the full benefit of their retirement savings in the future.

          WHEREFORE Plaintiffs, on behalf of the Plan and all similarly situated Plan participants and beneficiaries, respectfully request that the court:

- find and declare that the Altria Defendants have breached their fiduciary duties as described above;

- order the Altria Defendants to make good to the Plan all losses that the Plan incurred as a result of the conduct described above and to restore the Plan to the position it would have been in but for the breaches of fiduciary duty;

- impose a constructive trust on any monies by which the Altria Defendants were unjustly enriched as a result of their breaches of fiduciary duty and/or cause the Altria Defendants to disgorge such monies and return them to the Plan;

- remove the fiduciaries who have breached their fiduciary duties and/or enjoin them from future breaches of ERISA;

- award actual damages to the Plan in the amount of its monetary losses;

- require Altria Defendants to render an accounting as set forth above;

- surcharge against Altria Defendants and in favor of the Plan all amounts involved in transaction which such accounting reveals were or are improper, excessive and/or in violation of ERISA;

- permanently enjoin Altria Defendants from breaching their fiduciary duties in each respect set forth in the Complaint;

- order costs and attorneys fees pursuant to ERISA § 502(g) and the common fund doctrine;

- order equitable restitution or other available equitable relief against the Altria Defendants;

- order the payment of interest to the extent it is allowed by law; and grant any other and further relief the Court deems appropriate

## COUNT III:
### Breach of Fiduciary Duty – ERISA §502(a)(2)
### (Kraft Defendants)

124.    Plaintiffs restate and incorporate the allegations contained in paragraphs 1 through 58 and 65 through 84 as though fully set forth here.

125.    As set forth in detail above, the Kraft Defendants owe and/or owed the Plan, its participants and beneficiaries, and the Class extensive fiduciary duties including, without limitation:

   a. To conduct themselves as Plan fiduciaries with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent ERISA professional fiduciary would in operating and administering a 401(k) plan the size and character of the Plan;

   b. To perform their duties as fiduciaries with the utmost loyalty and fidelity to the Plan and its participants and beneficiaries, avoiding at all times conflicts of interest, self-interest, and duplicity;

   c. To ensure, at all times, that Plan assets "shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the Plan and their beneficiaries and defraying reasonable expenses of administering the Plan;"

d.  To track and account for all transactions involving the Plan and Plan assets so as to ensure that Plan assets are retained, managed, and disbursed in compliance with the Plan Document and ERISA;

e.  To track and account for all transactions involving the Plan and Plan assets so as to ensure that Plan assets "never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the Plan and their beneficiaries and defraying reasonable expenses of administering the Plan;"

f.  To affirmatively and without request provide Plan participants and beneficiaries with honest, accurate and complete information they need to understand their investments in the Plan; and the management, risk, potential returns of such investments.

g.  To include prudent investment options in the Plan; and,

h.  To avoid significant performance losses in any of the Plan's investment options.

126.    As set forth in detail above, the Kraft Defendants breached their fiduciary obligations to the Plan, Plan participants and beneficiaries and the Class by, among other conduct to be proven at trial:

a.  Failing to inform themselves of trends, developments, practices, and policies in the retirement, financial investment and securities industry which affect the Plan; and failing to remain aware and knowledgeable of such trends, practices and policies on an ongoing basis;

    b.  Failing to appoint fiduciaries who lived up to their fiduciary duties, failing to monitor and oversee those fiduciaries in the performance of their duties, and failing to remove fiduciaries who breached their fiduciary duties;

    c.  Failing to exercise the care, skill, prudence and diligence that a prudent person would when acting in like capacity and familiar with such matters.

    d.  Including and/or retaining imprudent investment options in the Plan, including but not limited to, actively managed mutual funds, namely the Growth Equity Fund and the Balanced Fund without a process demonstrating why such funds could be expected to outperform the market;

    e.  Including and/or retaining imprudent investment options that underperformed the returns prudent investment options would have returned had the Kraft Defendants properly exercised their fiduciary duties;

    f.  Actively and deliberately concealing material information about performance of the funds in the plan and its corporate interests and corporate benefits received from these practices.

127.    As set forth in detail above, as a result of these breaches, Plaintiffs, the Class, the Plan, and the Plan's participants and beneficiaries have suffered financial losses and damages.

