UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GERALD GEORGE, CATHY DUNN, )
TIMOTHY STREFF, and )
ANDREW SWANSON, )
individually and as representatives ) No. 08 C 3799
of a class of similarly situated persons, )
) Judge Ruben Castillo
Plaintiffs, )
)
v. )
)
KRAFT FOODS GLOBAL, INC., et al., )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Gerald George ("George"), Cathy Dunn ("Dunn"), Timothy Streff ("Streff"), and Andrew

Swanson ("Swanson") bring this putative class action, on behalf of themselves and all other

similarly situated persons (collectively "Plaintiffs"), against Kraft Foods Global, Inc. ("Kraft

Global"), Kraft Foods, Inc. ("Kraft"), Kraft Foods Global, Inc. Management Committee of

Employee Benefits ("Kraft Employee Benefits Committee"), Kraft Foods Global, Inc.

Administrative Committee ("Kraft Administrative Committee"), the Compensation and

Governance Committee of the Kraft Foods, Inc. Board of Directors ("Kraft Compensation

Committee") and its individual members, Kraft Foods Global, Inc. Benefits Investment

Committee ("Kraft Benefits Investment Committee") and its individual members, and Kraft

Benefits Investment Group (collectively "Kraft Defendants"). (R. 107, Pls.' Second Am.

Compl.) Additionally, Plaintiffs name Altria Corporate Services, Inc. ("Altria Services"), the

Corporate Employee Plans Investment Committee of the Board of Directors of Altria Group, Inc.

("Altria Investment Committee") and its individual members, and the Benefits Investment Group

of Altria Corporate Services, Inc. ("Altria Benefits Investment Group") (collectively "Altria

Defendants"), as defendants. (*Id.*) Plaintiffs allege that the Kraft and Altria Defendants

(collectively "Defendants") breached fiduciary duties established by the Employee Retirement

Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and seek declaratory,

monetary, and equitable relief. (*Id.*) Presently before the Court is Defendants' motion to dismiss

pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 112, Mot. to Dismiss.) For the reasons

stated below, the motion is granted in part and denied in part.

## RELEVANT FACTS

### I.    The Parties

#### A.    Plaintiffs

As part of its compensation and benefits package, Kraft offers certain employees the

opportunity to participate in the Kraft Foods Global, Inc. Thrift Plan, Plan No. 125 (the "Plan"),

which is a defined contribution plan[1] under ERISA. (R. 107, Pls.' Second Am. Compl. ¶¶ 3-6,

28.) Plaintiffs are participants in the Plan,[2] which is structured as a 401(k) and contains an

---

[1] A "defined contribution plan" is a "pension plan which provides for an individual
account for each participant and for benefits based solely upon the amount contributed to the
participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts
of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002
(34).

[2] ERISA defines a participant as "any employee or former employee of an employer, or
any member or former member of an employee organization, who is or may become eligible to
receive a benefit of any type from an employee benefit plan which covers employees of such
employer or members of such organization, or whose beneficiaries may be eligible to receive any
such benefit." 29 U.S.C. § 1002(7).

2

employee stock ownership provision. (*Id.*) A "plan document" establishes and defines the operation of the Plan. (*Id.* ¶ 30.) Plan assets are held in a single trust fund known as the Kraft Foods Global Inc. Master Defined Contribution Trust (the "Master Trust"). (*Id.*)

## B. The Kraft Defendants

In addition to being the Plan sponsor,[3] Plaintiffs allege that Kraft Global is also a "named fiduciary"[4] and a "fiduciary"[5] with respect to the Plan. (*Id.* ¶ 8.) According to Plaintiffs, Kraft, through its board members and agents, exercised discretionary control and authority over Plan assets and the administration of the Plan, and is therefore also a fiduciary as defined by ERISA. (*Id.* ¶ 7.) Plaintiffs also claim that the Kraft Employee Benefits Committee is both the Plan administrator[6] and a fiduciary. (*Id.* ¶ 9.) Further, they allege that because the Kraft Employee

---

[3] ERISA defines a plan sponsor as "(i) the employer in the case of an employee benefit plan established or maintained by a single employer, (ii) the employee organization in the case of a plan established or maintained by an employee organization, or (iii) in the case of a plan established or maintained by two or more employers or jointly by one or more employers and one or more employee organizations, the association, committee, joint board of trustees, or other similar group of representatives of the parties who establish or maintain the plan." 29 U.S.C. § 1002(16)(B).

[4] A named fiduciary is "a fiduciary who is named in the plan instrument, or who, pursuant to a procedure specified in the plan, is identified as a fiduciary (A) by a person who is an employer or employee organization with respect to the plan or (B) by such an employer and such an employee organization acting jointly." 29 U.S.C. § 1102(a)(2).

[5] A entity is considered a "fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan . . . ." 29 U.S.C. § 1002(21)(A).

[6] The term administrator means "(i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the

3

Benefits Committee delegated the authority and discretion to control certain Plan operations and administrative duties to the Kraft Administrative Committee, the latter is also considered a Plan administrator and fiduciary. (*Id.* ¶ 10.) Plaintiffs also aver that the Kraft Compensation Committee is both a named fiduciary and a fiduciary. (*Id.* ¶ 11.) They claim that the Kraft Compensation Committee's status as a fiduciary is based on its delegated authority and discretion to control and manage the investments of the Plan, along with its responsibility for appointing investment managers, trustees, and monitoring investment performance. (*Id.*) Plaintiffs allege that the Kraft Compensation Committee possessed this authority from 2001 through 2004.[7] (*Id.* ¶ 41.)

Plaintiffs also aver that the Kraft Benefits Investment Committee is a named fiduciary and Plan administrator. (*Id.* ¶ 13.) According to Plaintiffs, its status as a fiduciary is predicated upon: (1) its authority and discretion to control and manage the investment operations of the Plan; and (2) its overall responsibility for the administrative oversight of the Plan. (*Id.* ¶¶ 13, 39-40.) Additionally, as a result of its delegated authority and discretion to control certain Plan investment operations, the Kraft Benefits Investment Group is also alleged to be a fiduciary and Plan administrator.

## C.     The Altria Defendants

Plaintiffs allege that between 1990 and 2001 the Altria Investment Committee was

plan sponsor; or (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe." 29 U.S.C. § 1002(16)(A).

