UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GERALD GEORGE, CATHY DUNN, and TIMOTHY STREFF, individually and as representatives of a class of similarly situated persons, | ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| KRAFT FOODS GLOBAL, INC., et al., | ) |
| | ) |
| Defendants. | ) |

No. 08 C 3799

Judge Ruben Castillo

## MEMORANDUM OPINION AND ORDER

Gerald George ("George"), Cathy Dunn ("Dunn"), and Timothy Streff ("Streff") bring this putative class action on behalf of themselves and all other similarly situated persons (collectively, "Plaintiffs")[1], against Kraft Foods Global, Inc. ("Kraft Global"), Kraft Foods, Inc. ("Kraft"), Kraft Foods Global, Inc. Management Committee of Employee Benefits ("Kraft Employee Benefits Committee"), Kraft Foods Global, Inc. Administrative Committee ("Kraft Administrative Committee"), the Compensation and Governance Committee of the Kraft Foods, Inc. Board of Directors ("Kraft Compensation Committee"), Kraft Foods Global, Inc. Benefits Investment Committee ("Kraft Benefits Investment Committee"), and the Kraft Benefits Investment Group (collectively, "Kraft Defendants"). (R. 107, Second Am. Compl.) Additionally, Plaintiffs name Altria Corporate Services, Inc. ("Altria Services"), the Corporate Employee Plans Investment Committee of the Board of Directors of Altria Group, Inc. ("Altria

---

[1] Andrew Swanson ("Swanson") was formerly a named plaintiff in this action. (R. 107, Second Am. Compl.) On May 19, 2010, Plaintiffs filed a motion to withdraw Swanson as a named plaintiff. (R. 161, Pls.' Mot. to Withdraw.) The Court granted their motion on June 1, 2010. (R. 163, Min. Entry.)

Investment Committee"), and the Benefits Investment Group of Altria Corporate Services, Inc.

("Altria Benefits Investment Group") (collectively, "Altria Defendants"), as defendants. (*Id.*)

Plaintiffs allege that the Kraft and Altria Defendants (collectively, "Defendants") breached

fiduciary duties established by the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. § 1001 *et seq.*, and seek declaratory, monetary, and equitable relief. (*Id.*)

Presently before the Court is Plaintiffs' motion for class certification pursuant to Federal Rule of

Civil Procedure 23. (R. 146, Pls.' Mot.) For the reasons stated below, the motion is granted.

## RELEVANT FACTS

### I. The Parties

#### A. Plaintiffs

As part of its compensation and benefits package, Kraft offers certain employees the

opportunity to participate in the Kraft Foods Global, Inc. Thrift Plan, No. 125 (the "Plan"), which

is a defined contribution plan[2] under ERISA. (R. 107, Second Am. Compl. ¶¶ 3-6, 28.)

Plaintiffs are participants in the Plan,[3] which is structured as a 401(k) and contains an employee

stock ownership provision. (*Id.*) A "plan document" establishes and defines the operation of the

Plan. (*Id.* ¶ 30.) Plan assets are held in a single trust fund known as the Kraft Foods Global Inc.

---

[2] A "defined contribution plan" is a "pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002 (34).

[3] ERISA defines a participant as "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7).

2

Master Defined Contribution Trust (the "Master Trust"). (*Id.*)

### B. The Kraft Defendants

In addition to being the Plan sponsor,[4] Plaintiffs allege that Kraft Global is also a "named

fiduciary"[5] and a "fiduciary"[6] with respect to the Plan. (*Id.* ¶ 8.) According to Plaintiffs, Kraft,

through its board members and agents, exercised discretionary control and authority over Plan

assets and the administration of the Plan, and is therefore also a fiduciary as defined by ERISA.

(*Id.* ¶ 7.) Plaintiffs also claim that the Kraft Employee Benefits Committee is both the Plan

administrator[7] and a fiduciary. (*Id.* ¶ 9.) Further, they allege that because the Kraft Employee

---

[4] ERISA defines a plan sponsor as "(i) the employer in the case of an employee benefit plan established or maintained by a single employer, (ii) the employee organization in the case of a plan established or maintained by an employee organization, or (iii) in the case of a plan established or maintained by two or more employers or jointly by one or more employers and one or more employee organizations, the association, committee, joint board of trustees, or other similar group of representatives of the parties who establish or maintain the plan." 29 U.S.C. § 1002(16)(B).

[5] A named fiduciary is "a fiduciary who is named in the plan instrument, or who, pursuant to a procedure specified in the plan, is identified as a fiduciary (A) by a person who is an employer or employee organization with respect to the plan or (B) by such an employer and such an employee organization acting jointly." 29 U.S.C. § 1102(a)(2).

[6] A entity is considered a "fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan . . . ." 29 U.S.C. § 1002(21)(A).

[7] The term administrator means "(i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor; or (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe." 29 U.S.C. § 1002(16)(A).

3

Benefits Committee delegated the authority and discretion to control certain Plan operations and administrative duties to the Kraft Administrative Committee, the latter is also considered a Plan administrator and fiduciary. (*Id.* ¶ 10.) Plaintiffs also aver that the Kraft Compensation Committee is both a named fiduciary and a fiduciary. (*Id.* ¶ 11.) They claim that the Kraft Compensation Committee's status as a fiduciary is based on its delegated authority and discretion to control and manage the investments of the Plan, along with its responsibility for appointing investment managers, trustees, and monitoring investment performance. (*Id.*) Plaintiffs allege that the Kraft Compensation Committee possessed this authority from 2001 through 2004. (*Id.* ¶ 41.)

