IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GERALD GEORGE et al., | ) |
| | ) |
| Plaintiffs, | ) No: 08 CV 3799 |
| v. | ) |
| | ) Judge Ruben Castillo |
| KRAFT FOODS GLOBAL INC. et al., | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFFS' SUR-REPLY MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO VACATE THE COURT'S CLASS CERTIFICATION ORDER**

SCHLICHTER, BOGARD & DENTON
Jerome J. Schlichter, jschlichter@uselaws.com
Nelson G. Wolff, nwolff@uselaws.com
Troy A. Doles, tdoles@uselaws.com
Jason P. Kelly, jkelly@uselaws.com
120 W. Main Street, Ste. 208
Belleville, IL 62220
100 South Fourth Street, Ste. 900
St. Louis, MO 63102
Tel: 314-621-6115
Fax: 314-621-7151
Lead Counsel for Plaintiffs

Plaintiff's proposed amended class definition squarely fits within the guidance of the *Spano* decision. Plaintiff's proposed class is based on specific conduct of the Defendants, not the Plan participants, and is narrowly tailored to address those fiduciary breaches committed by Defendants. Defendants' opposition to Plaintiff's amended class is based primarily, if not exclusively, on the wildly speculative and often rejected "expert" opinion of Dr. Lassaad Turki that conveniently leads Defendants to the inevitable conclusion, contrary to *Spano*, that no ERISA action can ever be certified. Dr. Turki's opinions should be rejected and Plaintiff's amended class should be certified.

## I. Plaintiff's Proposed Amended Class Satisfies Rule 23(a)

### A. Plaintiff's amended class includes members too numerous to join in one action.

Defendants contend that Plaintiff's amended class does not meet the numerosity requirement under Rule 23(a)(1). Defendants are wrong. Public documents filed by Defendants demonstrate that thousands of participants invested hundreds of millions of dollars in the challenged funds during relevant time periods. Exhibit 1 at KRAFTG0003021 and 3028; Exhibit 2 at KRAFTG0003076 and 3084; Exhibit 3 at KRAFTG0003040 and 3048. More recent documents confirm that this trend continued. Exhibit 4 at KRAFTG0007871 and KRAFTG0761772. Defendants' own documents further demonstrate that during this time period when thousands of Plan participants invested hundreds of millions of dollars in the challenged funds, those funds underperformed. For instance, at the time the Growth Equity Fund was replaced, it underperformed its benchmark on a *5 year* cumulative basis by over 46%. Exhibit 5. Similar 5 year cumulative underperformance is demonstrated in earlier class years. Exhibit 6 (5

year cumulative underperformance of 37.1%).[1] For these reasons, joinder of the thousands of participants who suffered loss would be impracticable, if not impossible. Fed.R.Civ.P. 23(a)(1).

**B. Plaintiff and the amended class definition satisfy the commonality, typicality, and adequacy requirements.**

Ms. Dunn is a member of the proposed class. First, although not required under *Spano*, Ms. Dunn was invested in *both* actively managed U.S. stock funds at issue in this case. Doc. 237 (sealed); *see Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011)(noting that plaintiff did not have an interest in "either" of the two challenged funds). In addition, Defendants admitted that Ms. Dunn's investments in the two challenged funds underperformed the passively managed funds in Plaintiff's proposed amended class definition. Doc. 220 at 9 ("Dunn did invest in both Funds at times when they underperformed the passively managed funds plaintiffs advocate"). Ms. Dunn is a member of the amended class.

Defendants tacitly concede that Plaintiff's amended definition satisfies the *Spano* congruence requirement but contend the amended definition fails under Rule 23(a)(2)-(4) for reasons that go well beyond the holding in *Spano*. Specifically, Defendants contend, based *exclusively* on the opinions of a class certification "expert," Lassaad Turki, that intra-class conflicts defeat certification under Rule 23(a). In sum, Dr. Turki opines that inter-class conflicts defeat class certification because Plaintiff's amended class definition does not allow or provide for the optimal or maximum recovery for each and every Plan participant. As explained below, Dr. Turki's "optimal" breach opinions have been rejected by other courts and should be rejected here. *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 79 (E.D. Va. Mar. 22, 2006); *Shanehchian v. Macy's, Inc.*, 2011 WL 883659 at *6-7 (S.D. Ohio Mar. 10, 2011), attached as Exhibit 7.

