# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GERALD GEORGE, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 08 C 3799 |
| ) | |
| KRAFT FOODS GLOBAL, INC., et al., ) | Judge Ruben Castillo |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Gerald George, Cathy Dunn, and Timothy Streff bring this class action on behalf of themselves and all other similarly situated persons (collectively, "Plaintiffs"),[1] against Kraft Foods Global, Inc. ("Kraft Global"), Kraft Foods, Inc. ("Kraft"), Kraft Foods Global, Inc. Management Committee of Employee Benefits ("Kraft Employee Benefits Committee"), Kraft Foods Global, Inc. Administrative Committee ("Kraft Administrative Committee"), the Compensation and Governance Committee of the Kraft Foods, Inc. Board of Directors ("Kraft Compensation Committee"), Kraft Foods Global, Inc. Benefits Investment Committee ("Kraft Benefits Investment Committee"), and the Kraft Benefits Investment Group (collectively, "Kraft Defendants"). (R. 107, Second Am. Compl.) Additionally, Plaintiffs name Altria Corporate Services, Inc. ("Altria Services"), the Corporate Employee Plans Investment Committee of the Board of Directors of Altria Group, Inc. ("Altria Investment Committee"), and the Benefits Investment Group of Altria Corporate Services, Inc. ("Altria Benefits Investment Group")

---

[1] Andrew Swanson was formerly a named plaintiff in this action. (R. 107, Second Am. Compl.) On May 19, 2010, Plaintiffs filed a motion to withdraw Swanson as a named plaintiff. (R. 161, Pls.' Mot. to Withdraw.) The Court granted their motion on June 1, 2010. (R. 163, Min. Entry.)

(collectively, "Altria Defendants"), as defendants. (*Id.*) Plaintiffs allege that the Kraft and Altria Defendants (collectively, "Defendants") breached fiduciary duties established by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and seek declaratory, monetary, and equitable relief. (*Id.*) Presently before the Court is Plaintiffs' cross-motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56. (R. 189, Pls.' Mot.) For the reasons stated below, the motion is denied.

## RELEVANT FACTS[2]

The Court's opinion resolving Defendant's cross-motion for summary judgment thoroughly describes many of the important undisputed facts in this case. (*See* R. 255, Mem. Op.) The Court therefore need not provide a detailed account of the underlying facts to decide Plaintiffs' cross-motion for partial summary judgment. A brief summary of the major undisputed facts will suffice.

Plaintiffs are current or former participants in the Kraft Foods Global, Inc. Thrift Plan (the "Plan"), a defined contribution plan governed by ERISA. (R. 211, Defs.' Resp. to Pls.' Facts ¶ 2.) The Plan designates the Investment Committee as having, among other powers, the power and authority to select, appoint, and remove managers, establish investment guidelines, and monitor the performance of each investment option in the Plan. (*Id.* ¶ 3.) The Investment Committee is a named fiduciary with respect to investment matters for certain defined benefit

---

[2] The relevant facts have been culled from Plaintiffs' Local Rule 56.1 Statement of Material Facts ("Pls.' Facts"), Defendants' Local Rule 56.1 Response ("Defs.' Resp. to Pls.' Facts") and Statement of Additional Facts ("Defs.' Facts"), and Plaintiffs' Response to Defendants' Statement of Additional Facts ("Pls.' Resp. to Defs.' Facts"). The Court also relied upon exhibits contained in Plaintiffs' Appendix ("Pls.' App.") and Defendants' Appendix ("Defs.' App."). Unless otherwise indicated, the following facts are undisputed.

plans sponsored by Kraft Global ("Defined Benefit Plans"). (*Id.* ¶ 4.) Before October 25, 2001, the Altria Investment Committee served as the Investment Committee. (*Id.* ¶ 5.) From October 25, 2001 to January 27, 2004, the Kraft Compensation Committee served as the Investment Committee. (*Id.* ¶ 6.) This role has been fulfilled by the Kraft Benefits Investment Committee since January 24, 2004. (*Id.* ¶ 7.)

On September 28, 1994, the Altria Investment Committee considered and approved the inclusion of new funds in the Plan. The objective for one–the Growth Equity Fund–was to offer a mid-to-small market capitalization ("mid-cap" and "small-cap") equity investment that included U.S. stocks outside the S&P 500 index. (*Id.* ¶ 20.) The objective for the other–the Balanced Fund–was to offer a single decision choice to participants desiring professional diversification. (*Id.*) The Altria Investment Committee offered the Heritage Fund as the investment option fund for the Growth Equity Fund, and the Bankers Trust Institutional Asset Management mutual fund as the underlying investment for the Balanced Fund. (*Id.* ¶¶ 22, 24.)

