# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GERALD GEORGE, et al., | )<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 08 C 3799<br>) |
| KRAFT FOODS GLOBAL, INC., et al., | ) Judge Ruben Castillo<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Gerald George, Cathy Dunn, and Timothy Streff bring this class action on behalf of themselves and all other similarly situated persons (collectively, "Plaintiffs"), against Kraft Foods Global, Inc. ("Kraft Global"), Kraft Foods, Inc. ("Kraft"), Kraft Foods Global, Inc. Management Committee of Employee Benefits ("Kraft Employee Benefits Committee"), Kraft Foods Global, Inc. Administrative Committee ("Kraft Administrative Committee"), the Compensation and Governance Committee of the Kraft Foods, Inc. Board of Directors ("Kraft Compensation Committee"), Kraft Foods Global, Inc. Benefits Investment Committee ("Kraft Benefits Investment Committee"), and the Kraft Benefits Investment Group (collectively, "Kraft Defendants"). (R. 107, Second Am. Compl.) Additionally, Plaintiffs name Altria Corporate Services, Inc. ("Altria Services"), the Corporate Employee Plans Investment Committee of the Board of Directors of Altria Group, Inc. ("Altria Investment Committee"), and the Benefits Investment Group of Altria Corporate Services, Inc. ("Altria Benefits Investment Group") (collectively, "Altria Defendants"), as defendants. (*Id.*) Plaintiffs allege that the Kraft and Altria Defendants (collectively, "Defendants") breached fiduciary duties established by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, by including the

Growth Equity Fund and Balanced Fund (the "Funds") as investment options in the Kraft Foods Global, Inc. Thrift Plan (the "Plan"). (*Id.*) Presently before the Court are Defendants' motions to strike and exclude the report and testimony of Alan Biller and Steve Pomerantz, which are brought pursuant to Federal Rule of Evidence 702. (R. 193, Defs.' Mot.; R. 196, Defs.' Mot.) For the reasons stated below, the motions are granted in part and denied in part.

## ANALYSIS

The admissibility of expert witness testimony is governed by Rule 702 of the Federal Rules of Evidence and the body of case law that has developed from the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Under Rule 702, expert testimony is admissible if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Rule 702 also "requires that (1) the testimony must be based upon sufficient facts or data; (2) it must be the product of reliable principles and methods; and (3) the witness must have applied the principles and methods reliably to the facts of the case." *Happel v. Walmart Stores, Inc.*, 602 F.3d 820, 824 (7th Cir. 2010) (citing Fed. R. Evid. 702). This rule "applies to all expert testimony, not just testimony based on science." *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 420 n.10 (7th Cir. 2005).

Rule 702 requires that the district court act as a "'gatekeeper' who determines whether proffered expert testimony is reliable and relevant before accepting a witness as an expert." *Autotech Tech. Ltd. P'ship v. Automationdirect.com*, 471 F.3d 745, 749 (7th Cir. 2006). In exercising its gatekeeper function, a district court must examine (among other things): (1) the expert's qualifications; (2) the expert's methodologies; and (3) the relevance of the expert's

proposed testimony. *Adams v. Ameritech Servs.*, 231 F.3d 414, 423 (7th Cir. 2000). The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy Rule 702 and *Daubert*. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). Although required to perform its role as a gatekeeper, a district court's "[d]eterminations on admissibility should not supplant the adversarial process; shaky expert testimony may be admissible, assailable by its opponents through cross examination." *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010).

Defendants present two motions seeking to strike and exclude the reports and testimony of Plaintiffs' experts. The Court will resolve the motions separately.

**I.     Biller**

Defendants present two assertions in support of their motion. First, they argue that "Biller's opinion about the continued prudence of the Funds after 1999 is not reliable or relevant." (R. 193, Defs.' Mot. ¶ 4.) Second, they assert that "Biller's opinion that the fiduciaries should have selected something other than mutual funds for the Funds in 1995 similarly is not based on data and thus cannot be called 'scientific or technical.'" (*Id.* ¶ 5.)

