**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| GERALD GEORGE, *et al.*, | ) |
| | ) |
|     Plaintiffs, | ) No: 08 CV 3799 |
| v. | ) |
| | ) Judge Ruben Castillo |
| KRAFT FOODS GLOBAL INC., *et al.*, | ) |
| | ) |
|     Defendants. | ) |

**MEMORANDUM IN SUPPORT
OF AMENDED MOTION FOR CLASS CERTIFICATION**

SCHLICHTER, BOGARD & DENTON
Jerome J. Schlichter, jschlichter@uselaws.com
Nelson G. Wolff, nwolff@uselaws.com
Troy A. Doles, tdoles@uselaws.com
Jason P. Kelly, jkelly@uselaws.com
120 W. Main Street, Ste. 208
Belleville, IL 62220
100 South Fourth Street, Ste. 900
St. Louis, MO 63102
Tel: 314-621-6115
Fax: 314-621-7151
Lead Counsel for Plaintiffs

Defendants, in their role as fiduciaries to Kraft and Altria in their defined benefit pension plans, made the decision that they could not prudently select active managers and, instead, should only use passive index investments providing a market return rather than trying to select managers who would beat the market. Regardless of what other plan fiduciaries conclude, these fiduciaries concluded they did not have the ability to select managers who could beat the market after fees. Yet, when removing their corporate fiduciary hat, and wearing their fiduciary hat to the Kraft Foods Global, Inc. 401(k) Thrift Plan (the "Plan") participants, Defendants did exactly what they concluded they could not do, and should not do when handling the company's money – use active management, which, in turn, underperformed prudent passive alternatives. They did so in two of the Plan's investment options – the Growth Equity Fund and the Balanced Fund. It is these two funds Plaintiffs challenge in this lawsuit.

I. **Procedural background**

On August 25, 2010, this Court certified a plan-wide class under Rule 23(b)(1). *George v. Kraft Foods Global, Inc.*, 270 F.R.D. 355, 372 (N.D. Ill. 2010). Subsequently, the Seventh Circuit decided *Spano v. Boeing Co.*, 633 F.3d 574 (7th Cir. 2011)("*Spano*"). While *Spano* did not question the finding of numerosity and commonality of such a class or the adequacy of the attorneys representing the class, it held that for claims of fiduciary breach as to particular plan investment options, the class must be limited to the participants who invested in and suffered losses in those options. *Id.* at 586–88, 590.

In light of *Spano*, the Court vacated its plan-wide class certification order and allowed Plaintiffs to move for certification of revised classes that conform to *Spano* and the Court's summary judgment orders. R. 259 (Order). Plaintiffs now move the Court to certify "better-defined and more-targeted classes", *Spano*, 633 F.3d at 588, that conform to the requirements of

1

*Spano* and qualify for certification under Federal Rule of Civil Procedure 23(b)(1)(B). For the reasons stated herein, the Court should grant that certification.

## II. Plaintiffs' claims

Plaintiffs are current or former participants in the Plan. R. 255 at 3 (Mem. Opinion and Order)(citing R. 216 ¶96). The Plan is a defined contribution plan under ERISA. *Id.* (citing R. 216 ¶3); 29 U.S.C. §1002(34). Between 1994 and 2010, the Plan has had between 28,000 and 55,000 participants and between $1.5 and $5.4 billion in assets. *Id.* (citing R. 216 ¶3). Plan participants are allowed to invest their pre-tax and post-tax contributions to the Plan in any of the investment options included in the Plan. *Id.* at 4 (citing R. 216 ¶7). Those options, however, are limited to what an entity designated by the Plan document as the "Investment Committee" decides to include in the Plan. *Id.* (citing R. 216 ¶14); *id.* at 3 (citing R. 216 ¶5). The same Investment Committee also controls the investments of defined benefit pension plans ("Defined Benefit Plans") sponsored by Kraft or its former parent corporation Altria. *Id.* at 3 (citing R. 216 ¶5). Defendants acknowledged that they owed the same level of care and diligence in discharging their duties to the Plan as they did to the Defined Benefit Plans. R. 211 ¶10. Defendants—Kraft Foods, Inc., Kraft Foods Global Inc., its committees and individual members and Altria Corporate Services Inc. and its committees—are the entities Plaintiffs contend acted formally or effectively as the Investment Committee and committed the fiduciary breaches at issue in this action. *Id.* ¶¶3-7.

