

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GERALD GEORGE, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) No. 08 C 3799 |
| v. | ) |
| | ) Judge Ruben Castillo |
| KRAFT FOODS GLOBAL, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Gerald George, Cathy Dunn, and Timothy Streff bring this class action on behalf of themselves and all other similarly situated persons (collectively, "Plaintiffs"),[1] against Kraft Foods Global, Inc. ("Kraft Global"), Kraft Foods, Inc. ("Kraft"), Kraft Foods Global, Inc. Management Committee of Employee Benefits ("Kraft Employee Benefits Committee"), Kraft Foods Global, Inc. Administrative Committee ("Kraft Administrative Committee"), the Compensation and Governance Committee of the Kraft Foods, Inc. Board of Directors ("Kraft Compensation Committee"), Kraft Foods Global, Inc. Benefits Investment Committee ("Kraft Benefits Investment Committee"), and the Kraft Benefits Investment Group (collectively, "Kraft Defendants"). (R. 107, Second Am. Compl.) Additionally, Plaintiffs name Altria Corporate Services, Inc. ("Altria Services"), the Corporate Employee Plans Investment Committee of the Board of Directors of Altria Group, Inc. ("Altria Investment Committee"), and the Benefits Investment Group of Altria Corporate Services, Inc. ("Altria Benefits Investment Group") (collectively, "Altria Defendants"), as defendants. (*Id.*) Plaintiffs allege that the Kraft and Altria

---

[1] Andrew Swanson was formerly a named plaintiff in this action. (R. 107, Second Am. Compl.) On May 19, 2010, Plaintiffs filed a motion to withdraw Swanson as a named plaintiff. (R. 161, Pls.' Mot. to Withdraw.) The Court granted their motion on June 1, 2010. (R. 163, Min. Entry.)

Defendants (collectively, "Defendants") breached fiduciary duties established by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and seek declaratory, monetary, and equitable relief. (*Id.*) Presently before the Court is Plaintiffs' amended motion for class certification. (R. 270, Pls.' Mot.) For the reasons stated below, the motion is denied without prejudice.

## RELEVANT FACTS

The relevant facts of this case are set forth in the Courts' July 14, 2011 opinion and order, as well as several preceding opinions, and will not be recounted here except as pertinent to the pending motion. *George v. Kraft Foods Global, Inc.*, No. 08 C 3799, 2011 WL 2784153, at *1-11 (N.D. Ill. July 14, 2011). Plaintiffs are current or former participants in the Kraft Foods Global, Inc. Thrift Plan (the "Plan"). *Id.* at *1. The Plan, which was sponsored by Kraft Foods Global, is a defined contribution plan. *Id.* Between 1994 and 2010, the Plan had between approximately 28,000 and 55,000 participants, and between $1.5 and $5.4 billion in assets. *Id.* Defendants are all alleged to be, or to have been at certain times, Plan fiduciaries. *Id.*

A company establishing a pension plan has a choice of two models: a defined benefit plan or a defined contribution plan. A defined benefit plan assures participants whose rights have vested that they will receive a specified payout upon retirement. This payout amount is determined by a formula, and is achieved via the creation of a trust used to fund payments pursuant to the formula. *Id.* In contrast, in a defined contribution plan there is no promise of a specified payout upon retirement. Rather, benefits are simply the amount of an employee's contributions to the plan plus earnings on those contributions. *Id.*

Because the Plan is a defined contribution plan, Plan participants control the investment of their own Plan accounts and may elect to invest a portion of their before- and after-tax earnings in any combination of investment options available under the Plan. *Id.* at *2. Indeed, the Plan allows participants to exercise control over their accounts, and participants can make changes to their investment elections at any time. *Id.* The investment options available to a participant are limited to the investment options that the Investment Committee selects for the Plan. *Id.* Between June 1995 and July 2008, Plan participants could invest in eleven investment options provided by the Plan, including the funds challenged here, the Growth Equity Fund and Balanced Fund (the "Funds"). *Id.*

## PROCEDURAL BACKGROUND

On July 2, 2008, Plaintiffs initiated their original class action against Defendants on behalf of all similarly situated Plan participants. (R. 1, Compl.) Plaintiffs amended their original complaint on November 20, 2008. (R. 61, Pls.' First Am. Compl.) In February 2009, Plaintiffs moved for leave to file their Second Amended Complaint. (R. 82, Pls.' Mot. For Leave to File Second Am. Compl.) After the Court granted their motion, Plaintiffs filed their Second Amended Complaint (the "complaint") on July 31, 2009. (R. 107, Second Am. Compl.)