128.    Further, as set forth in detail above, the Kraft Defendants failed to provide participants and beneficiaries with sufficient investment information and to comply with the ERISA regulations to qualify for the Safe Harbor immunity of ERISA § 404(c), 29 U.S.C. 1104(c).  Accordingly, the Defendants are liable for participants and beneficiaries' investment losses in the Plan.

129.    Pursuant to ERISA § 409, 29 U.S.C. § 1109, and ERISA § 502(a), the Kraft Defendants are liable to restore to the Plan the losses it experienced as a direct result of the Kraft Defendants' breaches of fiduciary duty and are liable for any other available and appropriate equitable relief, including prospective injunctive relief and declaratory relief, and attorney's fees.

<u>COUNT IV:</u>
**Other Remedies for Breach of Fiduciary Duty – ERISA §502(a)(3)**
**(Kraft Defendants)**

130.    Plaintiffs restate and incorporate the allegations contained in paragraphs 1 through 58 and 65 through 84 as though fully set forth here.

131.    As an alternative to the causes of action stated in Count III, Plaintiffs seek further relief pursuant to ERISA § 502(a)(3), 29 U.S.C., § 1132(a)(3).

132.    Under section 502(a)(3), a participant may enjoin any act which violates ERISA or may obtain other appropriate equitable relief to redress such violations or enforce the terms of ERISA.

133.    Kraft Defendants are fiduciaries of the Plan and occupy and/or occupied a position of trust and confidence in connection with the Plan, the Plan's assets, and the Plan's participants and beneficiaries.

134.    Kraft Defendants have and/or had exclusive discretion and control over the Plan's assets and are and/or were strictly obligated to exercise that control "for the exclusive purposes of providing benefits to participants in the Plan and their beneficiaries and defraying reasonable expenses of administering the Plan."

135.    Although *only* Plan participants and beneficiaries are entitled to Plan assets and to the benefit of Plan assets, in the absence of full and candid disclosure from the Defendants, Plan participants and beneficiaries do not know, and have no means of knowing, how their assets have been managed and disbursed.

136.    Accordingly, the Kraft Defendants occupy and/or occupied the position of a common law trustee in connection with the Plan, its assets, and its participants and beneficiaries.

137.    As set forth in detail above, the Kraft Defendants have caused the Plan to include imprudent investment options in the Plan which underperformed, causing losses to the Plan and participants.

138.    Accordingly, Plaintiffs seek injunctive and other appropriate equitable relief to redress the wrongs described above, and to cause them to cease in order for the Plan's participants and beneficiaries to receive the full benefit of their retirement savings in the future.

WHEREFORE Plaintiffs, on behalf of the Plan and all similarly situated Plan participants and beneficiaries, respectfully request that the court:

- find and declare that the Kraft Defendants have breached their fiduciary duties as described above;

- order the Kraft Defendants to make good to the Plan all losses that the Plan incurred as a result of the conduct described above and to restore the Plan to the position it would have been in but for the breaches of fiduciary duty;

- impose a constructive trust on any monies by which the Kraft Defendants were unjustly enriched as a result of their breaches of fiduciary duty and/or cause the Kraft Defendants to disgorge such monies and return them to the Plan;

- remove the fiduciaries who have breached their fiduciary duties and/or enjoin them from future breaches of ERISA;

- award actual damages to the Plan in the amount of its monetary losses;

- permanently enjoin Kraft Defendants from breaching their fiduciary duties in each respect set forth in this Complaint;

- order costs and attorneys fees pursuant to ERISA § 502(g) and the common fund doctrine;

- order equitable restitution or other available equitable relief against the Kraft Defendants;

- order the payment of interest to the extent it is allowed by law; and grant

  any other and further relief the Court deems appropriate

Dated:  July 2, 2008                              Respectfully submitted,


                                                  **Schlichter, Bogard & Denton**

                                                  __/s/ Nelson G. Wolff__
                                                  Nelson G. Wolff, 06211943
                                                  Troy A. Doles, 06242803
                                                  100 South Fourth Street
                                                  Suite 900
                                                  St. Louis, MO 63102
                                                  120 W. Main Street, Ste 208
                                                  Belleville, IL  62220
                                                  nwolff@uselaws.com
                                                  tdoles@uselaws.com
                                                  Tel:    314-621-6115
                                                  Fax:    314-621-7151