[7] Plaintiffs also specifically name Kraft Compensation Committee members W. James Farrell, John C. Pope, Mary L. Shapiro, and Deborah Wright as defendants. (*Id.* ¶ 11.) Plaintiffs allege that these individuals are also Plan fiduciaries. (*Id.* ¶ 12.)

4

"delegated authority and discretion to control the operation, administration, management, and/or investment operations of the Plan." (*Id.* ¶¶ 16, 43.) Thus, they claim that the Altria Investment Committee is or was a fiduciary and a Plan administrator.[8] (*Id.* ¶ 16.) Similarly, Altria Services is alleged to be a fiduciary and a Plan administrator. (*Id.* ¶ 17.) Altria Services provides advice, assistance, compliance and associated services in areas such as human resources, corporate affairs, and finance to its parent company, Altria Group, Inc. ("Altria")[9] and its operating companies, which includes Kraft. (*Id.*) Indeed, according to Plaintiffs, Altria Services entered into a Services Agreement (the "Agreement") with Kraft, whereby Altria Services and its agents provided a variety of services to Kraft, including identifying, selecting, and monitoring investment options and advisors for the Plan along with providing administrative duties for the Plan. (*Id.* ¶ 7.) In fulfilling its responsibilities under the Agreement, Plaintiffs allege that Altria Services exercised discretionary control and authority over Plan assets, administration, and/or management, and is thereby properly considered a fiduciary and a Plan administrator. (*Id.*) Finally, Plaintiffs aver that because the Altria Benefits Investment Group exercised discretionary control and authority over Plan assets, administration, and management, it too is a fiduciary. (*Id.* ¶ 18.)

## II. The Plan and its Operation

Participating employees may invest their Plan contributions in any one of nine investment options selected by Defendants; they may not choose investment alternatives other than these

---

[8] Plaintiffs also name the Altria Investment Committee's members, John O. Nichols, Carlos Slim Helú, John S. Reed, Jane Evans, Harold Brown, and L.C. Camilleri as defendants. (*Id.* ¶ 16.)

[9] Altria was formerly known as Philip Morris, Inc. (*Id.* ¶ 33(c).)

options. (*See id.* ¶¶ 31-32.) The Plan options consist of three categories of investments: (1) Separate Accounts/Commingled Funds, which allow investment in the Euro Equity Fund, International Equity Fund, U.S. Mid Cap/Small Cap Fund, U.S. Large Equity Index Fund, U.S. Government Obligations Fund, and Interest Income Fund; (2) Actively Managed Mutual Funds, permitting investment in the Balanced Fund and Growth Equity Fund; and (3) Unitized Single Stock Funds, which permit contributions to be invested in the Altria Stock Fund (consisting of Altria common stock and cash) and the Kraft Foods Stock Fund (consisting of Kraft common stock and cash). (*Id.* ¶ 33.) According to Plaintiffs, Defendants are responsible for monitoring and changing the funds in which Plan participants may invest. (*Id.* ¶ 32.)

The complaint distinguishes between administrative and investment operations. Throughout the relevant time periods, the Kraft Benefits Investment Committee had the overall responsibility to oversee administrative operations of the Plan. (*Id.* ¶ 39.) From 1990 to March 30, 2007, pursuant to the Agreement between Kraft and Altria Services, the Kraft Benefits Investment Committee, Kraft Compensation Committee, and the Altria Investment Committee delegated certain duties, including administrative oversight of the Master Trust and Plan, to the Altria Benefits Investment Group. (*Id.* ¶ 43.) The responsibility for tracking Plan investment and expenses was also delegated to the Altria Benefits Investment Group. (*Id.*) Since March 30, 2007, the Kraft Benefits Investment Committee delegated certain responsibilities and duties for the administrative oversight and investment operations of the Plan to the Kraft Benefits Investment Group. (*Id.* ¶ 44.)

Since 2004, the Kraft Benefits Investment Committee has had the authority and responsibility to control and manage the investment operations of the Plan. (*Id.* ¶ 40.) As part of

6

its duties, it had the authority to appoint, monitor, and retain trustees, custodians, and investment managers. (*Id.*) Moreover, it was responsible for monitoring the performance of the Plan's investment options. (*Id.*) Between 2001 and 2004, the Kraft Compensation Committee had the authority and responsibility to select, control, and manage the investment operations of the Plan. (*Id.* ¶ 41.) According to Plaintiffs, between 1990 and 2001, this authority over the Plan's investment operations was held by the Altria Investment Committee. (*Id.* ¶ 43.)

## III. Breaches of Fiduciary Duty

In Count I, Plaintiffs allege that the Altria Defendants breached their fiduciary duty, as defined by 29 U.S.C. § 1104(a)(1), in allowing the Plan and its participants to pay excessive administrative services fees.[10] (*Id.* ¶¶ 50-52.) Plaintiffs aver that Defendants allowed the Plan to

---

[10] This duty requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –

(A) for the exclusive purpose of:

    (i) providing benefits to participants and their beneficiaries; and

    (ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter."

29 U.S.C. § 1104(a)(1).

purchase services from companies providing various services to the Plan, including trustee, record-keeping, administration, investment advisory, investment management, brokerage, insurance, consulting, accounting, legal, printing, mail, and other services. (*Id.* ¶ 45.) Since 1995, Hewitt Associates ("Hewitt") has been retained by Defendants to provide certain administrative services. (*Id.* ¶ 47.) According to Plaintiffs, Hewitt is paid an agreed upon per participant dollar amount for these administrative services. (*Id.* ¶ 48.) Despite this agreed upon administrative fee, Plaintiffs allege that Hewitt received additional compensation for performing Plan administrative services from American Century, the investment advisor for the Growth Equity Fund. (*Id.* ¶ 49.)