Plaintiffs also aver that the Kraft Benefits Investment Committee is a named fiduciary and Plan administrator. (*Id.* ¶ 13.) According to Plaintiffs, its status as a fiduciary is predicated upon: (1) its authority and discretion to control and manage the investment operations of the Plan; and (2) its overall responsibility for the administrative oversight of the Plan. (*Id.* ¶¶ 13, 39-40.) Additionally, as a result of its delegated authority and discretion to control certain Plan investment operations, the Kraft Benefits Investment Group is also alleged to be a fiduciary and Plan administrator. (*Id.* ¶ 15.)

C.    **The Altria Defendants**

Plaintiffs allege that between 1990 and 2001, the Altria Investment Committee was "delegated authority and discretion to control the operation, administration, management, and/or investment operations of the Plan." (*Id.* ¶¶ 16, 43.) Thus, they claim that the Altria Investment Committee is or was a fiduciary and a Plan administrator. (*Id.* ¶ 16.) Similarly, Altria Services is alleged to be a fiduciary and a Plan administrator. (*Id.* ¶ 17.) Altria Services provides advice,

4

assistance, compliance services in areas such as human resources, corporate affairs, and finance to its parent company, Altria Group, Inc. ("Altria")[8] and its operating companies, which includes Kraft. (*Id.*) Indeed, according to Plaintiffs, Altria Services entered into a Services Agreement (the "Agreement") with Kraft, whereby Altria Services and its agents provided a variety of services to Kraft, including identifying, selecting, and monitoring investment options, along with fulfilling administrative duties for the Plan. (*Id.* ¶ 7.) In satisfying its responsibilities under the Agreement, Plaintiffs allege that Altria Services exercised discretionary control and authority over Plan assets, administration, and/or management, and is thereby properly considered a fiduciary and a Plan administrator. (*Id.*) Finally, Plaintiffs aver that because the Altria Benefits Investment Group exercised discretionary control and authority over Plan assets, administration, and management, it too is a fiduciary. (*Id.* ¶ 18.)

## II.     The Plan

Participating employees may invest their Plan contributions in any one of several investment options selected by Defendants; they may not choose investment alternatives other than these options. (*See id.* ¶¶ 31-32.) The Plan options can be grouped into three investment categories: (1) Separate Accounts/Commingled Funds, which allow investment in the Euro Equity Fund, International Equity Fund, U.S. Mid Cap/Small Cap Fund, U.S. Large Equity Index Fund, U.S. Government Obligations Fund, and Interest Income Fund; (2) Actively Managed Mutual Funds, permitting investment in the Balanced Fund and Growth Equity Fund; and (3) Unitized Single Stock Funds, which permit contributions to be invested in the Altria Stock Fund (consisting of Altria common stock and cash) and the Kraft Foods Stock Fund (consisting of

---

[8] Altria was formerly known as Philip Morris, Inc. (*Id.* ¶ 33(c).)

Kraft common stock and cash). (*Id.* ¶ 33.) According to Plaintiffs, Defendants are responsible for monitoring and changing the funds in which Plan participants may invest. (*Id.* ¶ 32.)

The complaint distinguishes between administrative and investment operations. Throughout the relevant time periods, the Kraft Benefits Investment Committee had the overall responsibility to oversee administrative operations of the Plan. (*Id.* ¶ 39.) From 1990 to March 30, 2007, pursuant to the Agreement between Kraft and Altria Services, the Kraft Benefits Investment Committee, Kraft Compensation Committee, and the Altria Investment Committee delegated certain duties, including administrative oversight of the Master Trust and Plan, to the Altria Benefits Investment Group. (*Id.* ¶ 43.) The responsibility for tracking Plan investment and expenses was also delegated to the Altria Benefits Investment Group. (*Id.*) Since March 30, 2007, the Kraft Benefits Investment Committee delegated certain responsibilities and duties for the administrative oversight and investment operations of the Plan to the Kraft Benefits Investment Group. (*Id.* ¶ 44.)

Since 2004, the Kraft Benefits Investment Committee has possessed the authority and responsibility to control and manage the investment operations of the Plan. (*Id.* ¶ 40.) As part of its duties, it had the authority to appoint, monitor, and retain trustees, custodians, and investment managers. (*Id.*) Moreover, it was responsible for monitoring the performance of the Plan's investment options. (*Id.*) Between 2001 and 2004, the Kraft Compensation Committee had the authority and responsibility to manage the investment operations of the Plan. (*Id.* ¶ 41.) According to Plaintiffs, between 1990 and 2001, the authority over the Plan's investment operations was held by the Altria Investment Committee. (*Id.* ¶ 43.)

## PROCEDURAL HISTORY

On July 2, 2008, Plaintiffs initiated their original class action against Defendants on behalf of all similarly situated Plan participants. (R. 1, Compl.) Plaintiffs amended their original complaint on November 20, 2008. (R. 61, Pls.' First Am. Compl.) In February 2009, Plaintiffs moved for leave to file their Second Amended Complaint. (R. 82, Pls.' Mot. For Leave to File Sec. Am. Compl.) After the Court granted their motion, Plaintiffs filed their Second Amended Complaint (the "complaint") on July 31, 2009. (R. 107, Second Am. Compl.)