---

[1] Defendants' expert John Peavy admitted that the Growth Equity Fund and the Balanced Fund cumulatively underperformed their respective benchmarks. Doc. 204-248 at ¶64; Doc. 204-249 at ¶67.

### 1. Dr. Turki's opinions are irrelevant, speculative, and misplaced

The Court should disregard Dr. Turki's opinions for a variety of reasons. First, and foremost, Dr. Turki misconstrues Plaintiff's claims (purposefully or not) as a case brought by individuals seeking recovery for their individual damages. From this mischaracterization, Dr. Turki opines as to the presence of intra-class conflicts based on an analysis that "may" require a review of each Plan participant's "investment sophistication, risk tolerance, investment objectives," preference of active management over passive management, and "investment behavior." Doc. 239 ¶6. From these speculative theories, Dr. Turki concludes that the Court *could* be swamped with individual details that defeat certification of a class. First, Defendants cite no authority that participants' "preferences" are necessary in assessing *Defendants' prudence*. In any event, Dr. Turki's characterization does not accurately reflect the true posture of this case. As referenced above, this case is based on *Defendants'* conduct, *their* investment selections, *their* timing, and *their* conclusions. At no time did Defendants ever inquire with any Plan participant, including Cathy Dunn, as to their individual preferences regarding specific investment alternatives or active versus passive management. Dr. Turki's speculative fears based on participants' preferences and investment beliefs, with whom he has admittedly never spoken, is pure conjecture and should be disregarded. Suffice to say however, no participant had an interest in Defendants' including funds they knew were imprudent.

### 2. Dr. Turki's optimal recovery opinions creating intra-class conflicts have been rejected by other courts.

Defendants' arguments that Plaintiff's amended class definition fails the commonality, typicality, and adequacy requirement are based exclusively on Dr. Turki's opinions that intra-class conflicts preclude this Court from ever certifying a class. Doc. 238 at 5-7. Succinctly, Dr. Turki opines that Plaintiff's proposed amended class fails to account for (1) more favorable

3

investment alternatives that some unidentified class member(s) may prefer and/or (2) more favorable timing as to the beginning date and ending date of the class that some unidentified class member(s) may prefer. In sum, Dr. Turki contends that Plaintiff has not, nor could she ever, represent a class that assures that each and every class member will be guaranteed the maximum (i.e. "optimal") amount of return on their loss. Dr. Turki's "optimal" opinions have been rejected by other courts, for sound reasons, and should be rejected by this Court. *DiFelice*, 235 F.R.D. at 79; *Shanehchian*, 2011 WL 883659 at *7.

In a case wherein Dr. Turki's "optimal" breach and insurmountable intra-class conflicts opinions were rejected, the court stated the following[2]:

> Defendants' concern that individualized "optimal breach dates" create intra-class conflicts is misplaced and, if heeded, would effectively eliminate all ERISA fiduciary breach of duty class actions. While it may be true that each individual participant in the Plans would likely be affected differently by varying the breach date, this is a red herring. As the Court noted at the hearing, when a line is drawn, some people suffer. That is simply the nature of the class action beast and is not a compelling reason to find intra-class conflicts precluding certification. Defendants repeatedly argue that the conflict arises because Plaintiffs' counsel will pick a date to advocate for, which date will necessarily advantage some class members and disadvantage others. But even if that's true, the Court does not see how that creates a preclusive intra-class conflict. Plaintiffs' counsel is perfectly free to advocate whatever is best for the Plans, but the Court will make its determination of if and when Defendants breached their fiduciary duties to the Plans based on the evidence in the record and the controlling law, irrespective of the "preferred" or "optimal" breach dates for any given individual.

*Shanelchian*, 2011 WL 883659 at *7.

In rejecting Dr. Turki's opinions, and certifying a class, the *Shanehchian* court continued by stating that, ultimately, the "choice of a breach date will ultimately be up to the Court" based on

---

[2]. The court in *Shanehchian* summed up defendants' argument in as follows: "Defendants' expert, Dr. Turki, posits that each individual putative class member would be affected differently by the choice of different breach dates and that each individual would have an "optimal breach date," which would be the date that would provide the individual with the greatest financial return. Because class counsel, according to Defendants, will be forced to choose a breach date, that choice necessarily would advantage some over others, which creates insurmountable intra-class conflicts." *Id*. at *6.