On May 25, 1999, the Altria Investment Committee reviewed the advantages and disadvantages of using index management within the equity segments of the Defined Benefit Plans. (*Id.* ¶ 46.) Discussions within this review noted the challenges of selecting consistently successful active managers, the low costs of indexing, the performance of indexing in down markets, and the composition of the popular S&P 500 index. (*Id.*) The Altria Investment Committee subsequently decided that the remaining actively managed portion of U.S. equities in the Defined Benefit Plans would be converted to the S&P 500 index. (*Id.* ¶ 48.) In doing so, it eliminated all active management in the Defined Benefit Plans. (*Id.* ¶ 49.)

In December 2004, the Altria Benefits Investment Group requested information regarding

mid-cap and small-cap passively managed investments for both the Defined Benefit Plans and the Plan. (*Id.* ¶ 90.) On December 7, 2004, the Kraft Benefits Investment Committee chair, Jim Dollive, received a recommendation from the Altria Benefits Investment Group to terminate the fund in the Growth Equity Fund "based 'solely' on performance and replace it 'with an index fund designed to capture the mid and small cap areas of the US equity market to complement the S&P index fund.'" (*Id.* ¶ 91.) On March 1, 2005, the Altria Benefits Investment Group recommended the passively-managed State Street Global Advisor Completeness Index Fund to replace the actively-managed Heritage Fund. (*Id.* ¶ 93.) In making this recommendation, the Altria Benefits Investment Group's search for the Growth Equity Fund's replacement was conditioned on the following: (1) only passively-managed options were considered; (2) the "lowest cost" investment vehicle would be selected; and (3) only institutional investment vehicles were considered. (*Id.* ¶ 94.)

## PROCEDURAL HISTORY

On July 2, 2008, Plaintiffs initiated this class action against Defendants on behalf of all similarly situated Plan participants. (R. 1, Compl.) Plaintiffs amended their original complaint on November 20, 2008. (R. 61, Pls.' First Am. Compl.) In February 2009, Plaintiffs moved for leave to file their Second Amended Complaint. (R. 82, Pls.' Mot. For Leave to File Second Am. Compl.) After the Court granted their motion, Plaintiffs filed their Second Amended Complaint (the "complaint") on July 31, 2009. (R. 107, Second Am. Compl.)

On August 31, 2009, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 112, Mot. to Dismiss.) In December 2009, the Court granted Defendants' motion in part, and denied it in part. *George v. Kraft Foods Global, Inc.*, 674 F.

Supp. 2d 1031, 1050 (N.D. Ill. 2009) ("*George II*"). The Court's December 2009 ruling–combined with a joint stipulation entered into by the parties–leaves only Count III of the complaint remaining for consideration.[3]

In Count III, Plaintiffs allege that Defendants violated the fiduciary duties set forth at 29 U.S.C. §§ 1104-05 by including the Growth Equity Fund and Balanced Fund (the "Funds") as Plan investment options. (*See* R. 107, Second Am. Compl. ¶¶ 63-82.) They claim that the selection and retention of the Funds violated the duties established by ERISA because, at the time the decision to invest in them was made, both were expected to underperform relative to comparable investment alternatives. (*Id.* ¶ 78.) In addition, they allege that Defendants failed to properly monitor the Funds. (*Id.*) Moreover, Plaintiffs aver that Defendants actively concealed material information regarding their imprudent decision to select and retain the Funds as Plan investment options. (*Id.* ¶¶ 78, 80.) They bring this count on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2) ("Section 1132(a)(2)"). (*Id.* ¶ 82.)

On July 14, 2011, the Court ruled upon Defendants' cross-motion for summary judgment. (R. 255, Mem. Op.) After considering Defendants' arguments in favor of summary judgment, the Court: (1) concluded that any alleged breaches of fiduciary duty which took place before July 2, 2002 are time-barred; and (2) found that Defendants are entitled to summary judgment on Plaintiffs' assertion that the Funds were improperly monitored. (*Id.* at 35.)

Presently before the Court is Plaintiffs' cross-motion for partial summary judgment. (R. 189, Pls.' Mot.) In their motion, Plaintiffs ask the Court to enter partial summary judgment on

---

[3] On February 22, 2010, the parties jointly stipulated that Counts I and II of the complaint would be dismissed without prejudice against the remaining Altria Defendants. (R. 144, Joint Stipulation of Dismissal.)