**A.     Prudence opinion**

Defendants primarily argue that Biller's report and testimony should be excluded because it is irrelevant. (R. 194, Defs.' Mem. at 5.) They specifically contend that his opinion regarding the continued prudence of the Funds as investment options is irrelevant because it is not based on the appropriate standard of care under ERISA. (*Id.*)

Under ERISA, a fiduciary is required to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and "with the care, skill, prudence, and

3

diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B) ("Section 1104"). Defendants assert that Biller's opinion is irrelevant because it relies upon an improper standard, which, according to them, is captured in the following portion of Biller's report:

> In this case, the proper fiduciary standard for appropriate and prudent process decision making when (1) deciding to select between active or passive management; (2) [] evaluating managers; and/or [] (3) deciding whether to eliminate or replace accounts, were and are [sic] the same for the [Defined Benefit Plans] and the [Plan]. Given that the Defendants were responsible for selecting and monitoring the investment options in both the [Defined Benefit Plans] and [the Plan], absent compelling reasons (which I have not seen) to treat the [Defined Benefit Plans] and [the Plan] differently, the decision whether to offer, retain, and/or eliminate active investments in this case was and is a fiduciary decision that should and does apply equally to both Plans.

(R. 194, Defs.' Mem., Ex. A at 3.)

The standard of care ERISA requires is clearly articulated in Section 1104. *See* 29 U.S.C. § 1104(a)(1). Any attempt by Biller to redefine the "proper fiduciary standard" by suggesting that fiduciaries are legally required to treat defined contribution plans and defined benefit plans in an identical fashion is an improper expert opinion. Put simply, expert opinions that seek to define the meaning of statutes are disallowed under the Federal Rules of Evidence. *See, e.g., United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008) ("The only legal expert in a federal courtroom is the judge."). Thus, Biller's opinion, to the extent it is based on an impermissible redefinition of ERISA's statutory duty of prudence, is irrelevant and inadmissible under Rule 702.

**B.    1995 opinion**

4

Defendants also assert that "Biller's opinion that the fiduciaries should have selected something other than mutual funds for the Funds in 1995 similarly is not based on data and thus cannot be called 'scientific or technical.'" (R. 193, Defs.' Mot. ¶ 5.) To resolve their motion, the Court need not consider Defendants' argument. Given the Court's prior ruling that any alleged breach of fiduciary duty stemming from the initial inclusion of the Funds is time-barred, (see R. 255, Mem. Op. at 35), the Court finds that this portion of Biller's opinion, to the extent it seeks to establish liability for non-actionable breaches of fiduciary duty, is irrelevant and therefore inadmissible under Rule 702.

## II. Pomerantz

Defendants provide four reasons for striking Pomerantz's reports and testimony. First, they argue that his "opinions depend on and are tainted by impermissible conclusions regarding defendants' state of mind and intent, which are not appropriate subjects of expert opinion." (R. 196, Defs.' Mot. ¶ 4.) Second, Defendants claim that Pomerantz's opinion about the continued prudence of the Funds after 1999 is not reliable or relevant. (Id. ¶ 5.) Third, Defendants attack Pomerantz's opinion because he arguably "cites no data to back up his conclusion that the Funds' fees were excessive in 1994/95 when they were added to the Plan." (Id. ¶ 6.) Finally, Defendants maintain that Pomerantz's damages calculations are inadmissible because they are "based on impermissible speculation." (Id. ¶ 7.)

### A. State of mind

In their supporting memorandum, Defendants highlight the following excerpts from Pomerantz's report:

> As a consequence of [Defendants'] failure to remove these two funds, the Growth

5

> Equity Fund and Balanced Fund, as Defendants expected, significantly underperformed their respective benchmarks[.]
>
> In these talking points [regarding the Growth Equity Fund], Defendants failed to disclose their true beliefs about this fund and their policy regarding active management[.]
>
> Despite having the opportunity to inform Plan participants of this discrepancy in applied benchmarks, Defendants purposefully misled Plan participants by giving them one benchmark, while Defendants used another[.]

(R. 197, Defs.' Mem., Ex. A ¶¶ 7, 53-54.) According to Defendants, these statements, like several others contained in Pomerantz's report, are inadmissible because they speculate about Defendants' intent and beliefs in selecting, retaining, and communicating about the Funds. (*Id.* at 5.)