By way of brief background, in September 1994, Defendants believed that active management in small to mid-capitalization U.S. stocks could outperform a passive index. *Id*.

2

¶¶15–17.[1] Based upon that belief, Defendants allocated assets in the Defined Benefit Plans to active managers in mid-small cap U.S. stocks. *Id.* At the same time, Defendants added two new investment options to the Plan: the Growth Equity Fund and the Balanced Fund. *Id*. ¶20. Consistent with its decision to use active management over passive management in the defined benefit plan, Defendants considered only actively-managed funds as investments in the Growth Equity Fund and Balanced Fund. *Id*. ¶¶21, 23. Indeed, Defendants acknowledged that selecting the Twentieth Century Heritage Investors mutual fund as the Growth Equity Fund investment was "similar to the style used in managing small cap exposure in the pension fund." *Id*. ¶23.

By 1999, because of consistent underperformance, Defendants concluded they could not find active managers in U.S. stocks who could consistently outperform a passive index investment. *Id*. ¶¶46–52. As a result, they terminated all U.S. stock active management in the Defined Benefit Plans and reinvested those assets in an index fund. *Id*. ¶¶48–49. In arriving at this decision, Defendants acknowledged the "pros" of indexing were, among other things, "low costs", "avoids the probability of selecting underperforming managers", and "[p]ension plans of other companies generally have not added value using active management." *Id*. ¶51. As explained by one member, Defendants "had a ha[r]d time identifying managers who could consistently beat their benchmark net of fees." *Id*. ¶52. As a result of their elimination of active managers in the Defined Benefit Plans, Defendants calculated savings of over $10 million per year from far lower investment management fees of passive investing. *Id*. 55. From 2001 through 2008, Defendants repeatedly confirmed their investment policy that "there is a low probability for active equity management to consistently outperform indexing, net of fees." *Id*.

---

[1] Nonetheless, Defendants acknowledged that was not true of large cap U.S. stocks; instead, it recognized, "[l]arge cap is the most efficient sector of the market and the ability to add value by active management is very difficult." *Id*. at ¶17.

3

¶¶62–64, 75, 78, 80, 89, 100–01. Despite those conclusions, Defendants failed to assess the prudence of active management in the Growth Equity Fund and Balanced Fund. *Id*. ¶¶53–54. Indeed, Defendants never applied that conclusion to the Growth Equity Fund or Balanced Fund in the Plan, nor have they ever provided any reasoned conclusion from 1999 through 2008 why those active Funds were prudent for the Plan despite the repeatedly acknowledged imprudence of active management in such investments. *Id.* ¶¶53, 64, 83–84, 102, 105.[2]

In managing Plan investment options, Defendants owed a fiduciary duty to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. §1104(a)(1)(B); R. 255 at 31. "It is ... the fiduciary's responsibility, as the Secretary [of Labor] puts it, to screen investment alternatives and to ensure that imprudent options are not offered to plan participants." *Howell v. Motorola, Inc*., 633 F.3d 552, 567 (7th Cir. 2011). A defendant who breaches his duty is "personally liable to make good to such plan any losses to the plan resulting from each such breach" and also is "subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary[.]" 29 U.S.C. §1109(a).

Plaintiffs contend Defendants breached their fiduciary duties by retaining the actively managed Growth Equity Fund and Balanced Fund as Plan investment options even though they had stopped using such active management in the Defined Benefit Plans because of their experience with the futility of searching for consistently outperforming active investment

---

[2] Only in June 2005 did Defendants finally replace the actively managed mutual fund in the Growth Equity Fund with the "lowest cost," passively managed, collective trust investment available. Doc. 211 ¶¶94–95, 98. Defendants have yet to do that with the Balanced Fund. *Id.* ¶102.