On August 31, 2009, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 112, Mot. to Dismiss.) In December 2009, the Court granted Defendants' motion in part, and denied it in part. *George v. Kraft Foods Global, Inc.*, 674 F. Supp. 2d 1031, 1050 (N.D. Ill. 2009) ("*George I*"). The Court's December 2009

ruling—combined with a joint stipulation entered into by the parties—left only Count III of the complaint remaining for consideration.[1]

On August 25, 2010, the Court certified a plan-wide class action under Rule 23(b)(1). *George v. Kraft Foods Global, Inc.*, 270 F.R.D. 255, 372 (N.D. Ill. 2010) (*"George II"*). Following the Seventh Circuit's opinion in *Spano v. Boeing Co.*, 633 F.3d 574 (7th Cir. 2011), Defendants filed a motion to vacate the Court's class certification order, which the Court granted on July 19, 2011. (R. 259, Order.)

On July 14, 2011, the Court granted in part and denied in part Defendants' motion for summary judgment. *George*, 2011 WL 2784153 (*"George III"*). Plaintiffs' motion for summary judgment was denied on July 19, 2011. *George v. Kraft Foods Global, Inc.*, No. 08 C 3799, 2011 WL 2970928 (N.D. Ill. July 19, 2011) (*"George IV"*). At this stage, Plaintiffs' sole remaining claim is that Defendants breached their fiduciary duty by retaining two actively managed funds, the Growth Equity Fund and the Balanced Fund, as Plan investment options even after Defendants decided to eliminate all actively managed investments in their defined benefit plans in 1999. *George III*, 2011 WL 2784153, at *17. This claim is limited by the Court's finding that any allegations that Defendants breached their fiduciary duty before July 2, 2002, are time barred. *Id.* at *19.

Presently before the Court is Plaintiffs' motion for class certification. (R. 270, Pls.' Mot.) In their motion, Plaintiffs ask the Court to "certify Count III of their Second Amended Complaint as a class action under Fed. R. Civ. P. 23(b)(1)." (*Id.* at 1.) Alternatively, they request the

---

[1] On February 22, 2010, the parties jointly stipulated that Counts I and II of the complaint would be dismissed without prejudice against the remaining Altria Defendants. (R. 144, Joint Stipulation of Dismissal.)

4

certification under Rule 23(b)(3). (*Id.*) Plaintiffs seek certification of two classes, the Growth Equity Fund Class and the Balanced Fund Class, defined as:

> All participants or beneficiaries of the Kraft Foods Global, Inc. Thrift Plan No. 125 who invested in the Growth Equity Fund between July 2, 2002 and June 30, 2005, and whose investment underperformed the passively managed Vanguard Mid Cap Index Fund. Excluded from the class are the Defendants and all of their officers and directors (named or unnamed).

> All participants or beneficiaries of the Kraft Foods Global, Inc. Thrift Plan No. 125 who invested in the Balanced Fund between July 2, 2002 and December 31, 2009, and whose investment in the fund underperformed the passively managed Vanguard Balanced Index Fund. Excluded from the class are the Defendants and all of their officers and directors (named or unnamed).

(*Id.* at 2-3.) Plaintiffs also propose Dunn as representative for both classes because she invested in the Funds during the proposed class time period. (*Id.*)

## LEGAL STANDARD

A plaintiff seeking class certification has the burden of proving that the proposed class meets the requirements of Rule 23. *Wal-Mart Stores v. Dukes*, 131 S.Ct. 2541, 2551 (2011). "Rule 23 does not set forth a mere pleading standard." *Id.* Rather, the plaintiff seeking class certification "must affirmatively demonstrate" her compliance with Rule 23. *Id.* In addition, an implicit prerequisite to class certification is that a sufficiently definite class must exist. *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977-78 (7th Cir. 1977). If these requirements are met, the district court has broad discretion to determine whether certification is appropriate in a particular case. *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 596 (7th Cir. 1993). Before deciding whether to allow a case to proceed as a class action, a district court judge should make whatever factual and legal inquiries are necessary under Rule 23, even if those considerations overlap the merits of the case. *Dukes*, 131 S.Ct. at 2552.