Plaintiffs allege that the Altria Defendants breached their fiduciary duty by failing to: (1) monitor and assess the reasonableness of Hewitt's fees and expenses for administrative services; and (2) recognize and account for Hewitt's receipt of excess compensation from the investment manager of the Growth Equity Fund. (*Id.* ¶ 52.) They also aver that the Altria Defendants impermissibly failed to establish, implement, and follow procedures to properly determine the reasonableness of the administrative services fees paid by the Plan. (*Id.*)

In Count II, Plaintiffs claim that the Altria Defendants' behavior with respect to the Altria and Kraft Stock Funds breached the fiduciary duty owed to Plan participants. (*Id.* ¶¶ 55-62.) According to Plaintiffs, these funds did not allow direct investment in the common shares of either Altria or Kraft. (*Id.* ¶ 56.) Instead, these funds held shares of common stock along with cash, the combination of which was allocated among units (i.e., "unitized") in the funds. (*Id.*) Due to the lower returns generated from the cash holdings, the investment fees charged for managing the cash and stock, and associated transactional fees, returns on the Altria and Kraft

8

Stock Funds were significantly less than the returns generated by these companies' respective common stock. (*Id.* ¶ 57.)

Plaintiffs allege several violations of fiduciary duty involving the Altria and Kraft Stock Funds. First, Plaintiffs claim the Altria Defendants imprudently maintained the Altria and Kraft Stock Funds as unitized funds. (*Id.* ¶ 60.) They allege that this imprudent decision is the product of the inadequate process used to compare the unitized funds with direct investments in the common stock of Altria and Kraft. (*Id.*) Second, Plaintiffs allege that the Altria Defendants imprudently managed the Altria and Kraft Stock Funds, resulting in financial underperformance in relation to direct investments in Altria and Kraft common stock. (*Id.* ¶ 60.) Third, they aver that the Altria Defendants breached their fiduciary duty by failing to provide certain information to Plan participants, specifically information regarding proper benchmarks from which they could properly assess the underperformance of the Altria and Kraft Stock Funds against the returns of actual common stock. (*Id.*)

Finally, in Count III, Plaintiffs allege that both the Kraft and Altria Defendants breached their fiduciary duties by including the Growth Equity Fund and Balanced Fund as Plan investment options. (*Id.* ¶¶ 63-82.) They claim that the selection and retention of the Growth Equity and Balanced Funds violated the duties set forth by ERISA because, at the time the decision to invest in these funds was made, both were expected to underperform relative to comparable investment alternatives. (*Id.* ¶ 78.) This violation, they allege, was the result of Defendants' deficient investment policies which failed to review the appropriateness of the inclusion of these two funds as Plan investment options. (*Id.*) Further, Plaintiffs allege that Defendants breached their fiduciary duty to Plan participants by paying unreasonable and

9

excessive fees for investment management and administrative services. Moreover, Plaintiffs aver that Defendants actively concealed, through the reporting and disclosure of improper benchmarks, material information regarding their imprudent decision to select and retain the Growth Equity Fund and Balanced Fund as Plan investment options. (*Id.* ¶¶ 78, 80.)

## PROCEDURAL HISTORY

On July 2, 2008, Plaintiffs filed the original class action against Defendants on behalf of all similarly situated Plan participants. (R. 1, Pls.' Compl.) The original complaint was amended on November 20, 2008. (R. 61, Pls.' First Am. Compl.) On February 23, 2009, Plaintiffs moved to amend their complaint a second time. (R. 82, Pls.' Mot. for Leave to File Sec. Am. Compl.) In light of the Seventh Circuit's ruling in *Hecker v. Deere & Company*, 556 F.3d 575 (7th Cir. 2009), *rehearing en banc denied*, 569 F.3d 708 (7th Cir. 2009), the Court granted Plaintiffs' motion. (R. 106, Min. Order.) Plaintiffs then filed the Second Amended Complaint (the "complaint") on July 31, 2009. (R. 107, Pls.' Second Am. Compl.)

The complaint alleges three ERISA violations. In Count I, which is brought under 29 U.S.C. §§ 1104-05, Plaintiffs allege that the Altria Defendants breached their fiduciary duty by allowing the Plan to pay excessive fees for administrative services. (*Id.* ¶¶ 50-54.) In Count II, Plaintiffs claim that the same statutory provisions were breached by the Altria Defendants' various alleged imprudent decisions and actions related to the Altria and Kraft Stock Funds. (*Id.* ¶¶ 55-62.) Finally, in Count III, Plaintiffs aver that both the Altria and Kraft Defendants' conduct with respect to the Growth Equity and Balanced Fund violated 29 U.S.C. §§ 1104-05. (*Id.* ¶¶ 63-82.)

10

As a remedy, pursuant to 29 U.S.C. § 1109, Plaintiffs seek to have Defendants "make good to the Plan for the losses it experienced as a direct result of Defendants' breaches of fiduciary duty." (*Id.* ¶¶ 53, 62, 82.) In Counts IV and V, Plaintiffs seek equitable relief under 29 U.S.C. § 1132(a)(3).[11] Specifically, they request that the Court order an accounting of all transactions, disbursements, and dispositions occurring in connection with the Plan and its assets. (*Id.* ¶¶ 88-91.) Based on the figures revealed by the accounting, Plaintiffs also request a surcharge to be imposed on Defendants for any transactions that were improper, excessive, or violative of ERISA. (*Id.* ¶ 93.) Finally, Plaintiffs request any other appropriate equitable relief that will allow the Plan participants to "receive the full benefit of their retirement savings." (*Id.* ¶ 94.)

## LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Cler v. Illinois Educ. Ass'n*, 423 F.3d 726, 729 (7th Cir. 2005). In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the Court assumes all well-pleaded allegations in the complaint to be

---

[11] Plaintiffs argue that Counts IV and V "state independent claims" for equitable relief. (R. 120, Pls.' Mem. at 11.) They rely upon 29 U.S.C. § 1132(a)(3) as the basis for their "independent claim." (*Id.*) The Court notes, however, that the invoked statute sets forth ERISA's civil enforcement provisions, each of which details who may bring suit and what remedies are available. *See* 29 U.S.C. § 1132(a). In this case, the statute is merely being used to supplement remedies Plaintiffs seek under 29 U.S.C. § 1109. (R. 120, Pls.' Mem. at 11.) As such, the availability of the requested remedies under 29 U.S.C. § 1132(a)(3) is contingent upon the success of the underlying substantive claims, which, in this case, are brought under 29 U.S.C. §§ 1104-05. Thus, because they allege remedies rather than causes of action, the Court dismisses Counts IV and V. *See, e.g., LaSalle Nat. Bank v. Met. Life Ins. Co.*, 18 F.3d 1371, 1376 (7th Cir. 1994) (affirming dismissal of count seeking specific performance because "specific performance is a remedy, not a cause of action"); *Van Billiard v. Farrell Distrib. Corp.*, No. 2:09-CV-78, 2009 WL 4729965, at *7 (D.Vt. Dec. 3, 2009) (dismissing count seeking equitable relief under 29 U.S.C. § 1132(a)(3) because it was "essentially a remedy presented as a claim"). The Court may still grant equitable remedies pursuant to 29 U.S.C. § 1132(a)(3) if such relief is appropriate.

true and draws all inferences in the light most favorable to the plaintiff. *Killingsworth v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). To survive a motion to dismiss, the complaint must overcome "two easy-to-clear hurdles": (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests"; and (2) "its allegations must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the 'speculative level.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (emphasis in original).