On August 31, 2009, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 112, Mot. to Dismiss.) In December 2009, the Court granted Defendants' motion in part, and denied it in part. *George v. Kraft Foods Global, Inc.*, 674 F. Supp. 2d 1031, 1050 (N.D. Ill. 2009) ("*George II*"). The Court's December 2009 ruling–combined with a joint stipulation entered into by the parties–leaves only Count III of the complaint remaining for consideration.[9]

In Count III, Plaintiffs allege that Defendants violated the fiduciary duties set forth at 29 U.S.C. §§ 1104-05 by including the Growth Equity Fund and Balanced Fund (the "Funds") as Plan investment options. (*See* R. 107, Second Am. Compl. ¶¶ 63-82.) They claim that the selection and retention of the Funds violated the duties established by ERISA because, at the time the decision to invest in them was made, both were expected to underperform relative to comparable investment alternatives. (*Id.* ¶ 78.) This violation, they allege, was the result of Defendants' deficient investment policies which failed to review the appropriateness of the

---

[9] On February 22, 2010, the parties jointly stipulated that Counts I and II of the complaint would be dismissed without prejudice against the remaining Altria Defendants. (R. 144, Joint Stipulation of Dismissal.)

inclusion of the Funds as Plan investment options. (*Id.*) Further, Plaintiffs allege that Defendants breached their fiduciary duties by paying unreasonable and excessive fees for investment management and administrative services. (*Id.*) Moreover, Plaintiffs aver that Defendants actively concealed, through the reporting and disclosure of improper benchmarks, material information regarding their imprudent decision to select and retain the Funds as Plan investment options. (*Id.* ¶¶ 78, 80.) They bring this count on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2) ("Section 1132(a)(2)"). (*Id.* ¶ 82.)

Presently before the Court is Plaintiffs' motion for class certification. (R. 146, Pls.' Mot.) In their motion, Plaintiffs ask the Court to "certify Count III of their Second Amended Complaint as a class action under Fed. R. Civ. P. 23(b)(1)." (*Id.*) Alternatively, they request the certification of a class under Rule 23(b)(2) or Rule 23(b)(3). (*Id.*) Plaintiffs seek to represent the following class:

> All persons, excluding the Defendants, the Committees, and their members and/or other individuals who are or may be liable for the conduct described in this Complaint, who are or were participants or beneficiaries of the Plan and who are, were, or may have been affected by the conduct set forth in Count III of the Second Amended Complaint, as well as those who will become participants or beneficiaries of the Plan in the future.

(*Id.* ¶ 4.)

## LEGAL STANDARD

A plaintiff seeking class certification has the burden of proving that the proposed class meets the requirements of Rule 23. *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000). A district court may certify a class of plaintiffs if the putative class satisfies all four requirements of Rule 23(a)–numerosity, commonality, typicality, and adequacy of

representation–and any one of the conditions of Rule 23(b). *Siegel v. Shell Oil Co.*, No. 09-3451, 2010 WL 2977315, at *3 (7th Cir. July 30, 2010). In addition, an implicit prerequisite to class certification is that a sufficiently definite class must exist. *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977-78 (7th Cir. 1977). If these requirements are met, the district court has broad discretion to determine whether certification is appropriate in a particular case. *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 596 (7th Cir. 1993). Before deciding whether to allow a case to proceed as a class action, a district court judge should make whatever factual and legal inquiries are necessary under Rule 23, even if those considerations overlap the merits of the case. *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001).

## ANALYSIS

As their primary position, Plaintiffs argue that their proposed class should be certified under Rule 23(b)(1). (R. 146, Pls.' Mot. ¶ 9.) Alternatively, they request the certification of a class pursuant to Rule 23(b)(2) or Rule 23(b)(3). (*Id.*) Defendants present several arguments in opposing class certification. First, Defendants argue that George and Streff lack Article III standing, and thus cannot represent the proposed class. (R. 158, Defs.' Mem. at 9-10.) Second, they contend that all of Rule 23(a)'s requirements are not satisfied because Plaintiffs' claims are atypical. (*Id.* at 10-15.) They further assert that Plaintiffs are not adequate class representatives. (*Id.*) Next, Defendants argue that the proposed class is "inherently flawed" because it arguably depends on the merits, includes non-investors and future investors, and contains individuals who signed releases. (*Id.* at 15-18.) Finally, Defendants maintain that if the Court finds that Rule 23(a) has been satisfied, Rule 23(b)(2) "would be the only appropriate section under which to certify a class in this case." (*Id.* at 18-20.) The Court will address each of Defendants'

9

contentions as it examines whether Rule 23's requirements have been satisfied. Prior to considering Rule 23's requirements, the Court will first address Defendants' Article III standing argument.

## I. Article III Standing

Given the imprecision with which the terms are generally used by litigants, the Court believes it will be fruitful to briefly highlight the differences between Article III, prudential, and statutory standing. Article III standing enforces the Constitution's case-or-controversy requirement. *Winkler v. Gates*, 481 F.3d 977, 979 (7th Cir. 2007). In contrast, prudential standing embodies "'judicially self-imposed limits on the exercise of federal jurisdiction.'" *Id.* (quoting *Allen v. Wright*, 468 U.S. 737, 751(1984)). Rather than dealing with the jurisdiction of the federal courts, statutory standing is simply a matter of statutory interpretation. *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 296 (3d Cir. 2007). In determining whether a plaintiff has statutory standing, a court considers whether Congress, via a statutory provision, "has accorded *this* injured plaintiff the right to sue the defendant to redress his injury." *Id.* These three concepts are distinct, and should be treated as such.

Two related points warrant emphasis. First, satisfying Article III's requirements does not automatically confer statutory standing. *See Kohen v. Pacific Inv. Mgmt. Co., LLC*, 571 F.3d 672, 677 (7th Cir. 2009) (noting that a party lacks statutory standing in situations where "although the plaintiff has been injured and would benefit from a favorable judgment and so has standing in the Article III sense, he is suing under a statute that was not intended to give him a right to sue"). Second, statutory standing is not a substitute for Article III standing. *See Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) ("It is settled that Congress cannot erase Article III's

standing requirements by statutorily granting the right to sue to a plaintiff who would not

otherwise have standing."). In other words, fulfilling statutory standing requirements does not

provide Article III standing. With this background in mind, the Court proceeds to examining

Article III standing.