4

the evidence, not by counsel for either party. *Id*. Dr. Turki's "optimal" breach opinions were similarly rejected by the court in *DiFelice,* 235 F.R.D. 70, 79 (To the extent that class members have different "optimal imprudence date[s]," this "slight divergence is greatly outweighed by shared interests in establishing [defendant's] liability"). The *Spano* decision does not require, in order for a case to be certified, that each and every class member receives his or her maximum recovery. Rather, *Spano* only requires that there be a congruence between the investment holdings of the named plaintiff and the class she seeks to represent, and that participants who profited from their investments be excluded from the class. *Spano*, 633 F.3d at 586-587. Because Dunn invested in and lost money in the imprudent funds, and because the class includes only those individuals who sustained loss, and specifically excludes those that gained, Plaintiff's amended class definition meets *Spano* and Dunn is a typical and adequate representative of that class.

### 3. Defendants' statute of limitations defense does not defeat class certification

Defendants' novel and unsupported argument that the statute of limitations creates insurmountable intra-class conflicts should be rejected. This Court will determine the fiduciaries' breach(es) and the timing of same, not Defendants. If the Court concludes that Plaintiff has demonstrated fraud and concealment, it may certify a class dating back to Defendants' breach in May 1999. Doc. 191 ¶¶56-61, 65-74. If the Court does not believe fraud and concealment has been established, it may certify a class dating back to the statutory period of July 2002. *Id*. at ¶¶78-80, 100-01. As to the substance of Defendants' statute of limitations argument, Defendants concealed their conclusion that they could not selective outperforming active U.S. stock managers. Doc. 191 ¶¶56-61. This concealment dates back to May 1999. Doc. 191 ¶¶56-61, 65-74; Doc. 216 ¶¶157-60.

5

### 4. Ms. Dunn is an adequate class representative

Defendants' continued assertion that Ms. Dunn is an inadequate class representative because she invested in the Balanced Fund after she alleged them to be imprudent is false. Doc. 235 at 8. Ms. Dunn invested in the Balanced Fund over one year *before* Plaintiffs discovered Defendants' breaches. Doc. 236 at 8-9. Notably, Defendants previously acknowledged the timing of these events when they earlier stated "Dunn Is Inadequate Because She Invested in the Balanced Fund For the First time **After She Filed** *George I*." Doc. 158 at 11 (emphasis added). Now, by purposefully confusing the timing of the *George I* and *George II* actions, Defendants are casting false aspersions against Ms. Dunn.

## II.     Plaintiff's Proposed Amended Class Satisfies Rule 23(b)

In support of their argument that Plaintiff's amended class does not satisfy Rule 23(b)(1) or (b)(2), Defendants again primarily rely on Dr. Turki's speculative and previously rejected opinions. Doc. 238 at 9-10. First, Defendants contend that because Plaintiff alleges the challenged funds to be imprudent, she cannot seek to represent a class of only those individuals who experienced loss while invested in those funds. Rather, Defendants argue that imprudence claims must include a class of all participants invested in the challenged funds. Of course, if that were the case, Defendants would argue that *Spano* does not allow for all participants in a fund class because inevitably some members in the class may have luckily timed their investment so as to avoid harm. As can be seen, Defendants' arguments simply boil down to a conclusion that no class may ever be certified, a conclusion that finds no support in *Spano*. *Spano*, 633 F.3d at 588 ("Nothing we have said should be understood as ruling out the possibility of class treatment for one or more better-defined and more-targeted classes."). As to Rule 23(b)(1)(B), Defendants

argue that "many in the proposed class *may* prefer to articulate their claim differently, as set forth above, but *could* still seek to recover based upon the alleged imprudence of the Funds." Doc. 238 at 11 (emphasis added). Defendants fail to explain how a slightly different "articulation" would not practically dispose of the claim of any other participant seeking to recover for the imprudence of the same fund. In sum, Defendants, on the one hand, object to a class that includes all participants or even all participants in the challenged fund. One the other hand, Defendants object to a class of only certain participants as too narrow. Defendants cannot argue both sides at once. Defendants' further assertion that participants excluded from the amended class may bring separate claims exposing Defendants to multiple actions thus defeating certification under Rule 23(b)(1)(A) is fanciful. First, this argument is simply more warmed-over Dr. Turki opinion that should be rejected. Moreover, Plaintiff's amended class, as guided by *Spano*, excludes those participants who have not experienced loss. *Spano*, 633 F.3d at 587. To be clear, *Spano* did not hold that a class can only be certified if every conceivable "conflict" is eliminated. To the contrary, *Spano* simply holds that there must be a "congruence" between the named plaintiff and the class so as to ensure that some class members are not harmed by being in the class. *Id*. at 586. Boiled down, Defendants' argument is that insurmountable conflicts exist because some class members will not be benefited enough from this case. *Shanehchian v. Macy's, Inc*., 2011 WL 883659 at *7. That is plainly not what *Spano* requires and Defendants' arguments to the contrary should be rejected.[3]