Count III of the complaint against the Kraft Compensation Committee and the Kraft Benefits Investment Committee ("Kraft Committees"). (*Id.* at 1.) Specifically, they maintain that the Kraft Committees, as the named fiduciaries responsible to investment operations in both the Plan and Defined Benefit Plans, "allowed poor performing, excessively expensive, actively-managed mutual funds (the Growth Equity and Balanced Funds) to remain in the Plan for many years, even though the fiduciaries had determined that such investments, by their own measure and recorded process, were imprudent and removed all actively-managed funds from the Defined Benefit Plan[s]." (*Id.* at 1-2.) By doing so, Plaintiffs argue that the Kraft Committees "failed to exercise the care, skill, prudence, and diligence required by ERISA and, as a matter of law, breached their fiduciary duties of prudence and loyalty to the Plan participants." (*Id.* at 2.)

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "In other words, the record must reveal that no reasonable jury could find for the nonmoving party." *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 627 (7th Cir. 2006) (quoting *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994)). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of

the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The moving party may discharge its initial responsibility by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. When the nonmoving party has the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323.

Once a properly supported motion for summary judgment is made, the nonmoving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *Keri*, 458 F.3d at 628. Instead, it must come forward with specific facts showing that there is a genuine issue for trial; raising some metaphysical doubt as to the material facts is not enough. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Conclusory allegations, if not supported by the record, will not preclude summary judgment. *Keri*, 458 F.3d at 628 (citing *Haywood v. N. Am. Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir. 1997)).

## ANALYSIS

Under ERISA, plan fiduciaries must discharge their duties with respect to the plan solely in the interest of the participants and for the exclusive purpose of providing benefits to participants and defraying reasonable expenses of administering the plan. 29 U.S.C. § 1104(a)(1)(A). Fiduciaries must perform their duties with the "care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and like aims." 29 U.S.C. § 1104(a)(1)(B). When enforcing these duties, a "court focuses not only on the

merits of the transaction, but also the thoroughness of the investigation into the merits of the transaction." *Chao*, 285 F.3d at 426 (citations omitted); *Eyler v. Comm'r of Internal Revenue*, 88 F.3d 445, 455 (7th Cir. 1996) (citation omitted).

ERISA's legislative history confirms that its fiduciary responsibility provisions codify and make applicable to ERISA fiduciaries certain principles developed in the evolution of the law of trusts. *Howell v. Motorola, Inc.*, 633 F.3d 552, 566 (7th Cir. 2011). Indeed, "ERISA's fiduciary duty was meant to hold plan administrators to a duty of loyalty akin to that of a common-law trustee." *Jenkins*, 444 F.3d at 924 (quoting *Ameritech Benefit Plan Comm. v. Comm. Workers of Am.*, 220 F.3d 814, 825 (7th Cir. 2000)). Accordingly, an ERISA fiduciary must act as though he were a "reasonably prudent businessperson with the interests of all the beneficiaries at heart." *Id.*

As summarized above, Plaintiffs allege that, while managing the Defined Benefit Plans, the Kraft Committees determined that they could not find a U.S. stock investment manager who could reliably outperform a passive index through the pursuit of active management. (R. 190, Pls.' Mem. at 1.) They also note that the Kraft Committees removed all actively-managed U.S. stock investments from the Defined Benefit Plans, but left actively-managed U.S. stock investments in the Plan. (*Id.*) In doing so, Plaintiffs argue, the Kraft Committees "caused Plaintiffs' Plans to suffer millions of dollars in losses from the underperformance and high investment management fees of those actively managed mutual funds relative to readily available index funds." (*Id.*) By allegedly failing to apply the same care, skill, prudence, and diligence that they applied to the Defined Benefit Plans, Plaintiffs contend that the Kraft Committees breached their duty of prudence and loyalty to Plan participants. (*Id.*)

Plaintiffs' arguments in favor of partial summary judgment are unpersuasive. Nothing they have presented in support of their motion establishes that the retention of the Funds in the Plan after 1999 was imprudent as a matter of law. Given, *inter alia*, the differences between defined contribution plans and defined benefit plans, a reasonable jury could find that a "reasonably prudent businessperson with the interests of all the beneficiaries at heart" could have acted prudently in retaining the Funds. Because of this conclusion, the Court finds that summary judgment would be an improper basis to resolve the remaining disputes in this case. Plaintiffs' motion is therefore denied.

## CONCLUSION

For the reasons stated above, Plaintiffs' cross-motion for partial summary judgment (R. 189) is DENIED. The parties are directed to reevaluate their settlement positions in light of this opinion and to exhaust all efforts to settle this case.

A status hearing will be held on August 9, 2011 at 9:45 a.m. to set a firm trial date for this delayed lawsuit.

Entered:

Judge Ruben Castillo
**United States District Court**

**Dated:** July 19, 2011