Defendants are correct in noting that any portion of Pomerantz's report which suggests that Defendants acted with a particular state of mind is inadmissible. First off, any such testimony is speculation, which is, of course, inadmissible. *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 816 (7th Cir. 2004) (noting that courts are expected to reject any subjective belief or speculation). While Plaintiffs contend that Pomerantz's statements about Defendants' intent and beliefs are "inferences that arise from Defendants' conduct," they fail to point to any portion of his report which establishes that these statements are something other than speculation. (*See* R. 217, Pls.' Mem. at 8.)

Not only is this sort of testimony speculative, but it is also irrelevant. As Plaintiffs concede, their cause of action does not have a state of mind requirement. (*Id.*) To prevail on a breach of fiduciary duty claim, a plaintiff must prove: "(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the

plaintiff." *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010) (citation omitted). In their response to Defendants' motion, Plaintiffs fail to satisfy their burden of showing that Pomerantz's testimony about Defendants' intent and beliefs would assist the decisionmaker in this case to "understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Accordingly, Pomerantz's report is stricken to the extent it contains such testimony.

### B.  Prudence opinion

As with Biller's proposed testimony, Defendants argue that Pomerantz's opinion should be stricken because it relies upon an improper standard. (R. 197, Defs.' Mem. at 7-12.) To illustrate this reliance, Defendants point to the following portion of Pomerantz's proposed testimony:

> [H]ere you've got a defined benefit plan where you've made decisions; and your actions and decisions certainly speak for what your policy is. And your policy is to not invest in active management . . . So we don't even have to get into the minutia of what constitutes bad performance on the side–on the part of the [Plan], because the prudence requirement would just say that you should basically reflect the same philosophies and same principles on both sides of the line, and they're clear about what their actions are and what their intentions are.

(*Id.*, Ex. C at 99:11-14.)

Again, the Court notes that an ERISA fiduciary is required to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1). This standard is objective, and thus requires a fiduciary to adhere to a prudent person standard. *Eyler v. Comm'r of Internal Revenue*, 88 F.3d 445, 455 (7th Cir. 1996). Given this standard, any attempt by Pomerantz to

7

define what the "prudence requirement would . . . say" is improper. Specifically, any suggestion by Pomerantz that ERISA's prudence requirement mandates fiduciaries to, as a matter of law, treat defined contribution and defined benefit plans identically is an incorrect statement of law. Accordingly, Pomerantz's testimony, to the extent it relies upon an improper statement of ERISA's prudence requirement, is irrelevant and thus inadmissible under Rule 702.

### C.    1995 opinion

Defendants also contend that Pomerantz's testimony regarding the allegedly high cost of the Funds in 1995 is inadmissible because it is "based on nothing more than speculation." (R. 197, Defs.' Mem. at 12.) To resolve their motion, the Court again concludes that it need not consider Defendants' argument. Given the Court's prior ruling that any alleged breach of fiduciary duty stemming from events taking place in the 1990s is time-barred, (*see* R. 255, Mem. Op. at 35), the Court finds that this portion of Pomerantz's opinion, to the extent it seeks to establish liability for non-actionable breaches of fiduciary duty, is irrelevant and therefore inadmissible under Rule 702.

### D.    Damages opinion

Finally, Defendants argue that Pomerantz's damages calculation is speculative, and therefore inadmissible under Rule 702. (R. 197, Defs.' Mem. at 13.) Because, as Defendants admit, the issue of damages calculation is not presently before the Court, striking any portion of Pomerantz's damages opinion is a bit premature. While Defendants' argument may carry the day in the future, the Court concludes that striking any portion of Pomerantz's damages is improper
8

at this time.[1]

## CONCLUSION

For the reasons stated above, Defendants' motions to strike and exclude the reports and testimony of Biller (R. 193) and Pomerantz (R. 196) are GRANTED to the extent stated in this opinion. The motions are DENIED in all other respects. The parties are directed to reevaluate their settlement positions in light of this opinion and to exhaust all efforts to settle this case.

The Court reminds the parties that a status hearing will be held on August 9, 2011 at 9:45 a.m. to set a firm trial date for this delayed lawsuit.

Entered:

Judge Ruben Castillo
United States District Court

Dated: July 25, 2011

---

[1] As a final note, the Court reminds the parties that the adversarial process functions at its best when non-moving parties directly respond to arguments made by a moving party. An active respect for this observation not only enriches the quality of judicial decisions, but also generally places non-moving parties in the best position to avoid unfavorable rulings.