4

managers. R. 255 at 29–30, 32.[3] In light of the Defendants' experience with active management in the Defined Benefit Plans and their acknowledged "challenges of selecting consistently successful active managers, low costs of indexing, [and] performance of indexing in down markets", one could reasonably conclude that a prudent fiduciary would have offered indexed (*i.e.*, passive) investments rather than the actively managed investments as Plan investment options in the market segments covered by the Growth Equity Fund and Balanced Fund. R. 255 at 33. "Under ERISA, a fiduciary's failure to exercise his or her discretion—i.e., to balance the relevant factors and make a reasoned decision as to the preferred course of action—under circumstances in which a prudent fiduciary would have done so is a breach of the prudent man standard of care." *George v. Kraft Foods Global, Inc.*, 641 F.3d 786, 796 (7th Cir. 2011).

### III.     Class Definitions

As *Spano* notes, "the most important part of [a class certification] order is the place where it defines the class." *See* Fed.R.Civ.P. 23(c)(1)(B). This is a vital step." 633 F.3d at 583–84. The following class definitions meet the requirements of *Spano*.

#### A.     Growth Equity Fund Class

Plaintiffs move for certification of the following Growth Equity Fund Class for their claims regarding Defendants' breach in failing to replace that actively managed mutual fund with a passively managed prudent alternative:

> All participants or beneficiaries of the Kraft Foods Global, Inc. Thrift Plan No. 125 who invested in the Growth Equity Fund between July 2, 2002 and June 30, 2005, and whose investment underperformed the passively managed Vanguard Mid Cap Index Fund. Excluded from the class are the Defendants and all of their officers and directors (named or unnamed).

---

[3] In light of the Court's Summary Judgment Order, Plaintiffs' claims are limited to Defendants' breach in failing to remove these claimed imprudent investment options after July 1, 2002. *Id.* at 30. Plaintiffs limit their class certification motion to claims as currently limited by the Court without waiving their right to appeal the adverse aspects of the Order.

5

The class period commences on July 2, 2002 because the Court found that any claim that Defendants breached their fiduciary duties before that date are time barred.[4] R. 255 at 30. The class period ends on June 30, 2005 because that is when the Growth Equity Fund was removed from the Plan. R. 255 at 17. Thus, unlike the challenged class in *Spano*, this class contains temporal limits. The Vanguard Mid Cap Index Fund is a readily available prudent alternative that provides a passively managed performance level in lieu of the Growth Equity Fund's actively managed mutual fund. *See* Pomerantz Dec. at ¶6 (attached hereto as Ex. A); *see also* R. 197-1 ¶61 (Pomerantz 10/12/2010 Report).

Plaintiff Cathy Dunn is a member of the Growth Equity Fund class and the representative of that class because she was invested in the Growth Equity Fund during the class time period. R. 237 at *1–16.[5] Notably, Defendants concede that Dunn's investment in the Growth Equity Fund "underperformed the passively managed funds plaintiffs advocate" in this case. R. 220 at 9. Plaintiffs' expert, Dr. Steve Pomerantz, also has confirmed from his analysis of Dunn's investments that she suffered losses from Defendants' breach. *See* Pomerantz Dec. at ¶17. Dunn testified that she relied upon Defendants to "pick the very best" investment options in the Plan. R. 216 ¶161. Dunn seeks to recover losses to the Plan incurred as a result of Defendants' breaches of their fiduciary duties and for injunctive relief to ensure that the continuing breaches are stopped. R. 107 ¶81; R. 191 ¶108.[6]

### B. Balanced Fund Class

Plaintiffs move for certification of the following Balanced Fund Class for their claims regarding Defendants' breach in failing to replace that actively managed mutual fund with a

---

[4] By moving to define the class for this time period at this time, Plaintiffs are not waiving their right to challenge the Court's decision regarding the application of the six-year statute of limitations on appeal.

[5] Ex. 1 to Pla. Mem. in Response to Def. Mot. to Vacate Class Certification Order (sealed).

[6] Plaintiffs are not requesting that Gerald George or Timothy Streff be designated as class representatives for either class as this time.

passively managed prudent alternative:

> All participants or beneficiaries of the Kraft Foods Global, Inc. Thrift Plan No. 125 who invested in the Balanced Fund between July 2, 2002 and December 31, 2009, and whose investment in the fund underperformed the passively managed Vanguard Balanced Index Fund. Excluded from the class are the Defendants and all of their officers and directors (named or unnamed).