## ANALYSIS

Rule 23 of the Federal Rules of Civil Procedure sets forth the criteria for certification of a class action. First, the class must satisfy all four requirements of Rule 23(a): "numerosity, common questions of law or fact, typicality of claims or defenses, and adequacy of representation." *Spano*, 633 F.3d at 583. The class must also satisfy one of the provisions of Rule 23(b). Rule 23(b)(1) provides for a non-opt-out class action where individual actions could "establish incompatible standards of conduct for the party opposing the class" or "as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications." Fed. R. Civ. P. 23(b)(1). Rule 23(b)(2) is appropriate for actions seeking "final injunctive relief or corresponding declaratory relief." Fed. R. Civ. P. 23(b)(2). Finally, Rule 23(b)(3) allows class certification for cases "in which the common questions predominate and class treatment is superior." *Spano*, 633 F.3d at 583.

The Seventh Circuit recently noted in *Spano* that "[t]he question whether to certify a class asserting section 502(a)(2) claims is . . . a complex one if the underlying plan takes the defined-contribution form." *Id.* at 582. Accordingly, before analyzing Plaintiffs' proposed class definitions, the Court will briefly discuss ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(3) ("Section 502(a)(2)"), the provision under which Plaintiffs seek relief, and its relationship with Rule 23 as set forth in the Seventh Circuit's *Spano* decision, which precipitated the decertification of the class in this case.

### I. ERISA Section 502(a)(2)

ERISA Section 502(a)(2) gives a participant in certain retirement plans a right to sue for a breach of fiduciary duty. ERISA § 502(a)(2), 29 U.S.C. § 1132(a). Specifically, Section

6

502(a)(2) states that "[a] civil action may be brought . . . by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title[.]" The cross-reference found in Section 502(a)(2), Section 1109, which is ERISA Section 409, provides in pertinent part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

ERISA § 409(a), 29 U.S.C. § 1109(a).

In *Massachusetts Mutual Life Insurance Co. v. Russell*, the Supreme Court held that in the context of a defined benefit plan, a plan participant can only maintain a suit under Section 502(a)(2) for breach of fiduciary duty if she alleges a plan-wide breach. 473 U.S. 134, 139-48 (1985). The plaintiff in *Russell* had received all of the benefits to which she was contractually entitled, but sought damages arising from a delay in the processing of her claim. *Id.* at 136-37. In holding that Section 502(a)(2) does not provide a remedy for this type of injury, the Supreme Court reasoned that "[ERISA's] draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Id.* at 142.

At the time *Russell* was decided, defined benefit plans were the norm. The Supreme Court therefore did not address whether individual plan participants in a defined contribution plan could bring suit under Section 502(a)(2) for an injury that was not plan-wide until nearly twenty years later in *LaRue v. DeWolff, Boberg & Assoc., Inc.*, 552 U.S. 248, 254 (2008). In

*LaRue*, the plaintiff was a participant in a defined contribution plan who alleged that the plan's fiduciaries had failed to carry out his directions to make certain changes to the investments in his individual account. *Id.* at 251. He claimed that this omission depleted his interest in the plan by $150,000, and amounted to a breach of fiduciary duty under ERISA. *Id.* Relying on the "entire plan" language in *Russell*, the appellate court held the plaintiff's action could not proceed under Section 502(a)(2) because any relief that he might receive would be personal to him, rather than on behalf of the plan as a whole. *Id.* at 250.