## ANALYSIS

Defendants make three general arguments in support of dismissing the substantive claims in Plaintiffs' complaint. (*Id.*) First, Defendants argue that ERISA's statute of limitations bars Plaintiffs' claims. (*Id.* ¶ 4.) Second, they contend that the complaint fails to satisfy Rule 8 pleading standards as articulated in *Twombly* and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). (*Id.*) Third, they assert that Plaintiffs' allegations are deficient because they fail to properly plead the fiduciary status of the various persons and entities named as defendants. (*See id.*)

### I.    Statute of Limitations

ERISA provides that any plan fiduciary who breaches its fiduciary duties is "personally liable to make good to such plan any losses to the plan resulting from each such breach." 29 U.S.C. § 1109. The statute, however, limits the time in which an action against a plan fiduciary for breach of fiduciary duties may be brought. Specifically, it states that no action to recover such losses can be commenced after the earlier of (1) three years after the earliest date on which the plaintiff had actual knowledge of the breach, or (2) six years after the date of the last action

which constituted a part of the breach or violation, or in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation. *See* 29 U.S.C. § 1113. In the case of fraud or concealment, such an action may be commenced no later than six years after the date of discovery of the alleged breach. *Id.* Defendants contend that the ERISA statute of limitations provision precludes recovery for any alleged breaches of fiduciary duty in this case. (*See* R. 113, Defs.' Mem. at 9-14.)

## A. Three-year Statute of Limitations

Defendants first argue that ERISA's three-year statute of limitations bars Plaintiffs' claims. (R. 113, Defs.' Mem. at 9-12.) To trigger the three-year statute of limitations, Plaintiffs must have "actual knowledge" of the alleged breaches of fiduciary duty. 29 U.S.C. § 1113(2). To conclude that a plaintiff has actual knowledge of an ERISA violation, it is not enough that he "'had notice that something was awry; he must have had specific knowledge of the actual breach of duty upon which he sues.'" *Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078, 1086 (7th Cir. 1992) (quoting *Radiology Center, S.C. v. Stifel, Nicolaus & Co.*, 919 F.2d 1216, 1221 (7th Cir. 1990)). It is not necessary, however, for a plaintiff to "have knowledge of every last detail of a transaction, or knowledge of its illegality." *Id.* Rather, the "relevant knowledge for triggering the statute of limitations is knowledge of the *facts* or *transaction* that constituted the alleged violation." *Id.* In short, to "have actual knowledge of a violation to trigger ERISA's three-year statute of limitations, a plaintiff must know of the essential facts of the transaction or conduct constituting the violation." *Id.*

### 1. Count I

First, Defendants argue that Count I is time-barred under Section 1113 because "Plaintiffs had actual knowledge of administrative fees connected to the Plan long before July 2005." (R.

13

113, Defs.' Mem. at 10.) Defendants specifically note that, at least as early as 2003, "Summary Annual Reports informed all Plan participants of the fees paid for Plan Administration." (*Id.*) They further contend that other disclosures provided Plan participants with the total fees, including administrative fees, for each investment option. (*Id.*)

When ruling on a Rule 12(b)(6) motion, a court generally may consider only the plaintiff's complaint. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). Federal Rule of Civil Procedure 10(c) provides, however, that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c). Seventh Circuit precedent "makes clear that this rule includes a limited class of attachments to Rule 12(b)(6) motions." *Rosenblum,*, 299 F.3d at 661. Specifically, "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). Such documents may be properly considered by a district court in ruling on a motion to dismiss. *Id.* This exception is "aimed at cases interpreting, for example, a contract." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998).

In this case, the Summary Annual Reports, Fund Fact Sheets, and other disclosures Defendants' argument relies upon are not referred to in Plaintiffs' complaint. (*See* R. 107, Pls.' Second Am. Compl.) They therefore do not fall under the "narrow" exception created by Rule 10(c). *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). Defendants maintain that these documents should be considered on a motion to dismiss because the complaint references the Summary Plan Description and other Plan related communications. (R. 113, Defs.' Mem. at 3 n.5.) Defendants, however, fail to point to specific places in the complaint where said documents

14

are referenced. (*Id.*) This Court's review of the complaint also fails to reveal specific references to these documents.[12] Accordingly, the Court cannot properly review these documents to determine whether they show that Plaintiffs' possessed actual knowledge of alleged breaches of fiduciary duty prior to July 2, 2005.

ERISA's statute of limitations is an affirmative defense. *See* Fed. R. Civ. P. 8(c)(1). A claim may be dismissed if "'the allegations of the complaint itself set forth everything necessary to satisfy [an] affirmative defense.'" *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)). Here, for Defendants' statute of limitations argument to be successful, the complaint must: (1) contain the earliest date on which Plaintiffs knew of the "essential facts of the conduct and transactions" related to their excessive administrative fees claim; and (2) allege that the earliest date on which this knowledge was acquired was before July 2, 2005. While the complaint alleges that Defendants breached their fiduciary duty in various ways involving excess administrative fees, it does not provide any indication as to when Plaintiffs obtained actual knowledge of the alleged breaches. (*See* R. 107, Pls.' Second Am. Compl.) Without that information, Defendants' affirmative defense fails. Thus, Plaintiffs' first count regarding alleged excessive administrative fees is not barred by ERISA's three-year statute of limitations.