An Article III standing inquiry "focuses on whether the plaintiff is the proper party to bring

th[e] suit." *Raines*, 521 U.S. at 818 (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38

(1976)). It is the "burden of the party who seeks the exercise of jurisdiction in his favor clearly

to allege facts demonstrating that he is a proper party to invoke judicial resolution of the

dispute." *Spencer v. Kemna*, 523 U.S. 1, 11 (1998) (internal quotation marks omitted). To

satisfy Article III's standing requirement, a party must establish: (1) an injury in fact; (2) a causal

connection between the injury and the conduct complained of; and (3) a likelihood that the injury

will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61

(1992); *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 756 (7th Cir. 2008).

This inquiry remains the same even if the case is proceeding as a class action: "That a

suit may be a class action, however, adds nothing to the question of standing, for even

named plaintiffs who represent a class must allege and show that they personally have been

injured, not that injury has been suffered by other, unidentified members of the class to

which they belong and which they purport to represent." *Simon*, 426 U.S. at 40 n.20; *see

also Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) ("[I]t bears repeating that

a person cannot predicate standing on injury which he does not share. Standing cannot be

acquired through the back door of a class action."). To have standing as a class

representative, the plaintiff must be part of the class, "that is, he must possess the same

interest and suffer the same injury shared by all members of the class he represents." *Keele v. Wexler*, 149 F.3d 589, 592-93 (7th Cir. 1998) (citing *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)).

To satisfy the first element of the Article III standing inquiry, a plaintiff must have suffered "an injury in fact–an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations and quotation marks omitted). A particularized injury is one that affects the plaintiff in a "personal and individual way." *Id.* at 561 n.1. Moreover, a plaintiff must properly allege such an injury for each claim she seeks to assert. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (stating that "the Court's standing cases confirm that a plaintiff must demonstrate standing for each claim he seeks to press") (citing *Allen*, 468 U.S. at 752).

Defendants assert that George has not suffered an injury in fact because he "never invested in the two Funds at issue, and has no intention of ever investing in the Balanced Fund," and thus does not have Article III standing. (R. 158, Defs.' Mem. at 9.) Similarly, they contend that Streff does not have Article III standing because he never invested in the

12

Growth Equity Fund.[10] (*Id.*) The Court finds Defendants' arguments unconvincing.

In Count III of their complaint, Plaintiffs allege that Defendants violated their fiduciary duties by, among other things, including the Growth Equity Fund and Balanced Fund as Plan investment options. (*See* R. 107, Second Am. Compl. ¶¶ 63-82.) They claim that the inclusion of the Funds as investment options violated the duties established by ERISA because, at the time the decision to invest in these funds was made, both were expected to underperform relative to comparable investment alternatives. (*Id.* ¶ 78.) This violation, they maintain, was the result of Defendants' deficient investment policies. (*Id.*) The complaint makes clear that, contrary to Defendants' contentions, the injury alleged is not tied to actual investment in any particular fund. George and Streff–like other plan participants and beneficiaries regardless of their specific investments–had a legally protected interest in a fiduciary who acted in accordance with ERISA's standard of care.[11] The claimed violation of that legally protected interest flowing from Defendants' allegedly deficient behavior with respect to the Growth Equity Fund and Balanced Fund thus

---

[10] While under the rubric of an Article III standing analysis, Defendants also appear to contend that Streff's claim is moot. (R. 158, Defs.' Mem. at 9.) According to Defendants, Streff's claim is moot because he cashed out of the Plan in 2008. (*Id.*) A claim becomes "moot when a party's legally cognizable interest in the litigation ceases." *Evers v. Astrue*, 536 F.3d 651, 662 (7th Cir. 2008). Here, despite the fact that Streff is no longer a Plan participant, he still has a legally cognizable interest in this litigation. If the merits are resolved in favor of Plaintiffs, any potential recovery by the Plan may benefit participants and beneficiaries, including former participants like Streff. *Cf. Harzewski v. Guidant Corp.*, 489 F.3d 799, 803 (7th Cir. 2007) ("Obviously the [former employees who cashed out of their plans] have standing to sue in the sense of being entitled to ask for an exercise of the judicial power of the United States as that term in Article III of the Constitution has been interpreted, because if they win they will obtain a tangible benefit.").

[11] The Court also notes that participants and beneficiaries, along with the Secretary of Labor and fiduciaries, have a "common interest" in the "financial integrity of the plan." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985).

constitutes a cognizable injury for Article III purposes. *See, e.g., Evans v. Akers*, 534 F.3d 65, 74-75 (1st Cir. 2008) (finding that plaintiffs' allegation of fiduciary mismanagement "identifies a concrete injury that is redressable by a court and falls with the scope of Article III standing"); *Fin. Inst. Ret. Fund v. Office of Thrift Supervision*, 964 F.2d 142, 147-49 (2d Cir. 1992) (holding that allegations regarding breach of fiduciary duty under ERISA sufficient to confer Article III standing). Additionally, the Court concludes that Article III's causation and redressability requirements have also been met. Accordingly, the Court finds that George and Streff have Article III standing.