---

[3] Defendants argument that Rule 23(b)(1)(B) is exclusively for "limited fund" cases is invalid. Indeed, the Supreme Court clearly indicated that a limited fund class action was but "[o]ne recurring type" of claim concerning "property . . . for distribution or management", which was not limited to, but rather, "[a]mong the traditional varieties of representative suit encompassed by Rule 23(b)(1)(B)." *Ortiz*, 527 U.S. at 834; see also *Amchem Prod. Inc. v. Windsor*, 521 U.S. 591, 614 (1997) ("Rule 23(b)(1)(B) includes, *for example*, 'limited fund' cases") (emphasis added).

7

Equitable relief providing for the removal of the remaining actively managed U.S. stock fund in the Plan, the Balanced Fund, is consistent with Defendants' prior actions. In 2005, Defendants removed the Growth Equity Fund from the Plan and replaced this fund with the "lowest cost," passively managed, commingled fund. Doc. 191 ¶94. Defendants, on their own accord, "automatically transferred" (or mapped) these participants' assets invested in the Growth Equity Fund to the lowest cost passively managed new fund. Exhibit 8 at PLA 001671. Defendants never inquired with any participant as to his or her preference regarding active management. Rather, Defendants simply made that decision for the participants (a decision they should have made in May of 1999). A Rule 23(b)(2) class would provide this necessary relief for the remaining imprudent, actively managed fund in the Plan—the Balanced Fund.[4]

Defendants' argument that certification pursuant to Rule 23(b)(3) is inappropriate because "the individualized question of whether a participant came out ahead or behind Dunn's benchmark (or some other benchmark) is the key issue under" Plaintiffs proposed class is simply more Dr. Turki rejected opinion. *DiFelice*, 235 F.R.D. at 79; *Shanehchian*, 2011 WL 883659 at *7.

### III. Plaintiff's class definition is appropriate.

Defendants' objections to verbiage in Plaintiff's amended class definition are without merit. First, Defendants' passive investment policy for investing in U.S. stocks is wholly supported by the evidence. Doc. 191 at ¶¶78-80. Further, that passive alternatives were considered by Defendants as prudent is also supported by the evidence. *Id.* at ¶¶46-53, 89, 91-97. The proposed amended class is comprised of objective criteria – the performance of the imprudent funds and the alternative investments, which can be readily determined by reference to public sources and other documents in the record. Defendants' assertion that "complex comparative calculations"

---

[4] To be clear, Plaintiffs do not contend that the Balanced Fund "became prudent" after December 2009. Rather, end of year 2009, is the last date Plaintiff had full Plan end-of-year information and discovery.

are necessary to determine class membership is yet another reference to Dr. Turki's rejected opinions, and is only a potentially valid consideration with respect to the distribution of any settlement or judgment. However, even then, the Court and an independent fiduciary may approve a "fair and reasonable" plan of allocation without the need for any unduly burdensome calculation methods suggested by Defendants. E.g., *White v. Nat'l Football League*, 822 F.Supp. 1389, 1420-24 (D.Minn. 1993).

## CONCLUSION

For these reasons, Defendants' Motion should be denied and Plaintiff's proposed amended class should be certified.

Respectfully submitted,

SCHLICHTER, BOGARD & DENTON

 /s/ Troy A. Doles
Jerome J. Schlichter, jschlichter@uselaws.com
Nelson G. Wolff, nwolff@uselaws.com
Troy A. Doles, tdoles@uselaws.com
Jason P. Kelly, jkelly@uselaws.com
120 W. Main Street, Ste. 208
Belleville, IL  62220
100 South Fourth Street, Ste. 900
St. Louis, MO 63102
Tel:  314-621-6115
Fax:  314-621-7151
Lead Counsel

Thomas R. Meites
TRMeites@mmmglaw.com
Meites, Mulder, Mollica & Glink
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
Tel:  312-263-0272
Fax:  312-263-2942
Local Counsel

9

## CERTIFICATE OF SERVICE

This is to certify that on April 27, 2011, a copy of the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                          /s/ Troy A. Doles