As with the Growth Equity Fund Class, the class period commences on July 2, 2002 because of the Court's summary judgment decision regarding the statute of limitations. R. 255 at 30. The class period ends on December 31, 2009 because that is the last date on which Defendants produced necessary data regarding Plaintiffs' damages. The Vanguard Balanced Index Fund is a readily available prudent alternative that provides a passively managed performance level in lieu of the Balanced Fund's actively managed mutual fund. *See* Pomerantz Dec. at ¶18; *see also* R. 197-1 ¶66.

Plaintiff Cathy Dunn is a member of the Balanced Fund class and the representative of that class because she was invested in the Balanced Fund during the class time period. R. 237 at *25. As with the Growth Equity Fund, Defendants also concede Dunn's investment in the Balanced Fund "underperformed the passively managed funds plaintiffs advocate" in this case. R. 220 at 9. Plaintiffs' expert, Dr. Steve Pomerantz, also has confirmed from his analysis of Dunn's investments that she suffered losses from Defendants' breach. *See* Pomerantz Dec. at ¶28. As noted above, Dunn relied on Defendants to uphold their fiduciary duties and, as a result of their failure to do so, seeks to recover the Plan's losses resulting from Defendants' breach and to obtain injunctive relief to ensure that the continuing breaches are stopped (including, for example, removal of the actively managed mutual fund from the Balanced Fund). R. 107 ¶81; R. 191 ¶108.

### IV. Plaintiffs' claims and classes satisfy the elements of Rule 23(a)

One or more members of a class may sue or be sued as representative parties on

>behalf of all members only if:
>   (1) the class is so numerous that joinder of all members is impracticable;
>   (2) there are questions of law or fact common to the class;
>   (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>   (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a); *Spano*, 633 F.3d at 582–83. "A class may be certified "if the trial court is satisfied, *after a rigorous analysis*, that the prerequisites of Rule 23(a) have been satisfied." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 723 (7th Cir. 2011)(quotation marks and citations omitted). The proposed classes satisfy these prerequisites.

### A. Numerosity

Each of Plaintiffs' classes satisfies the numerosity requirement under Fed.R.Civ.P. 23(a)(1). A class of 40 members is presumed sufficiently numerous to satisfy this element. *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969); *George*, 270 F.R.D. at 365 (quoting *Ringswald v. County of DuPage,* 196 F.R.D. 509, 512 (N.D.Ill. 2000)). "[A] plaintiff does not need to demonstrate the exact number of class members as long as a conclusion is apparent from good-faith estimates." *George*, 270 F.R.D. at 365–66 (quoting *Barragan v. Evanger's Dog & Cat Food Co.*, 259 F.R.D. 330, 333 (N.D.Ill. 2009)). Plaintiffs' expert, Dr. Steve Pomerantz, has determined based on Defendants' transaction records that each class includes thousands of participants who underperformed a prudent alternative during the class period. *See* Pomerantz Dec. Joinder of each of those class members as plaintiffs is impracticable. Fed.R.Civ.P. 23(a)(1).

### B. Commonality

"Rule 23(a)(2) does not demand that every member of the class have an identical claim. It is enough that there be one or more common questions of law or fact[.]" *Spano*, 633 F.3d at 585. In a defined contribution plan such as Plaintiffs', "fund participants operate against a common

8

background." *Id.* The assertion a fiduciary "failed to satisfy its fiduciary duties in its selection of investment options, ... describe[s] problems that would operate across the plan rather than at the individual level." *Id.* at 586; *see also id.* at 588–89 ("[T]he package of investment options offered by each plan was the same for every participant. The question whether that package was prudent, in light of ERISA's standards, is a common one"). Due to the nature of ERISA fiduciary breach claims such as those here, "commonality is quite likely to be satisfied." *Schering*, 589 F.3d at 599 n.11; *see also Spano*, 633 F.3d at 586 ("We thus conclude, as did our colleagues in *Schering,* that the class met the commonality requirement of Rule 23(a)(2)").