The Supreme Court reversed. It began by assuming that the defendants had breached fiduciary obligations defined in Section 409(a), and that those breaches adversely impacted the value of the plan's assets in the plaintiff's individual account. *Id.* at 252. The Court noted that "the legal issue under § 502(a)(2) is the same whether [the plaintiff's] account includes 1% or 99% of the total assets in the plan." *Id.* That part of ERISA, the Court observed, authorized certain parties to bring civil actions for violations of Section 409(a), which imposes statutory duties on fiduciaries that "'relate to the proper management, administration, and investment of fund assets,' with an eye toward ensuring that 'the benefits authorized by the plan' are ultimately paid to participants and beneficiaries." *Id.* (quoting *Russell*, 473 U.S. at 142). The Court concluded that the misconduct the plaintiff alleged fell "squarely within that category." *Id.*

In reaching this conclusion, the Court emphasized that the "landscape" of retirement plans had changed since *Russell* and that defined contribution plans now "dominate the retirement plan scene" instead of defined benefit plans. *Id.* at 254-55. The Court explained that the "entire plan" language in *Russell* "reflects the former landscape" of defined benefit plans because "[m]isconduct by the administrators of a defined benefit plan will not affect an

individual's entitlement to a defined benefit unless it creates or enhances the risk of default by the entire plan." *Id.* at 255. Under the current landscape of defined contribution plans, however, "fiduciary misconduct need not threaten the solvency of the entire plan to reduce benefits below the amount that participants would otherwise receive." *Id.* at 255-56. The Court's references to the "entire plan" in *Russell* are thus "beside the point in the defined contribution context" because "[w]hether a fiduciary breach diminishes plan assets payable to all participants or beneficiaries, or only to persons tied to particular individual accounts, it creates the kind of harms that concerned the draftsmen of § 409." *Id.* Accordingly, the Court concluded, Section 502(a)(2) "authorize[s] recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *Id.*

Following *LaRue*, a beneficiary of a defined contribution account that suffers a loss may seek relief under Section 502(a)(2) "even though other participants are uninjured by the acts said to constitute a breach of fiduciary duty." *Rogers v. Baxter Int'l, Inc.*, 521 F.3d 702, 705 (7th Cir. 2008). *LaRue* did not address, however, when plan participants pursuing this type of claim under Section 502(a)(2) may proceed as a class action under Rule 23. The Seventh Circuit addressed this issue in *Spano*, leading to the Court's decertification order in this case and Plaintiffs' amended motion for class certification.

In *Spano*, the Seventh Circuit consolidated two cases and considered whether the two complaints challenging the practices of defined contribution plans were properly certified as class actions. 633 F.3d at 575. The first set of plaintiffs (the "Spano plaintiffs") alleged that Boeing breached its fiduciary duties to its plan's participants by: (1) causing the plan to pay excessive fees and expenses; (2) including imprudent investment options in the plan; and (3) concealing

material information from the plaintiffs. *Id.* at 576. The second set of plaintiffs (the "Beesley plaintiffs") claimed that the defendants, who were fiduciaries of a plan sponsored by the International Paper Company: (1) caused the plan to pay excessive fees; (2) maintained imprudent investment options in the plans; and (3) miscommunicated to participants about the plan investment options. *Id.* at 577. The district court certified two nearly identical classes consisting of:

> All persons, *excluding the Defendants and/or other individuals who are or may be liable for the conduct described in this Complaint,* who are or were participants or beneficiaries of the Plan and who are, were or may have been affected by the conduct set forth in this Complaint, as well as those who will become participants or beneficiaries of the Plan in the future.

*Id.*[2]

The Seventh Circuit's analysis of this class definition began with a discussion of the types of injuries that are appropriate for class treatment in ERISA cases, distinguishing between "an injury to one person's retirement account that affects only that person"—and thus is not appropriate as a class action—and "an injury to one account that qualifies as a plan injury." *Id.* at 581. Generally, in the context of a defined benefit plan, a "plan injury" is one that "has a plan-wide effect, in the sense that the loss of benefits occurring in one account diminishes the plan assets as a whole." *Id.* In the case of a defined contribution plan, however, because of the individualized investment decisions made by plan participants, it is possible that the injury suffered by a plaintiff may affect "the plan as a whole" even if that injury was not shared by any other participant in the plan. *Id.* at 582. In such an instance, class treatment is not appropriate. If, however, the plan's fiduciaries' conduct resulted in an injury shared by other plan participants,

---

[2] The differences in the two classes were irrelevant to the issues on appeal.

a class action may be proper under Rule 23. *See id.* Accordingly, "[t]he propriety of class treatment will thus turn on the circumstances of each case." *Id.*