## 2. Count II

Next, Defendants argue that Count II is also barred by ERISA's three-year statute of limitations because "Plaintiffs knew of the [Altria and Kraft Stock Funds'] allegedly imprudent

---

[12] This failure renders *Hecker* inapposite on this point. In *Hecker*, the Seventh Circuit upheld the district court's use of Summary Plan Descriptions on a 12(b)(6) motion to dismiss. 556 F.3d at 582. The court reasoned that such a reliance was acceptable because the complaint had explicitly referred to the Summary Plan Descriptions. *Id.* at 582-83. The complaint in this case fails to do so.

structure well before 2005." (R. 113, Defs.' Mem. at 10.) In support of their argument, Defendants point to Summary Plan Descriptions and Fund Fact Sheets, which they contend apprised Plaintiffs of the essential information needed to bring their claim well over three years before July 2, 2005. (*Id.*) This contention fails because the referenced documents are not properly before the Court on a 12(b)(6) motion to dismiss. Like their argument with respect to Count I, these documents cannot be considered by the Court because they are not referenced in the complaint. *Wright*, 29 F.3d at 1248 (documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim). Looking solely at the allegations in the complaint, it is unclear when Plaintiffs obtained actual knowledge of the alleged violations of fiduciary duty involving the Altria and Kraft Stock Funds. As a result, the complaint itself fails to set forth everything necessary to satisfy Defendants' affirmative defense. Thus, based on the allegations in the complaint, Count II is also not barred by ERISA's three-year statute of limitations.

### 3. Count III

Finally, Defendants assert that Count III is also barred because Plaintiffs were not only aware that the Growth Equity and Balanced Funds were Plan investment options, but also knew of these "Funds' fees and performance over a significant amount of time from numerous communications." (*Id.* at 11.) Defendants argue that Quarterly Statements, Prospectus Reports, and Summary Plan Descriptions provided Plaintiffs with actual knowledge of the "Funds' structure, fees and performance – all of the facts or transactions upon which their claim is based – more than three years before filing their initial complaint in this case." (*Id.* at 12.)

Because the Summary Plan Descriptions and Quarterly Statements are not referenced in

16

the complaint, the Court may not properly consider them on a 12(b)(6) motion to dismiss. *See Wright*, 29 F.3d at 1248. The Prospectus Reports, however, present a different question. According to Defendants, the Court may take judicial notice of these documents on a 12(b)(6) motion to dismiss because they are public documents filed with the SEC. (*See* R. 113, Defs.' Mem. at 3 n.5, 11.) Indeed, a Court may take judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment. *Palay v. United States*, 349 F.3d 418, 425 n.5 (7th Cir. 2003) (citations omitted). Specifically, a court may take "judicial notice of documents filed with the SEC for the purpose of showing what statements the documents contain, but not for the proof of the facts stated therein." *Riggs Partners, LLC v. Hub Group*, No. 02 C 1188, 2002 WL 31415721, at *1 (N.D. Ill. Oct. 25, 2002) (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1276-1281 (11th Cir. 1999) and *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)); *see also Gavin v. AT & T Corp.*, No. 01 C 2721, 2004 WL 2260632, at *1 (N.D. Ill. Sept. 30, 2004) (noting that on a motion to dismiss "the court may consider evidence of which it can take judicial notice, and that includes SEC filings") (citations omitted). Thus, because the Prospectus Reports attached to Defendants' motion to dismiss are filed with the SEC, these documents are properly before the Court.

Defendants argue that the Prospectus Reports provided Plaintiffs with actual knowledge of the alleged breaches of fiduciary duty "no later than April 2005" because, via the information presented in these documents, they knew that the Growth Equity and Balanced Funds were investment options in the Plan. (R. 113, Defs.' Mem. at 11.) In their complaint, Plaintiffs allege that Defendants breached their fiduciary duty by, among other things, imprudently selecting and retaining these funds. (R. 107, Pls.' Second Am. Compl. ¶ 78.) Further, they aver that

17

Defendants' failure to implement or follow procedures to review the appropriateness of the continued presence of these funds as Plan investment options also violated the same duty. (*Id.*) The Court finds that mere knowledge of the presence of these funds as Plan investment options prior to April 2005 does not provide Plaintiffs with the "essential facts of the transaction or conduct" constituting the alleged breaches of fiduciary duty necessary to trigger ERISA's three-year statute of limitations. For example, merely knowing that a fund was an investment option does not provide Plaintiffs with the "essential facts of the transaction or conduct" of the fund selection process that they claim is deficient. Moreover, the Court finds nothing in the complaint indicating when Plaintiffs obtained actual knowledge of the various alleged breaches outlined in their complaint. The Court therefore finds that Count III is also not barred by ERISA's three-year statute of limitations.[13]

## B. Six-year Statute of Limitations

### 1. Count II

Defendants also argue that ERISA's six-year statute of limitations bars Count II. (R. 113, Defs.' Mem. at 11.) Under this portion of Section 1113, a plaintiff must bring their action within six years after "the date of the last action which constituted a part of the breach or violation, or . . . in the case of an omission the latest date on which the fiduciary could have cured the breach or

---

[13] Defendants also contend that Count III, insofar as it relates to the Growth Equity Fund, is also time-barred under ERISA's three-year statute of limitations because "that fund ceased being a Plan investment option on June 30, 2005, and participants were notified of this change and of the fees of the replacement fund in April 2005." (R. 113, Defs.' Mem. at 12.) The Court finds that the Quarterly Statement upon which this argument is grounded cannot be considered on a motion to dismiss because it is not referenced in the complaint. *Wright*, 29 F.3d at 1248 (documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim). As the complaint does not provide any indication of when the Growth Equity Fund ceased being a Plan investment option, the Court cannot evaluate the merits of this argument. Accordingly, the Court finds that this argument also fails as a basis to dismiss Count III as it relates to the Growth Equity Fund.

violation." 29 U.S.C. § 1113(1). Defendants assert that Count II "is plainly untimely given that [the Growth Equity and Balanced Funds] have been unitized since the 1990s – well over six years before Plaintiffs filed suit." (R. 113, Defs.' Mem. at 11.) The mere assertion, however, that these funds have been unitized since the 1990s sheds little light upon when the last action which constituted a part of each of the alleged breaches described in Count II occurred. Without knowing when the alleged breaches stopped, the Court is unable to determine when the clock on ERISA's six-year statute of limitations started ticking. Accordingly, the Court finds that based on the allegations in the complaint, Count II is not barred by Section 1113.