## II. Rule 23

### A. Rule 23(a)

#### 1. Numerosity

To satisfy the numerosity requirement, the proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "While there is no threshold or magic number at which joinder is impracticable, a class of more than 40 members is generally believed to be sufficiently numerous for Rule 23 purposes." *Ringswald v. County of Dupage*, 196 F.R.D. 509, 512 (N.D. Ill. 2000). Further, "a plaintiff does not need to demonstrate the exact number of class members as long as a conclusion is apparent from good-faith estimates." *Barragan v. Evanger's Dog and Cat Food Co., Inc.*, 259 F.R.D. 330, 333 (N.D. Ill. 2009).

Here, Plaintiffs point to documentation indicating that the potential class size consists of several thousand current or former participants and beneficiaries. (*See* R. 39, Defs.' Mot. to Dismiss, Ex. 14 at 3.) Given the number of individuals who would be potentially

involved in this action, the Court finds that joinder would be impracticable. Accordingly, Plaintiffs have carried their burden with regard to Rule 23's numerosity requirement.

### 2. Commonality

Rule 23(a) also requires the plaintiff to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele*, 149 F.3d at 594 (citing *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). Class certification cannot be defeated merely because there are some factual variations among class members' grievances. *Rosario*, 963 F.2d at 1017. Indeed, "[n]ot all factual or legal questions raised in the litigation need to be common if at least one issue is common to all class members." *Randolph v. Crown Asset Mgmt.*, LLC, 254 F.R.D. 513, 517 (N.D. Ill. 2008).

In this case, Plaintiffs argue that the common questions among the proposed class members include the following: (1) the interpretation and application of the Plan documents to Defendants; (2) whether each Defendant is a fiduciary as to the Growth Equity Fund and/or Balanced Fund; (3) the nature and scope of the duties Defendants owed in managing the Funds; and (4) whether Defendants imprudently invested in the Growth Equity Fund and/or Balanced Fund. (R. 147, Pls.' Mem. at 4; R. 107, Second Am. Compl. ¶ 25(b).) The Court finds that Plaintiffs have not only pointed to a "common nucleus of operative fact," but have also shown that there are several legal questions that are common to the class. As such, the Court is convinced that Rule 23's commonality requirement has

been met.[12]

### 3.  Typicality

To satisfy Rule 23(a), a plaintiff must also show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  The typicality requirement "directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Retired Chi. Police Ass'n*, 7 F.3d at 596 (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)); *accord Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009).  A "'plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele*, 149 F.3d at 595 (citation omitted).  Typicality is based on the defendant's conduct and the plaintiff's legal theory, not particularized defenses the defendant may have against certain class members. *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996) (citations omitted).[13]

The Court finds that Plaintiffs' claims are typical of those of the class.  In short, Plaintiffs, like other members of their putative class, seek relief on behalf of the Plan for alleged breaches of fiduciary duty.  Although there may be intraclass factual differences, in determining whether the typicality requirement has been met a court must look at the

---

[12]  Defendants have not attacked Plaintiffs' ability to satisfy Rule 23's numerosity and commonality requirements. (*See* R. 158, Defs.' Mem. at 10.)

[13]  The Court notes that while the typicality and adequacy requirements are closely related in that they address the desirable characteristics of the proposed class representatives, 3 Alba Conte & Herbert Newberg, Newberg on Class Actions § 3.13, pp. 318-19 (4th ed. 2002) ("Newberg on Class Actions"), they are different concepts that should be analyzed separately.

essential characteristics of the claims of class members at large. *Retired Chi. Police Ass'n*, 7 F.3d at 596. Here, the relevant conduct–allegedly imprudent decisions involving the Funds–and legal theory–breach of fiduciary duty under ERISA–are the same for Plaintiffs and other members of their proposed class. Nothing more is required to satisfy Rule 23. *See, e.g., Brieger v. Tellabs, Inc.*, 245 F.R.D. 345, 350-55 (N.D. Ill. 2007) (holding that "plaintiffs' claims are typical of those of the putative class, principally because they seek relief on behalf of the Plan under [Section 1132(a)(2)] for alleged fiduciary violations as to the Plan"). The Court therefore finds that Plaintiffs have satisfied Rule 23's typicality requirement.

Defendants present several reasons why they believe Plaintiffs are unable to satisfy the typicality requirement. First, Defendants argue that George and Streff's claims are not typical because "neither one suffered the injuries complained of by the proposed class." (R. 158, Defs.' Mem. at 10.) As previously discussed, Plaintiffs and their proposed class share the same injury: the invasion of their legally protected interest in a prudent fiduciary. This argument thus fails to persuade the Court.[14]

Second, Defendants argue that Dunn's claims are atypical because she first invested in the Balanced Fund after filing suit in a related action. (*Id.* at 11.) According to Defendants, Dunn's continued investment in the Balanced Fund generates a "unique defense" that renders her unsuitable to represent the class. (*Id.* at 12.) Relatedly, they also contend that Plaintiffs' claims are not typical because they all currently invest in actively-managed

---

[14] Defendants also appear to suggest that release forms signed by George and Streff render their claims atypical. (R. 158, Defs.' Mem. at 11.) The Court will address the release issue later in this opinion.

17

funds. (*Id.*) Put simply, Plaintiffs' individual investment decisions do not undermine their ability to seek relief for the breaches of fiduciary duty alleged in this case. For Rule 23's typicality requirement to be satisfied, the relevant conduct by the defendant and legal theory must be the same for Plaintiffs' claims and those of members of their putative class. *See Wagner*, 95 F.3d at 534. Individual investment decisions by the Plaintiffs do not affect this analysis because, under a typicality analysis, what is at issue are the actions of the defendants, and not the plaintiffs. *Rosario*, 963 F.2d at 1018 ("[W]e look to the defendant's conduct . . . to satisfy Rule 23(a)(3).") Similarly, these decisions do not distinguish Plaintiffs' breach of fiduciary duty theory from those of other potential class members and, as such, fail to render their claims atypical. *Wagner*, 95 F.3d at 534 ("Typicality is based on . . . the plaintiff's legal theory, not particularized defenses the defendant may have against certain class members."). Thus, these arguments do not defeat a finding of typicality under Rule 23(b)(3).