The same issues of law and fact that were common to Plaintiffs' plan-wide class apply equally to Plaintiffs' current, more limited classes, including, "(1) the interpretation and application of the Plan documents to Defendants; (2) whether each Defendant is a fiduciary as to the Growth Equity Fund and/or Balanced Fund; (3) the nature and scope of the duties Defendants owed in managing the Funds; and (4) whether Defendants imprudently invested in the Growth Equity Fund and/or Balanced Fund." *George*, 270 F.R.D. at 366. Each common question is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. ___, 131 S.Ct. 2541, 2551 (2011). Indeed, in their motion to vacate the Court's plan-wide class certification order, Defendants did not even dispute that the plan-wide class satisfied commonality. *See* R. 219 (Defs. Mot.). There is no basis for challenging the commonality of a portion of that same class.

### C. Typicality

The "claims ... of the representative parties" must be "typical of the claims ... of the class." Fed.R.Civ.P. 23(a)(3). Claims are typical when they arise "from the same event or practice or course of conduct that gives rise to the claims of other class members and [the] claims are based

9

on the same legal theory." *Arreola v. Godinez*, 546 F.3d 788, 798 (7th Cir. 2008). Typicality "should be determined with reference to the [defendants'] actions, not with respect to particularized defenses [they] might have against certain class members[.]" *CE Design*, 637 F.3d at 725 (quoting *Wagner v. NutraSweet Co.,* 95 F.3d 527, 534 (7th Cir. 1996)). To satisfy typicality in an ERISA fiduciary breach case such as this, "there must be a congruence between the investments held by the named plaintiff and those held by members of the class he or she wishes to represent." *Spano*, 633 F.3d at 586. Plaintiff Cathy Dunn's investment in each of the challenged funds provides such congruence.

**Growth Equity Fund Class**. This class includes only those participants who invested in the Growth Equity Fund during the class period and whose investment underperformed what Plaintiffs contend was a prudent alternative. Because Defendants' fiduciary duties in the management of this Fund (and the breach in failing to remove active management from the Fund until June 30, 2005) were directed to all Plan participants and similarly affect participants who lost money invested in the Fund compared to a prudent alternative, those class members' claim for breach of that duty necessarily will be typical of the class. Since Plaintiff Cathy Dunn invested in the Fund during the class period and underperformed compared to a prudent alternative (as Defendants concede), her claim is typical of the class.

**Balanced Fund Class**. This class also includes only those participants who invested in the Balanced Fund during the class period and whose investment underperformed what Plaintiffs contend was a prudent alternative. As with the Growth Equity Fund, because Defendants' fiduciary duties in the management of this Fund (and the breach in failing to remove active management from the Fund) were directed to all Plan participants and similarly affect participants who lost money invested in the Fund compared to a prudent alternative, those class

10

members' claim for breach of that duty necessarily will be typical of the class. Since Plaintiff Cathy Dunn invested in the Fund during the class period and underperformed compared to a prudent alternative (as Defendants concede), her claim is typical of the class.

Because each class includes only those participants who invested in the Growth Equity Fund or Balanced Fund during the class periods and whose investment underperformed a prudent investment alternative, *Spano*'s concern over the inclusion of "many participants in the past (and who knows about the future) [who] never held a single share in either or both of those funds," does not arise here. *Spano*, 633 F.3d at 586. Ms. Dunn suffered the same kind of harm from the same conduct as the unnamed class members. *Id*. Plan participants who timed their investment in the Growth Equity Fund or the Balanced Fund in such a way as to outperform prudent alternatives are excluded from the class definition, thereby avoiding the class conflicts at issue in *Spano*.

### D. Adequacy

Rule 23(a)(4) requires that the Plaintiff representative of the class and her attorneys will adequately represent the class. Fed.R.Civ.P. 23(a)(4).

> To determine if a named plaintiff has met the adequacy requirement, the Court must ask whether the individual: "(1) has antagonistic or conflicting claims with other members of the class; (2) has sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) has counsel that is competent, qualified, experienced and able to vigorously conduct the litigation." *Wahl v. Midland Credit Mgmt.,* 243 F.R.D. 291, 298 (N.D.Ill.2007). It is "not difficult" for a plaintiff to satisfy her burden in establishing the adequacy requirement. *Id.*

*George*, 270 F.R.D. at 368; *see also Herkert v. MRC Receivables Corp.*, 254 F.R.D. 344, 351 (N.D.Ill. 2008); *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011). Plaintiff Cathy Dunn and her attorneys satisfy both aspects of the adequacy requirement.[7]

### 1. Plaintiff Cathy Dunn is an adequate class representative.

In many cases, such as this one, "the requirement of typicality merges with the further requirement that the class representative 'will fairly and adequately protect the interests of the class.'" *CE Design*, 637 F.3d at 724 (quoting Rule 23(a)(4)). For the same reasons that Cathy Dunn's claims are typical of the claims of the Growth Equity Fund and Balanced Fund classes, she is an adequate representative of each class.