In the case of the Spano and Beesely plaintiffs, the Seventh Circuit found that the classes did not meet the requirements of Rule 23. Specifically, the Seventh Circuit found that the broad class definitions did not meet the typicality and adequacy requirements of Rule 23(a) or the requirements of Rule 23(b)(1). *Id.* at 589-91. Regarding typicality, the Seventh Circuit emphasized that this requirement ensures that there is "enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Id.* at 586. Similarly, adequacy ensures not only that the counsel representing the plaintiffs are competent, but also that the named representatives have no conflicts with the other proposed class members. *Id.* at 586-87. Regarding this requirement, as well as its subsequent analysis under Rule 23(b), the Seventh Circuit noted that

> There is greater potential for intra-class conflict in the defined-contribution context. For example, a fund that turns out to be an imprudent investment over a particular time for one participant may be a fine investment for another participant who invests in the same fund over a slightly different period. If both are included in the same class, a conflict will result and class treatment will become untenable.

*Id.* at 591.

Applying these principles to the classes before it, the Seventh Circuit found that the Spano class failed to meet the typicality requirement because the class definition was "breathtaking in its scope" and included "[a]nyone, in the history of Time, who was ever a participant in the Boeing Plan, or who in the future may become a participant in the Boeing plan . . . [who] may have been affected by the conduct set forth" in the complaint. *Id.* This meant that even though the Spano plaintiffs challenged the inclusion of two specific funds as investment

11

options, many of the purported class members "never held a single share in either or both of those funds." *Id.* The Seventh Circuit observed that in order to satisfy the typicality requirement, "a class representative in a defined contribution case would at a minimum need to have invested in the same funds as the class members." *Id.* The Seventh Circuit was also concerned that the Spano plaintiffs sought to represent class members who may have had "no complaint" with the funds at issue, depending on when they entered and left the funds. *Id.* at 587. Given the potential for conflicts between the members who profited from the challenged investments and those who did not, the Seventh Circuit concluded that the class representatives would not adequately protect the interests of all class members. *Id.*

In terms of the Beesley plaintiffs and their imprudent investment claim, the Seventh Circuit recognized that a plan could be liable for the selection of investment options in a defined contribution plan. *Id.* at 590 (citing *Howell v. Motorola, Inc.*, 556 F.3d 552, 587-87 (7th Cir. 2011)). At the same time, however, the Seventh Circuit cautioned that "the availability of such a claim in theory is not the same as the ability to assert it as a class in a particular case." *Id.* Because the Beesely class representatives did not even hold the allegedly imprudent funds, the Seventh Circuit concluded that they failed to meet the typicality and adequacy requirements. *Id.*

In reaching these conclusions, the Seventh Circuit observed that "there is no denying the fact that a greater number of issues will be suitable for class treatment in a defined-benefit case than will be in a defined-contribution case." *Id.* at 591. At the same time, however, the Seventh Circuit noted that while the plaintiffs faced many hurdles to class certification on remand, "it would be inconsistent with *LaRue* to assume that class actions are impossible in these cases." *Id.*

## II. The Proposed classes

The *Spano* decision led the Court to vacate its previous class certification order in this case, and Plaintiffs have proposed modified class definitions that they contend satisfy the Rule 23 requirements as interpreted by *Spano*. The proposed classes have four main changes. First, only Dunn is named as a class representative. Second, in order to ensure "a congruence between the investments held by the named plaintiff and those held by members of the class . . . she wishes to represent," *id.* at 586, the proposed classes only contain members who invested in either the Balanced Fund or the Growth Equity Fund, and Dunn invested in both. Third, the class definitions now contain start and end dates that reflect the Court's summary judgment order and that limit the class to a defined set of class members, not every single past, present, and future plan participant as was the case in *Spano*. Finally, in an attempt to overcome the Seventh Circuit's concern in *Spano* that the plaintiffs sought to represent some class members who might have had "no complaint" with the funds at issue, Plaintiffs have limited the classes to participants whose investments in the Funds underperformed compared to "prudent alternatives"—the Vanguard Mid Cap Index Fund and the Balanced Index Fund (the "Vanguard Funds"). (R. 271, Pls.' Mem. at 12-13.)