### 2. Altria Investment Committee

Defendants also argue that because the Altria Investment Committee ceased performing fiduciary duties in 2001, all claims against the Committee should be dismissed because any alleged breaches it may have been involved in occurred before July 2, 2002. (See R. 113, Defs.' Mem. at 11.) In response, Plaintiffs concede that the Altria Investment Committee stopped being a fiduciary over six years before they originally filed suit. (R. 120, Pls.' Mem. at 23.) They assert, however, that "[i]n cases of fraudulent concealment, the six-year limitation period does not commence until the date on which Plaintiffs reasonably should have discovered the fiduciaries' breach of duty." (Id.) In their complaint, Plaintiffs only allege concealment with respect to Count III. (R.107, Pls.' Second Am. Compl. ¶¶ 79-80.) The Court will therefore limit its examination of Plaintiffs' fraudulent concealment argument to the allegations in Count III in its analysis of whether the complaint should be dismissed against the Altria Investment Committee.

Dismissing a claim as untimely at the pleading state is an "unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *See*

19

*Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009).

Dismissal is appropriate, however, "when the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness." *Id.* Here, Plaintiffs have alleged that "from 1990 to 2001, [the Altria Investment Committee] had the authority and responsibility to select, control and manage the investment operations of the Plan." (R. 107, Pls.' Second Am. Compl. ¶ 42.) Based on the Court's reading of the allegations, Plaintiffs appear to allege that the Altria Investment Committee ceased being a fiduciary in 2001. This reading is confirmed by Plaintiffs' brief, which states that the Altria Investment Committee "ceased to be a fiduciary over six years before the participants filed their original action in this case." (R. 120, Pls.' Mem. at 23.)[14] Thus, the Court finds that any "last action" involving alleged breaches of fiduciary duty by the Committee could not have taken place later than 2001. This finding, combined with ERISA's directive that "[n]o fiduciary shall be liable with respect to a breach of fiduciary duty . . . if such breach was committed . . . after he ceased being a fiduciary," 29 U.S.C. § 1109, makes clear that the Altria Investment Committee may not be held liable for any alleged breaches taking place after 2001. As a result, Plaintiffs' six-year window to bring suit against the Altria Investment Committee for breach of fiduciary duty closed prior to July 2, 2008. Accordingly, the Court dismisses Counts I and II against the Altria Investment Committee and its individual members as time-barred under ERISA's six-year statute of limitation.

Unlike Counts I and II, Plaintiffs argue that Defendants fraudulently concealed their

---

[14] Whether the Altria Investment Committee had any non-investment related fiduciary duties after 2001 is unclear from the face of the complaint. In light of this uncertainty, the Court can properly use Plaintiffs' brief to "clarify allegations in [the] complaint whose meaning is unclear." *Pegram v. Herdrich*, 530 U.S. 211, 230 n.10 (2000) (using plaintiff's brief to clarify unclear allegations in the complaint in a case involving a 12(b)(6) motion to dismiss).

20

breaches with respect to Count III. (R. 120, Pls.' Mem. at 23.) Plaintiffs contend that Defendants engaged in acts of fraudulent concealment, and therefore maintain that ERISA's statute of limitations did not start running until the "date of discovery" of the breaches outlined in Count III. (*Id.* at 23-24.)

29 U.S.C. § 1113(2) provides that "in the case of fraud or concealment, [an ERISA] action may be commenced not later than six years after the date of discovery of such breach or violation." The Seventh Circuit has interpreted Section 1113's "fraud or concealment" language as referring "to steps taken by the defendant to hide the fact of the breach rather than to the underlying nature of plaintiffs' claim." *Radiology Center*, 919 F.2d at 1220. It has stated that an ERISA defendant can "delay a wronged beneficiary's discovery of his claim either by misrepresenting the significance of facts the beneficiary is aware of (fraud) or by hiding facts so that the beneficiary never becomes aware of them (concealment)." *Id.* Further, it has noted that the phrase "fraud or concealment" in Section 1113 "incorporates the fraudulent concealment doctrine."[15] *Id.*

Plaintiffs argue that the fraudulent concealment doctrine preserves the claims contained in Count III against the Altria Investment Committee. (R. 120, Pls.' Mem. at 23.) Defendants reply to this argument by asserting that Plaintiffs, as a result of invoking the doctrine of fraudulent concealment, must plead the allegations pertaining to the acts constituting fraudulent

---

[15] Cases generally distinguish between two types of acts that constitute fraudulent concealment: (1) self-concealing acts (such as substantive fraud claims); and (2) active concealment. *See Martin*, 966 F.2d at 1094. Under the first category, the defendant must engage in "some misleading, deceptive or otherwise contrived action or scheme, *in the course of committing the wrong*, that is designed to mask the existence of a cause of action." *Id.* (emphasis added). In contrast, cases in the second category involve acts distinct from the substantive breach which aim to conceal the underlying substantive breach. *See Wolin v. Smith Barney*, 83 F.3d 847, 852 (7th Cir. 1996), disapproved on other grounds by *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 194-96 (1997).

21

concealment with particularity. (R. 122, Defs.' Reply at 23.) Only by doing so, Defendants

argue, can Plaintiffs prevent Count III from suffering the same fate as Counts I and II with

respect to the Altria Investment Committee.

It is without question that allegations of fraud–or a claims sounding in fraud–trigger

heightened pleading under Federal Rule of Civil Procedure 9(b). *Borsellino v. Goldman Sachs

Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007); *Slaney v. The Int'l. Amateur Athletic Fed'n*, 244

F.3d 580, 597 (7th Cir. 2001). The question before the Court, however, is whether responses to

affirmative defenses which allege fraudulent concealment must also be pleaded with the

particularity required by Rule 9(b). The Seventh Circuit has yet to hold that such specificity in

this context is required. What the Seventh Circuit has clearly held is that "a plaintiff is not

required to negate an affirmative defense, such as the statute of limitations, in his complaint."

*Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir. 2003) (vacating and remanding lower

court's dismissal of a complaint); *U.S. Gypsum Co. v. Indiana Gas Co., Inc.*, 350 F.3d 623, 626

(7th Cir. 2003) (holding that a complaint's failure to overcome affirmative defenses does not

warrant dismissal).[16] Thus, in this case, Plaintiffs need not plead fraudulent concealment with

particularity to negate Defendants' statute of limitations defense. At this procedural stage, the

"question is only whether there is any set of facts that if proven would establish a defense to the

statute of limitations." *Clark*, 318 F.3d at 768; *Moore v. Morales*, 415 F. Supp. 2d 891, 894

---

[16] In *Wolin*, the Seventh Circuit stated that "fraudulent concealment is a species of fraud
. . . and so for example must be pleaded with particularity." 83 F.3d at 854 (citing *Larson v.
Northrop Corp.*, 21 F.3d 1164, 1173 (D.C. Cir. 1994). This statement, however, is dictum as it
was not essential to the disposition of any issue presented in *Wolin*. While persuasive, requiring
Plaintiffs to negate Defendants' statute of limitations arguments by pleading with particularity
would seemingly conflict with *Clark* and *Gypsum*. Thus, the Court places a diminished weight
upon *Wolin* and its statement regarding the pleading of fraudulent concealment.

(N.D. Ill. 2006). In their complaint, Plaintiffs allege that Defendants hid the underlying breach of fiduciary duty by actively concealing material information regarding: (1) their lack of prudence in selecting and retaining the Growth Equity Fund and Balanced Fund; and (2) their alleged conflicts of interest in selecting investment options. (*See* R. 107, Pls.' Second Am. Compl. ¶¶ 79, 80.) Based on the substance in Count III, the Court finds that the complaint alleges sufficient facts to state a plausible basis for invoking the doctrine of fraudulent concealment. Accordingly, Count III with respect to the Altria Investment Committee is not dismissed for violating ERISA's six-year statute of limitations.

## H. Rule 8

Next, Defendants argue that Plaintiffs' claims fail to satisfy Rule 8 pleading standards. (R. 113, Defs.' Mem. at 14-15.) To satisfy Rule 8, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). A complaint states a plausible claim for relief if its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### A. Count I

Defendants argue that Count I does not satisfy Rule 8 for various reasons. First, they contend that the complaint fails to identify any administrative function for which excessive fees were paid that would plausibly entitle Plaintiffs to any relief from any Altria Defendant. (*Id.* at 15-16.) Further, they assert that Plaintiffs' claim for relief is deficient in that it does not distinguish between the various Altria Defendants in making their allegations regarding excessive administrative fees. (*Id.* at 16-17.) Finally, Defendants argue that, as a matter of law,

23

Count I fails to state a claim because "Plaintiffs allege nothing more than that Hewitt's compensation was high." (*Id.* at 16.)

In Count I, the complaint alleges several actions that, Plaintiffs maintain, constitute breaches of fiduciary duty. They aver, among other things, that Defendants failed to monitor fees the Plan paid to Hewitt for administrative services. (R. 107, Pls.' Second Am. Compl. ¶ 52.) As a part of this general lack of reasonableness with respect to administrative fees, Plaintiffs also allege that Defendants did not account for the "additional compensation" Hewitt was receiving from the investment manager of the Growth Equity Fund. (*Id.*) These allegations, along with the rest contained in Count I, are not the "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" that *Twombly* deemed insufficient to survive a 12(b)(6) motion to dismiss. 550 U.S. at 555. Rather, taken as true, these allegations suggest plausible violations of the duties ERISA places on fiduciaries. *See* 29 U.S.C. § 1104(a)(1). Defendants' unsupported arguments requesting greater specificity fail to persuade the Court. Accordingly, the Court finds that Count I states a plausible claim for breach of fiduciary duty, and therefore satisfies Rule 8.[17]

## B. Count II

Similarly, Defendants argue that Count II also fails to satisfy Rule 8. They contend that, stripped of its legal conclusions, Count II "alleges that the mere use of a unitized fund, along with its incidental costs, is inherently imprudent." (R. 113, Defs.' Mem. at 17.) The Court finds that this argument is predicated upon an oversimplification of the allegations contained in the

---

[17] Citing *Hecker*, Defendants argue that Count I fails as a matter of law because "fiduciaries have no obligation to seek out the lowest cost provider." (R. 113, Defs.' Mem. at 14-15.) In *Hecker*, the Seventh Circuit held that "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible [mutual] fund." 556 F.3d at 586. This holding fails to support Defendants' argument for various reasons, but the Court only notes that, at a fundamental level, *Hecker* says nothing regarding the duty a fiduciary holds with respect to a 401(k) investment plan's administrative services fees.

complaint. Count II alleges more than the mere "inherent impruden[ce]" of allowing the Altria and Kraft Stock Funds to be maintained as unitized funds. Rather, it alleges, among other things, that Defendants failed to engage in an adequate process "to evaluate the superior structure of Plan investment option which allows participants to invest in shares of the common stock of Altria and Kraft instead of in unitized stock funds." (R. 107, Pls.' Second Am. Compl. ¶ 60.) Further, Count II alleges that the Altria and Kraft Stock Funds underperformed as a result of Defendants' decisions to hold excess cash and incur excessive management fees. (*Id.*) The allegations in Count II, combined with the rest of the averments in the complaint, set forth "enough facts to state a claim to relief that is plausible on its face" under ERISA. *Twombly*, 550 U.S. at 570. The Court therefore finds that the allegations in Count II satisfy Rule 8.