Next, Defendants contend that their assertion of a "safe harbor" defense raises individual issues that undermine a typicality finding. (R. 158, Defs.' Mem. at 12.) The Court is similarly unpersuaded by this argument.

The statutory basis for the "safe harbor" defense provides, in pertinent part:

In the case of a pension plan which provides for individual accounts and permits a participant or beneficiary to exercise control over the assets in his account, if a participant or beneficiary exercises control over the assets in his account (as determined under regulations of the Secretary)--

(i) such participant or beneficiary shall not be deemed to be a fiduciary by reason of such exercise, and (ii) no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control, except that this clause shall not apply in connection

with such participant or beneficiary for any blackout period during which the ability of such participant or beneficiary to direct the investment of the assets in his or her account is suspended by a plan sponsor or fiduciary.

29 U.S.C. § 1104(c). The statute's implementing regulations state that to be eligible for the "safe harbor" defense, Plan fiduciaries must provide participants or beneficiaries with an opportunity to exercise control over assets in their individual account and an opportunity to choose, from a broad range of investment alternatives, the manner in which some or all of the assets in their account are invested. 29 C.F.R. § 2550.404c-1(b).

Given this framework, Defendants' argument fails to unsettle the Court's typicality determination because to determine whether the "safe harbor" defense applies, no individualized issues need to be resolved. As Plaintiffs correctly note, the potential applicability of this defense is determined at the Plan, and not individual, level. (R. 164, Pls.' Reply at 5.) Indeed, case law cited by Defendants in the relevant portion of their supporting memorandum indicates that the applicability of the "safe harbor" defense does not raise "individualized issues that would defeat typicality." *See, e.g., Lingis v. Motorola, Inc.*, 649 F. Supp. 2d 861, 877-880 (N.D. Ill. 2009) (applying "safe harbor" defense to a imprudent investment option claim without delving into individual issues). In short, the potential applicability of the "safe harbor" defense does nothing to distinguish Plaintiffs' claims from those of absent class members, and thus does not undermine the Court's typicality finding.[15]

Finally, Defendants assert that Plaintiffs' claims are atypical because they are arguably barred by ERISA's statute of limitations. (R. 158, Defs.' Mem. at 13-14.) Again, the Court

---

[15] Other courts have also rejected attempts to use the "safe harbor" defense to undermine typicality. *See, e.g., Brieger v. Tellabs, Inc.*, 245 F.R.D. 345, 352-53 (N.D. Ill. 2007).

finds their position unpersuasive. Under Rule 23's typicality requirement, the relevant inquiry focuses on the relationship between the representative's legal theory and that of absent class members. *Retired Chi. Police Ass'n*, 7 F.3d at 596. Where the theories differ, a representative's claim is atypical, and certification is therefore inappropriate. *Muro*, 580 F.3d at 492-93 (affirming denial of class certification where named plaintiff's legal theory differed from that of other class members). Here, the potential applicability of a statute of limitations defense does not affect the relationship of the legal theories between named and unnamed class members, and thus does not disturb the Court's determination that the typicality requirement has been satisfied. *See* Newberg on Class Actions § 3.16, p. 378 ("Defenses may affect the individual's ultimate right to recover, but they do not affect the presentation of the case on the liability issues for the plaintiff class. This view is supported by the principle that the class representative need not show a probability of individual success on the merits[.]").

### 4. Adequacy

The fourth and final Rule 23(a) consideration requires that the class representatives be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine if a named plaintiff has met the adequacy requirement, the Court must ask whether the individual: "(1) has antagonistic or conflicting claims with other members of the class; (2) has sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) has counsel that is competent, qualified, experienced and able to vigorously conduct the litigation." *Wahl v. Midland Credit Mgmt.*, 243 F.R.D. 291, 298 (N.D. Ill. 2007). It is "not difficult" for a plaintiff to satisfy her burden in establishing the adequacy requirement.

20

*Id.* (quoting *Murray v. New Cingular Wireless Servs., Inc.*, 232 F.R.D. 295, 300 (N.D. Ill. 2005)).

The Court cannot identify any conflict between Plaintiffs' claims and those of unnamed class representatives. In addition, the Court finds that Plaintiffs have a sufficient interest in this litigation, and thus will vigorously advocate their positions. Finally, the record indicates that, based on their experience in the area of complex ERISA litigation, Plaintiffs' attorneys are "competent, qualified, and experienced" and will be able to vigorously conduct this litigation. Given these uncontested conclusions, the Court finds that Plaintiffs have satisfied Rule 23(a)'s adequacy requirement.

Defendants argue that "Plaintiffs' inability to identify any meaningful support for Count III and their apparent disengagement from the litigation renders them inadequate class representatives." (R. 158, Def.'s Mem. at 15.) This contention is unpersuasive because, to satisfy the adequacy requirement, a class representative must only maintain an "understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to participate in discovery." *Wahl*, 243 F.R.D. at 298 (quoting *Murray*, 240 F.R.D. at 398.) In this case, the record indicates that Plaintiffs have a basic understanding of the litigation and have also participated in discovery. (*See* R.164, Pls.' Reply, Exs. 2-4.) Rule 23(a) does not require more from named class representatives.