To be an adequate representative, *Spano* requires that the plaintiff "invested in the same same funds as the class members" and that there "be a congruence between the investments held by the named plaintiffs and those held by the class he or she wishes to represent." *Spano*, 633 F.3d at 586. Dunn satisfies these requirements for both the Growth Equity Fund and Balanced Fund classes because she invested in both Funds and suffered losses in those investments relative to what the class contends was a prudent alternative.

The focus for adequacy of the representative in *Spano* was whether the class was going to be represented by "someone who had a conflict of interest[.]" *Id.* at 587. The specific conflict for the plan-wide class addressed in *Spano* was the fact that the plan-wide class included members whose investments in the subject funds performed well relative to the alternative and thus "have no complaint about those funds[.]" *Id.* "It is not enough to say that the named plaintiffs want relief for the plan as a whole, if the class is defined so broadly that some members will actually be harmed by that relief." *Id.* Plaintiff Cathy Dunn has no such conflict because the classes are

---

[7] Plaintiffs previously demonstrated "sufficient interest in the outcome of the case to ensure vigorous advocacy[.]"*George*, 270 F.R.D. at 368; R. 147-2 – 147-4 (Plaintiffs' declarations). Nothing in *Spano* changes that conclusion.

restricted to those participants whose investments in the Funds lost relative to prudent alternatives. Dunn's interests are not antagonistic to any class member. Dunn has the same interest as any class member—recovering her share of Plan losses as a result of Defendants' breach of duty. Accordingly, no conflict exists between the named representative and the unnamed class members.

"Serious challenges to typicality and adequacy must be distinguished from petty issues manufactured by defendants to distract the judge from his or her proper focus under Rule 23(a)(3) and (4) on the interests of the class[.]" *CE Design*, 637 F.3d at 728. Since Defendants concede Cathy Dunn suffered losses in the Growth Equity Fund and Balanced Fund investments, just like the rest of the classes, they cannot seriously challenge her typicality or adequacy. In their motion to vacate, Defendants contended Dunn was an inadequate representative for the Balanced Fund Class because she invested in that Fund "after she filed suit alleging that it was imprudent", Doc. 220 at 9, but that statement is misleading. Dunn invested in the Balanced Fund on March 15, 2007. R. 237 at *25. This case was filed on July 2, 2008. R. 1. Indeed, this case was filed and based upon documents produced by Defendants in the *George I* litigation (*George v. Kraft Foods, Inc.,* No. 06-cv-1713 (N.D. Ill. Mag. J. Schenkier). It is important to note that Defendants initially attempted to hide, via redactions, the pertinent information demonstrating Defendants' passive investment policy for U.S. stocks and lack of ability to beat the market after fees. *George I* R. 114. Only with an order from the *George I* Court on March 27, 2008, compelling the production of all responsive discovery documents in unredacted form by April 4, 2008, *one year after* Dunn invested in the Balanced Fund, did Plaintiffs even have access to the full documentation laying out Defendants' passive investment policy and their breach of duty regarding the Growth Equity and Balanced Funds. R.118. Suggesting that Dunn is inadequate

13

because she invested in the Balanced Fund while deprived of critical information is just the sort of "petty issue" that the Seventh Circuit has rejected as a challenge to a plaintiff's typicality and adequacy. *CE Design*, 637 F.3d at 728.