The Court agrees with Plaintiffs that their proposed classes are "better-defined and more-targeted" classes, as required by *Spano*. 633 F.3d at 588. Nevertheless, Defendants point to a fundamental problem with the class definitions that leads the Court to conclude that Plaintiffs have not met their burden of establishing that certification of the proposed classes is appropriate. Specifically, the Court finds that Plaintiffs' choice of the Vanguard Funds as comparators for

13

purposes of the class builds into the class definitions assumptions about the complicated and unsettled issues of loss and causation.

As mentioned above, because Plaintiffs only seek to include class members who were "harmed" by Defendants' alleged fiduciary breach as required by *Spano*, they limited the classes to participants whose investments in the Funds underperformed in comparison to the Vanguard Funds. The class definitions therefore assume that the underperformance of the class members' investments in comparison to the Vanguard Funds is the proper measure of loss in this case. This issue, however, is far from resolved. Plaintiffs' expert contends that a comparison between the performance of the challenged Funds and the Vanguard Funds is the appropriate calculation for damages. (R. 271, Pls.' Mem., Ex. 1, Pomerantz Decl. at 2, 5.) Defendants' expert argues, however, that the proper comparator funds to the challenged funds are either the next closest investments already in the Plan or other funds in the Plan in proportion to participants' previous investments. (R. 285, Defs.' Resp., Ex. 3, Ross Report at 8-9.) Plaintiffs cannot use class certification as a backdoor way of resolving this contested issue in their favor. As both *Dukes* and *Spano* have emphasized, it is the plaintiff's burden to "affirmatively demonstrate" that the proposed class definition is appropriate; Plaintiffs here have not yet established that the proper measure of loss in this case is an alternative passive investment or that the Vanguard Funds are the appropriate specific alternatives.

The Court is also troubled by Plaintiffs' failure to address whether class treatment is appropriate given the causation issues in this case. To state a claim for breach of fiduciary duty, a plaintiff must show "(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff." *Kenseth v. Dean*

*Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010). Thus, both loss and a causal connection between that loss and defendant's breach are necessary elements of an ERISA claim for damages under 29 U.S.C. § 1109(a). Defendants have argued that given the individual investment choices made by plan participants in this case, even if Plaintiffs establish that Defendants breached their fiduciary duty, they cannot recover because they cannot show that the breach caused them any loss. (R. 291, Defs.' Mem. at 17.) Prior to *Spano*, in cases alleging breach of fiduciary duty under Section 502(a)(2), courts rejected similar arguments about the issue of individual causation at the class certification stage because it was viewed as a secondary damages issue to the primary issue of harm to the "the plan." *See, e.g., Brieger v. Tellabs, Inc.*, 245 F.R.D. 345, 355 fn.4 (N.D. Ill. 2007) (noting that "cases distinguish between recovery by the plan and 'dividing the pie' among individual participants afterward"); *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 78 (E.D. Va. 2006) ("[T]he sole loss causation issue is whether U.S. Airways' alleged breach caused loss to the Plan . . . individual issues of loss causation do not predominate, indeed are not relevant, unless and until it becomes necessary to allocate any Plan recovery to participants."); *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 110 (N.D. Cal. 2008) (noting in an ERISA challenge to the management of a defined contribution plan that "[a]lthough the losses attributable could differ from participant to participant, individual damages should not defeat typicality").

In *Spano*, however, the Seventh Circuit indicated that concerns about conflicts arising from the different ways in which a fiduciary breach impacted plan participants cannot be so

easily brushed aside. 633 F.3d at 587.[3] Plaintiffs have narrowed the class definitions to meet the Rule 23 requirements as interpreted by *Spano*, but in doing so, in addition to assuming that the Vanguard Funds are the appropriate alternative funds against which to measure the Funds' underperformance, the definitions assume that all of the class members would have invested in the Vanguard Funds had they been offered in the Plan in place of the Funds. This is less than obvious, however, and an issue Plaintiffs did not address in their amended motion for class certification.

This is not to say that class certification is not possible in this case. Rather, at this time, given the Supreme Court's emphasis in *Dukes* on thoroughly vetting class definitions prior to certification and the Seventh Circuit's cautionary language in *Spano* regarding certifying classes in cases such as this, the Court concludes that Plaintiffs have not yet established that the proposed class definitions are appropriate to certify. While the Court has not conducted a full Rule 23 analysis due to the problems in the proposed class definitions discussed above, it appears that certain issues are clearly more suitable for class treatment, particularly the liability issues of whether Defendants are fiduciaries and whether they breached their fiduciary duties. Plaintiffs face significant hurdles, however, in convincing this Court that class certification is appropriate for the loss and causation issues after *Spano*.