## C.     Count III

Defendants contend that Count III is similarly deficient. First, they maintain that Plaintiffs allege little more than underperformance by the Growth Equity and Balanced Funds. Such an allegation, they argue, is insufficient to state a claim because ERISA "requires prudence, not prescience." (R. 113, Defs.' Mem. at 18, quoting *DeBruyne v. Equitable Life Assurance Soc'y of U.S.*, 920 F.2d 457, 465 (7th Cir. 1990).) Moreover, they assert that, to the extent the complaint alleges that the Funds were imprudent "because of excessive fees or merely because they were mutual fees," Count III must be dismissed for failing to assert a plausible claim. (*Id.*)

The breaches of fiduciary duty described in the complaint extend beyond the characterizations set forth by Defendants. At its core, Count III alleges that Defendants breached their fiduciary duty by failing to utilize a meaningful process to review the continued appropriateness of the Growth Equity and Balanced Funds as Plan investment options. (R. 107,

25

Pls.' Second Am. Compl. ¶ 78.) Taking the factual portions of the complaint as true, this allegation, read in conjunction with the rest of the averments in Count III, satisfies Rule 8's plausibility requirement by "pleading factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citation omitted). Based on these factual allegations, Plaintiffs have stated a plausible claim for relief under ERISA. A recent Eighth Circuit opinion involving comparable allegations arrives at the same conclusion. *See Braden v. Wal-Mart Stores, Inc.*, 08-3798, 2009 WL 4062105, at *5-9 (8th Cir. Nov. 25, 2009) (reversing lower court's dismissal of complaint whose gravamen was defendants' failure to adequately evaluate the investment options included in its employee retirement plan). Thus, the Court finds that Count III also satisfies Rule 8's pleading requirements.

## III.   Improper Pleading of Fiduciary Status

Defendants' final set of arguments in favor of dismissal assert that the complaint is deficient in pleading the fiduciary status of each of the named Defendants. (R. 113, Defs.' Mem. at 19-20.) Specifically, they ask the Court to dismiss the complaint because it impermissibly alleges "that all Defendants in a particular count are fiduciaries, at all times, and for all Plan functions." (*Id.*)

Under ERISA, a person is a fiduciary with respect to a plan to the extent "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he

26

has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). Because a person is considered a fiduciary only to the extent he or she exercises discretionary authority, "a person may be an ERISA fiduciary for some purposes, but not for others." *Baker v. Kingsley*, 387 F.3d 649, 660 (7th Cir. 2004) (citations omitted). In determining whether a person can be held liable for breach of fiduciary duty, a court must ask whether that person is a fiduciary with respect to the particular activity at issue. *Id.* To survive a motion to dismiss, plaintiffs must include allegations that support the defendant's status as a plan fiduciary. *See Sharp Electronics Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 512 (7th Cir. 2009).

In determining whether a person is a fiduciary, plan documents can provide guidance; such documents, however, are not dispositive. *See, e.g., Concha v. London*, 62 F.3d 1493, 1501-02 (9th Cir. 1995); *Rogers v. Baxter Int'l Inc.*, 417 F. Supp. 2d 974, 986 (N.D. Ill. 2006), *aff'd*, 521 F.3d 702 (7th Cir. 2008). Without being a named fiduciary, a person can become a plan fiduciary by engaging in any of the activities or possessing the discretionary authority, control, or responsibility described in 29 U.S.C. § 1002(21)(A). *See, e.g., Rogers*, 417 F. Supp. 2d at 986. Because the determination of whether a person behaved in a fiduciary capacity often involves factual issues, courts have frequently declined to decide a defendant's fiduciary status on a motion to dismiss. *See, e.g., Will v. Gen. Dynamics*, No. 06-698-GPM, 2009 WL 3835883, at *2 (S.D. Ill. Nov. 14, 2009) (stating that "in the absence of allegations in a complaint affirmatively showing that a party is not an ERISA fiduciary, ordinarily the question of fiduciary status is factual and not appropriate for resolution on the pleadings"); *Sheriff v. Bridgeford Foods Corp.*, No. 08 C 3570, 2009 WL 2972506, at *4 (N.D. Ill. Sept. 9, 2009) (declining to address party's

27

fiduciary status on a motion to dismiss); *In re Elec. Data Sys. Corp. "ERISA" Litig.*, 305 F. Supp. 2d 658, 665-66 (E.D. Tex. 2004) (observing that "[i]t is typically premature to determine a defendant's fiduciary status at the motion to dismiss stage of the proceedings. The issue of fiduciary status is a mixed question of law and fact").

The crux of Defendants' final set of arguments is that Plaintiffs have failed to properly allege that each of the Defendants were fiduciaries for the activities described in each count where they are named as defendants. (*See* R. 113, Defs.' Mem. at 19-24.) In support of their various arguments, they direct the Court's attention to Plan documents which they claim fail to show that certain named defendants possessed or exercised fiduciary authority, responsibility, or control over the payment of administrative services fees (Count I) and the selection of Plan investment options (Counts II and III). (*See id.*) Indeed, as Defendants have correctly argued, a person can only be held liable for a breach of fiduciary duty where the "person is a fiduciary with respect to the particular activity at issue." *Baker*, 387 F.3d at 660. The Court notes, however, that because the determination of a party's fiduciary status with respect to a particular activity in this case is a fact-sensitive inquiry, such a determination is best left for a later stage of these proceedings.[18] Merely reviewing the Plan documents does not definitely determine the fiduciary status of each defendant. Thus, dismissal of the Defendants on this basis at this stage is premature. Accordingly, the Court finds that the resolution of the fiduciary status of each

---

[18] Courts may dismiss a complaint on a 12(b)(6) motion for failing to properly allege the fiduciary status of a defendant. *See, e.g., Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463 (7th Cir. 2007) (affirming lower court's dismissal of ERISA suit under Rule 12(b)(6) because the defendant could not be an ERISA fiduciary under the facts alleged). Such a dismissal, however, is warranted where a defendant could not, as a matter of law, be an ERISA fiduciary under the facts alleged in the complaint. Here, in contrast, Defendants' arguments for dismissal pertaining to the fiduciary status of each defendant are factual, and thus better addressed at a later procedural stage.

28

defendant must be reserved for a time when a fuller factual record is before it.

## CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss (R. 112) is GRANTED in part and DENIED in part. The Court GRANTS Defendants' motion to dismiss as it relates to Counts I and II against the Altria Investment Committee and its individual members. It also GRANTS Defendants' motion to dismiss as it pertains to Counts IV and V. The Court DENIES Defendants' motion in all other respects. The parties are directed to reevaluate their settlement positions in light of this opinion and to exhaust all efforts to settle this case. All discovery in this delayed case shall be completed by July 1, 2010. The parties shall appear for a status on January 6, 2010 at 9:45 a.m.

Entered: _____

**Judge Ruben Castillo**
**United States District Court**

**Dated:** December 17, 2009