In summary, the Court finds that Plaintiffs have carried their burden of proving that all four of Rule 23(a)'s requirements have been met. The Court now turns to examining whether at least one of Rule 23(b)'s requirements have been satisfied.

**B.      Rule 23(b)**

21

To be maintained as a class action, a representative suit must also satisfy at least one of Rule 23(b)'s three conditions. *Siegel*, 2010 WL 2977315, at *3. As their primary position, Plaintiffs assert that their proposed class can be certified under Rule 23(b)(1). (R. 146, Pls.' Mot. ¶ 9.)

Rule 23(b)(1) contains two disjunctive clauses which define two related types of class actions. These two types of class actions are set forth in the Rule as follows:

> A class action may be maintained if Rule 23(a) is satisfied and if:
> (1) prosecuting separate actions by or against individual class members would create a risk of:
>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed. R. Civ. P. 23(b)(1). Under either Rule 23(b)(1)(A) or (B), "the shared character of rights claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999).

The Advisory Committee notes to Rule 23 observe that Rule 23(b)(1)(B) "takes in situations where the judgment in a nonclass action by or against an individual member of the class, while not technically concluding the other members, might do so as a practical matter." Fed. R. Civ. P. 23, advisory committee notes (1966 amendments). The notes provide that "an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other

beneficiaries, and which requires an accounting or like measures to restore the subject of the trust" is an example of the type of action covered by Rule 23(b)(1)(B). *Id.* The Supreme Court has observed that "[a]mong the traditional varieties of representative suit encompassed by Rule 23(b)(1)(B) were those involving the presence of property which call[ed] for distribution or management." *Ortiz*, 527 U.S. at 834 (internal quotation marks and citation omitted). Courts have held that, in light of the derivative nature of Section 1132(a)(2) claims, breach of fiduciary duty claims brought under this statutory provision are "paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009) (citing cases).

Plaintiffs bring Count III pursuant to Section 1132(a)(2). (R. 107, Second Am. Compl. ¶ 82.) Section 1132(a)(2) allows breach of fiduciary duty actions to be brought in a representative capacity on behalf of the plan as a whole. *Russell*, 473 U.S. at 142 n.9. In defining liability, ERISA makes clear that any recovery for an alleged breach of fiduciary duty will go to the plan. 29 U.S.C. § 1109(a); *Kuper v. Iovenko*, 66 F.3d 1447, 1452-53 (6th Cir. 1995) (stating that "ERISA does not permit recovery by an individual who claims a breach of fiduciary duty" but rather "contemplates that breaches of fiduciary duty injure the plan, and, therefore, any recovery under such a theory must go to the plan"). Here, any potential recovery of losses resulting from the alleged breaches of fiduciary duty will go to the Plan and would theoretically place it in the position it would have been in but for the alleged breaches. *See* 29 U.S.C. § 1109(a) (stating that any fiduciary who breaches any of the duties imposed by ERISA "shall be personally liable to make good" to the plan any losses "resulting from each such breach"). Thus, as a practical matter, victory on the merits

23

in this case would be dispositive of the interests of other participants or beneficiaries who would subsequently seek to cure the harm purportedly suffered by the Plan resulting from breaches of fiduciary duty alleged in Count III. Accordingly, the Court finds that Count III can properly be certified under Rule 23(b)(1)(B).[16] This conclusion is consistent with the rulings of other courts who found certification of Section 1132(a)(2) claims under Rule 23(b)(1)(B) appropriate. *See, e.g., In re Schering Plough Corp.*, 589 F.3d at 604-05 (finding that a Section 1132(a)(2) claim alleging a breach of fiduciary duty "clearly satisfied" Rule 23(b)(1)(B)); *George v. Kraft*, 251 F.R.D. 338, 352 (N.D. Ill. 2008) (certifying Section 1132(a)(2) claim alleging a breach of fiduciary duty under Rule 23(b)(1)(B)); *Brieger*, 245 F.R.D. at 357 (same); *Loomis v. Exelon Corp.*, No. 06 C 4900, 2007 WL 2060799, at *5 (N.D. Ill. June 26, 2007) (same).

### III. Miscellaneous challenges

In their supporting memorandum, Defendants make additional arguments in which they suggest that the class is overly broad or otherwise defective. (*See* R. 158, Defs.' Mem. at 15-18.) The Court will address each contention in turn.

First, Defendants argue that the "proposed class definition is inappropriate because it would require a decision on the merits before class members could be identified." (*Id.* at 16.) Defendants specifically contend that the portions of the proposed class excluding "other individuals who are or may be liable for the conduct described in this Complaint"

---

[16] Defendants argue that Rule 23(b)(1)(B) is for "limited fund" cases, and is thus an inappropriate basis for certification. (R. 158, Defs.' Mem. at 19.) Defendants cite no case law for this proposition. (*See id.*) The Court's review of authoritative sources on this subject also failed to reveal any basis for this assertion. Thus, this argument fails to disturb the Court's conclusion.

and including "[a]ll persons . . . who are or were participants or beneficiaries of the Plan and who are, were, or may have been affected by the conduct set forth in Count III" impermissibly depends on the merits. (*Id.*)

An implicit prerequisite to class certification is that a sufficiently definite class must exist. *Alliance to End Repression*, 565 F.2d at 977-78. Indeed, a class definition must be "precise, objective, and presently ascertainable." Federal Judicial Center, Manual for Complex Litigation, § 21.222, p. 270 (4th ed. 2004). Further, a class definition should avoid subjective standards or terms that depend on resolution of the merits. *Id.*

The Court finds that Plaintiffs' proposed class is flawed for two reasons: (1) the exclusion of those "who are or may be liable" impermissibly links the class definition to the merits of the case; and (2) the use of the word "affected" in defining who is properly included in the class is much too nebulous, and thus renders the proposed class definition unacceptably imprecise. The Court will modify the proposed class accordingly.