Another such petty issue is Defendants' contention that Dunn is an inadequate representative of the Balanced Fund because she continues to be invested in that Fund. The Balanced Fund is the only option in the Plan that provides asset allocation services. R. 216 ¶7. No other alternative in the Plan provides those services. Dunn's continued investment in the Balanced Fund thus is not a concession that it is prudent; it is the only choice available to participants seeking asset allocation services. This only strengthens Plaintiffs' demand for equitable relief to convert this Fund to asset allocation in passive indexes. Without that relief, participants seeking asset allocation assistance will be left to suffer the gross underperformance of an actively managed option that Defendants have long conceded used imprudent investment vehicles.[8]

### 2. Plaintiffs' attorneys are competent and qualified to represent all class members.

This Court already found that "based on their experience in the area of complex ERISA litigation, Plaintiffs' attorneys are 'competent, qualified, and experienced' and will be able to vigorously conduct this litigation." *George*, 270 F.R.D. at 368. *Spano* does not alter that conclusion. Indeed, *Spano* agreed that Plaintiffs' attorneys are competent to represent a class of plan participants in that case with similar breach of fiduciary duty allegations. *Spano*, 633 F.3d at 586. Nothing in Plaintiffs' amended classes affects those conclusions.

---

[8] Defendants previously argued that anyone who did not invest in their imprudent funds has no standing to bring this action. R. 158 at 9–10. Yet, Defendants also argued that anyone who invested in the imprudent funds cannot bring this action because such investment is a concession of the prudence of the funds. *Id*. at 11–12. Defendants thus have tried to use Rule 23 to bar *anyone* from suing plan fiduciaries over imprudent investment options. That is an abuse of the Rule and should be rejected. *See*, *e.g.*, *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373 (1966) (Rules must be construed to avoid "procedural booby traps" that prevent litigants from "ever having their day in court").

## V.     Plaintiffs' claims qualify for certification under Rule 23(b)(1)(B)

Having satisfied every element of Rule 23(a), Plaintiffs' claims need only satisfy one part of Rule 23(b) to be certified. Fed.R.Civ.P. 23(b).

> In light of the derivative nature of ERISA §502(a)(2) [29 U.S.C. §1132(a)(2)] claims, breach of fiduciary duty claims brought under §502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held.

*In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009)(citing cases); *see also George*, 270 F.R.D. at 369 (quoting *Schering*, 589 F.3d at 604); *see also id.* at 370 (citing other cases).

*Spano* did not reject outright the certifiability of classes such as Plaintiffs' under Rule 23(b)(1)(B), so long as a court could "find the necessary identity of interest among all class members." *Spano*, 633 F.3d at 588. Further, *Spano* did not rule out "the possibility of class treatment for one or more better-defined and more-targeted classes." *Id.* Plaintiffs have now provided just such better-defined and more-targeted classes, limiting the Growth Equity Fund and Balanced Fund classes to those participants who invested in those funds during the time periods covered in the lawsuit and who suffered losses as a result of the alleged breach of fiduciary duties by Defendants (failing to convert to prudent alternatives). These classes therefore have the "congruence" and "identity of interest" required by *Spano* to satisfy Rule 23(a) and Rule 23(b)(1)(B). Accordingly, an adjudication of one class member's claim "as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]" Fed.R.Civ.P. 23(b)(1)(B); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833–34 (1999)(Rule 23(b)(1)(B) applies to actions that "would have the practical if not technical effect of concluding the interests of other members as well, or of impairing the ability of the others to

protect their own interests."); Fed.R.Civ.P. 23, Advisory Comm. Notes, 1966 Amend., subdiv. (b)(1)(B), 39 F.R.D. 69, 100–01(actions "which charge[ ] a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or beneficiaries, and which require[ ] an accounting or like measures to restore the subject of the trust" are classic examples of a Rule 23(b)(1)(B) action).

## VI. Alternatively, Rule 23(b)(3) certification is proper

If the Court finds certification proper under Rule 23(b)(1)(B), there is no need to consider certification under Rule 23(b)(3). *Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane*, 7AA Fed. Prac. & Proc. Civ. §1772 (3d ed.)(collecting cases). However, if the Court somehow found these claims not to qualify under Rule 23(b)(1)(B), they clearly satisfy Rule 23(b)(3) and should certified thereunder. Rule 23(b)(3) allows a class action if "questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). This inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *In re Mexico Money Transfer Litig.,* 267 F.3d 743, 746-47 (7th Cir. 2001).