In their motion for class certification, Plaintiffs do not propose any subclasses or discrete liability issues for certification. Given the issues discussed above, however, an approach that

---

[3] The Seventh Circuit did reject the defendants argument that "highly individualized issues of Plan participant behavior" made class certification inappropriate as it related to the Rule 23(a) requirement of commonality. The Seventh Circuit reasoned that "[b]y focusing exclusively on the final step of the defined-contribution plan—that is, the participant's decisions with respect to the allocation of his or her funds—[the defendants' argument] ignores the fact that fund participants operate against a common background." *Id.*

entails class certification for the predominant issues amenable to class treatment may be appropriate in this case. *See Saltzman v. Pella Corp.*, 257 F.R.D. 471 (N.D. Ill. 2009), *aff'd*, 606 F.3d 391 (7th Cir. 2010) (certifying class for common issues of liability under state consumer fraud statutes, but denying class certification for the issues of causation and damages); *see also Allen v. Int'l Truck and Engine Corp.*, 358 F.3d 469, 472 (7th Cir. 2004) (noting that, on remand, the district court should consider whether some issues could be treated on a class basis even if other issues, such as damages, must be handled individually). Rule 23 allows courts to "devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). Specifically, Rule 23(c)(4) gives courts discretion to allow a claim to be "brought or maintained as a class action with respect to particular issues," where appropriate. Fed. R. Civ. P. 23(c)(4). This issue has not been briefed by the parties, however, and mindful that "judicial comments lacking the benefit of an adversarial presentation are more likely to be uninformed," *United States v. Elliott*, 467 F.3d 688, 690 (7th Cir. 2006), the Court leaves it to the Plaintiffs to propose solutions to the problems identified by the Court in this opinion by way of any amended motion for class certification.

## III. Direct suit under ERISA Section 502(a)(2)

As an alternative to certification under Rule 23(a), Plaintiffs seek to pursue their claims in a representative capacity on behalf of the Plan to recover Plan losses directly under Section 502(a)(2). (R. 271, Pls.' Mem. at 17-18.) Defendants contend that this request is too late, as well as improper given that a plaintiff seeking to bring a Section 502(a)(2) action in a representative capacity must comport with the requirements of Rule 23. (R. 285, Defs.' Resp. at

17

18-19.) In support of their arguments, Defendants cite numerous cases—none of which Plaintiffs address in their reply—in which courts have held that plaintiffs seeking to bring direct actions under Section 502(a)(2) must meet the requirements of Rule 23 or otherwise provide procedural protections for interested parties. (*Id.*) The Court agrees with the decision of its colleague, Judge Shadur, in *Fish v. Greatbanc Trust Co.*, and concludes that to permit this action to proceed in a representative capacity without the type of protections provided by Rule 23 or 23.1 "would be overly myopic." 667 F. Supp. 2d 949, 951 (N.D. Ill. 2009). As the Second Circuit stated in *Coan v. Kaufman*:

> [W]e do not see how an action can be brought in a "representative capacity on behalf of the plan' if the plaintiff does not take any steps to become a bona fide representative of other interested parties. . . It seems to us that the representative nature of the section 502(a)(2) right action implies that plan participants must employ procedures to protect effectively the interests they purport to represent.

457 F.3d 250, 259 (2d Cir. 2006). Here, in their cursory treatment of this issue, Plaintiffs have not suggested any procedural safeguards for other interested parties. Accordingly, if the Court determines that Plaintiffs' claims cannot be certified under Rule 23, the Court will not allow this action to proceed in a representative capacity under Section 502(a)(2).

## CONCLUSION

For the reasons stated above, Plaintiffs' motion for class certification (R. 270) is denied. Plaintiffs are given 21 days from the entry of this order to file an amended motion for class certification. The parties are once again urged to exhaust all remaining settlement possibilities.

Entered: *[signature]*

**Judge Ruben Castillo**
**United States District Court**

**Dated:** October 25, 2011