Next, Defendants maintain that future Plan participants and beneficiaries should be excluded from the class.[17] (*See* R. 158, Defs.' Mem. at 16.) Specifically, Defendants argue that future participants and beneficiaries should be excluded because they have not suffered an actual or imminent injury, and thus lack Article III standing. (*Id.*)

A party seeking to establish Article III standing must show: (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61. To satisfy the first element of the Article III standing inquiry, a plaintiff must have suffered "an

---

[17] Defendants also suggest that individuals who have not invested in the Funds also lack Article III standing. This contention has already been rejected in this opinion.

injury in fact–an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal citations and quotation marks omitted).

"A suit to redress an injury to the plaintiff is a 'case' or 'controversy' within the meaning that the courts have imprinted on these words of Article III of the Constitution, as long as there is some nonnegligible, nontheoretical, probability of harm that the plaintiff's suit if successful would redress." *MainStreet Org. of Realtors v. Calumet City, Ill.*, 505 F.3d 742, 743 (7th Cir. 2007) (internal citations and quotation marks omitted). Here, future participants and beneficiaries have Article III standing because there is a "nonnegligible, nontheoretical, probability of harm" involving injuries arising out of Defendants' allegedly imprudent decisions. These future participants and beneficiaries–like current participants and beneficiaries–will have their legally protected interest in a prudent fiduciary invaded by the practices that Plaintiffs allege in Count III. These injuries, the Court finds, would be redressed by the injunctive relief Plaintiffs seek in this case.[18] Accordingly, the Court concludes that future participants and beneficiaries have Article III standing and can properly be included in Plaintiffs' class.

Finally, Defendants argue that individuals who signed releases should be excluded from the class. (R. 158, Defs.' Mem. at 17-18.) In support of this argument, Defendants

---

[18] Persons who might be injured in the future may be included in a class seeking injunctive and declaratory relief. *See* Newberg on Class Actions § 3.6, p. 260. The inclusion of future members assures that they will personally benefit from any prospective relief granted on their behalf. *Id.* at 265. While future members should not automatically be included in a class whenever prospective injunctive relief is sought, *id.* at 264, courts have included future participants in actions similar to the one presently before the Court. *See George*, 251 F.R.D. at 345; *Loomis*, 2007 WL 2060799, at *5.

present evidence that a number of former employees left the company with a severance package which required them to execute a release agreement. (R. 158, Defs.' Mem., Ex. Z.) The template release agreements submitted by Defendants indicate that, by signing the release, the employee "release[s] the Company and its affiliated companies and their officers, directors, agents, and employees from all known and unknown claims, promises, causes of action, or similar rights of any kind (Claims) that [the employee] may have as of the date [he/she] sign[s] the release." (*Id.*) The releases explicitly exclude "any rights [the employee] may have to non-forfeitable benefits under the Company's benefit plans" from their coverage. (*Id.*)

The Court reads the release agreements in this case as addressing individual, non-benefit plan related claims that could have been brought against Kraft. They do not, however, release an employee's right to pursue relief on behalf of the Plan. Other courts have also held that an individual who has signed a release is not barred from bringing claims under Section 1132(a)(2) on behalf of an ERISA plan. *See In re Schering Plough Corp.*, 589 F.3d at 594 ("The vast majority of courts have concluded that an individual release has no effect on an individual's ability to bring a claim on behalf of an ERISA plan under [Section 1132(a)(2)].") (citing cases); *George*, 251 F.R.D. at 346-47; *Loomis*, 2007 WL 2060799, at *6. Accordingly, the Court will not exclude individuals who signed

27

releases from the class definition.[19]

## CONCLUSION

For the reasons stated above, Plaintiffs' motion for class certification (R. 146) is GRANTED. The modified class, which is certified under Rule 23(b)(1), is defined as follows:

> All persons who were participants or beneficiaries of the Plan, all current participants or beneficiaries of the Plan, and those who will become participants or beneficiaries of the Plan in the future. The Defendants and all of their officers and directors (named or unnamed) are excluded from the class.

Pursuant to Rule 23(g)(1), the Court appoints Schlichter Bogard & Denton as class counsel.

The Court remains free to modify this order in light of subsequent developments in the litigation. Fed. R. Civ. P. 23(c)(1). The parties are directed to reevaluate their settlement positions in light of this opinion and to exhaust all efforts to settle this case.

Entered:

**Judge Ruben Castillo**
**United States District Court**

**Dated:** August 25, 2010

---

[19] In a footnote, Defendants contend that "in a case like this, the plaintiffs do not seek relief on behalf of the Plan as a whole, but solely for their own Plan account." (R. 158, Defs.' Mem. at 18 n.7.) Given the arguably individual nature of their claims, they suggest that a valid release also precludes participation in this action by individuals who signed releases. (*Id.*) In support of this proposition, the rely upon the Supreme Court's decision in *LaRue v. DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248 (2008). The Court finds their reliance on *LaRue* is misplaced. In *LaRue*, the Supreme Court did not recategorize actions under Section 1132(a)(2) as individual suits. Rather, *LaRue* extended the relief available under Section 1132(a)(2) to include breaches of fiduciary duty that solely affect one participant's account. *Id.* at 256. *LaRue* did nothing to alter the nature of suits brought on behalf of a plan under Section 1132(a)(2).