The predominance requirement is easily satisfied for a claim of fiduciary breach in the management of plan investment options. *See Rogers v. Baxter Int'l Inc.,* 2006 WL 794734 at *12 (N.D.Ill. March 22, 2006)(finding predominance and certifying a Rule 23(b)(3) class where the plaintiff claimed that "the defendants breached their fiduciary duties … by virtue of the way they managed or failed to manage the Plan"). The common questions of law and fact in these claims—who were the fiduciaries, whether they failed to discharge their duties with respect to the Plan prudently and loyally, whether the actively managed Growth Equity Fund and Balanced Fund were imprudent based on Defendants' passive investment policy—predominate over any

16

individual questions. Indeed, the only individual questions are how the recovered "losses to the Plans" (29 U.S.C. §1109(a)) are to be divided among the class members, an issue that is minor compared to the common issues and a matter of mechanical, pro-rata division.

Rule 23(b)(3)'s "superiority" requirement asks the Court to consider: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (C) the desirability of concentrating litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. Fed.R.Civ.P. 23(b)(3). Class certification is "superior" when the "class action would achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (citation omitted). As the Seventh Circuit has consistently recognized:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997); *see also Crabill v. Trans Union, L.L.C.,* 259 F.3d 662, 665 (7th Cir. 2001)("the core function of [the class action] is to enable the litigation of claims too small to warrant the costs of prosecuting a separate suit for each claim"). If the Court finds these claim cannot be certified under Rule 23(b)(1) or (b)(2), it should certify the claims under Rule 23(b)(3).

### VII. If the Court rejects any class action certification, the Court should allow Plaintiffs to pursue the claims on behalf of the Plan directly.

ERISA provides stringent fiduciary duties. A plan fiduciary is "personally liable to make good to such plan any losses to the plan" resulting from the breach of such duties and to "restore

17

to such plan any profits of such fiduciary which have been made through use of the assets of the plan by the fiduciary[.]" 29 U.S.C. §1109(a). In addition, the fiduciary is "subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." *Id.*

In order to enforce these plan remedies, ERISA authorizes *any* participant in the plan to bring a civil action on behalf of the plan "for appropriate relief under §1109 of this title[.]" 29 U.S.C. §1132(a)(2). This is the same enforcement authority that ERISA extends to the Secretary of Labor and any fiduciary of the plan. *Id.* Similarly, ERISA allows *any* participant to bring a civil action "to enjoin any act or practice which violates [ERISA] or the terms of the plan, or to obtain other equitable relief to redress such violations or enforce any provisions of [ERISA] or the terms of the plan[.]" 29 U.S.C. §1132(a)(3).

Plaintiffs are acting here in a representative capacity on behalf of their Plan to recover Plan losses caused by Defendants' breach of their fiduciary duties under ERISA and to obtain equitable and other remedial relief to cure and stop further breaches and to remove the current fiduciaries. *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985); *see* R. 107 (Second Am. Complaint). To act effectively in that representative capacity, protect the interests of the other participants in their plan, and avoid the conflicts of several independent actions by participants over the same breaches of duty, Plaintiffs seek to have their action certified as a class action under Federal Rule of Civil Procedure 23(b)(1)(B) or 23(b)(3). However, if the Court somehow determines that these claims cannot be certified as a class action, it should allow Plaintiffs to proceed individually on behalf of the Plan to recover the Plan's full damages and equitable relief in accordance with 29 U.S.C. §1132(a)(2).

**VIII.    Conclusion**

For these reasons, Plaintiffs request certification of the two classes outlined herein.

Respectfully submitted,

SCHLICHTER, BOGARD & DENTON

/s/ Troy A. Doles
Jerome J. Schlichter, jschlichter@uselaws.com
Nelson G. Wolff, nwolff@uselaws.com
Troy A. Doles, tdoles@uselaws.com
Jason P. Kelly, jkelly@uselaws.com
120 W. Main Street, Ste. 208
Belleville, IL 62220
100 South Fourth Street, Ste. 900
St. Louis, MO 63102
Tel: 314-621-6115
Fax: 314-621-7151
Lead Counsel

Thomas R. Meites
TRMeites@mmmglaw.com
Meites, Mulder, Mollica & Glink
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
Tel: 312-263-0272
Fax: 312-263-2942
Local Counsel

**CERTIFICATE OF SERVICE**

This is to certify that on September 2, 2011, a copy of the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Troy A. Doles