IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

GERALD GEORGE et al.,            )
                                 )
            Plaintiffs,          )   No: 08 CV 3799
v.                               )
                                 )   Judge Ruben Castillo
KRAFT FOODS GLOBAL INC. et al.,  )
                                 )
            Defendants.          )

**MEMORANDUM IN SUPPORT
OF SECOND AMENDED MOTION FOR CLASS CERTIFICATION**

SCHLICHTER, BOGARD & DENTON
Jerome J. Schlichter, jschlichter@uselaws.com
Nelson G. Wolff, nwolff@uselaws.com
Troy A. Doles, tdoles@uselaws.com
Jason P. Kelly, jkelly@uselaws.com
120 W. Main Street, Ste. 208
Belleville, IL 62220
100 South Fourth Street, Ste. 900
St. Louis, MO 63102
Tel: 314-621-6115
Fax: 314-621-7151
Lead Counsel for Plaintiffs

# TABLE OF CONTENTS

I. Addressing the problems raised in the Court's Order................................................................. 1

    A. The "proper measure of loss in this case is an alternative passive investment", R. 291 at 14, for the Growth Equity Fund claim because participants invested in that Fund to invest in small-mid cap stocks and Defendants ultimately, yet belatedly, determined that the prudent way to provide that investment was through a passive index........................................................................................................ 4

    B. The Russell Small Cap Completeness Index that Defendants used to replace the Growth Equity Fund's active management in 2005 is a prudent alternative because Defendants could have made that replacement in 2002.................................. 9

    C. The Vanguard Mid Cap Index Fund also is an appropriate prudent alternative because it was an investment in the S&P 400 index of stocks outside the S&P 500 index...................................................................................................................... 11

    D. Because the prudent alternative for the Growth Equity Fund must be determined class-wide at the plan level, class certification of loss and causation is not only appropriate, it is necessary under Rule 23(b)(1)(A) and (B)........................................................................................................................... 12

    E. The facts that lead to the certifiability of the Growth Equity Fund Class apply equally to the Balanced Fund Class.............................................................. 17

II. Plaintiffs' classes and representative satisfy the requirements of Rule 23(a) and should be certified under Rule 23(b)(1)(A) or (B).................................................................. 19

    A. Plaintiffs' proposed classes........................................................................ 19

        1. The Growth Equity Fund class. ........................................................... 19

        2. The Balanced Fund Class. .................................................................... 20

    B. The classes and representative satisfy the elements of Rule 23(a). ........................... 21

        1. Numerosity. ......................................................................................... 21

        2. Commonality. ...................................................................................... 21

        3. Typicality. ............................................................................................ 22

        4. Adequacy. ............................................................................................ 24

            a. Plaintiff Cathy Dunn is an adequate class representative...................... 24

            b. Plaintiffs' attorneys are competent and qualified to represent all class members......................................................................................... 26

    C. The classes should be certified under Rule 23(b)(1)(A) or (B). ................................. 27

    D. Alternatively, the classes should be certified under Rule 23(b)(3)............................. 28

Conclusion ........................................................................................................................ 30

certificate of service.......................................................................................................... 31

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) .................................................... 28, 29, 30

*Arreola v. Godinez*, 546 F.3d 788 (7th Cir. 2008) ........................................................ 22

*Brieger v. Tellabs, Inc.*, 245 F.R.D. 345 (N.D.Ill. 2007) ............................................. 13

*CE Design v. King Architectural Metals, Inc.*, 637 F.3d 721 (7th Cir. 2011) ................. 22, 24, 25

*Crabill v. Trans Union, L.L.C.*, 259 F.3d 662 (7th Cir. 2001) ..................................... 28

*Daily Income Fund Inc. v. Fox*, 464 U.S. 523 (1984) ................................................... 15

*Dardaganis v. Grace Capital Inc.*, 889 F.2d 1237 (2d Cir. 1989) ................................. 10

*Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270 (2d Cir. 1992) ................ 10

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ..................................................... 3

*Fish v. Greatbanc Trust Co.*, 667 F.Supp.2d 949 (N.D. Ill. 2009) ............................... 14

*George v. Kraft Foods Global, Inc.*, ___ F.Supp.2d ___, 2011 WL 2784153
    (N.D.Ill. July 14, 2011) .................................................. 2, 5, 12, 18, 19, 21, 26

*George v. Kraft Foods Global, Inc.*, 270 F.R.D. 355 (N.D.Ill. 2010) ................. 21, 22, 24, 26, 27

*Graden v. Conexant Sys. Inc.*, 496 F.3d 291 (3d Cir. 2007) ........................................ 10

*Herkert v. MRC Receivables Corp.*, 254 F.R.D. 344 (N.D.Ill. 2008) ........................... 24

*In re Beck Indus., Inc.*, 605 F.2d 624 (2d Cir. 1979) ................................................... 17

*In re Mexico Money Transfer Litig.*, 267 F.3d 743 (7th Cir. 2001) ............................. 29

*In re Motorola Sec. Litig.*, 644 F.3d 511 (7th Cir. Ill. 2011) ....................................... 4

*In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585 (3d Cir. 2009) ................ 13, 22, 27

*In re YRC Worldwide, Inc. ERISA Litig.*, 2011 WL 1303367 (D.Kan. Apr. 6,
    2011) ......................................................................................................... 14

*Kamen v. Kemper Fin. Svcs. Inc.*, 908 F.2d 1338 (7th Cir. 1990) ............................... 15

*Kayes v. Pac. Lumber Co.*, 51 F.3d 1449 (9th Cir. 1995) ............................................ 15

*Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452 (7th Cir. 2010) .............................. 2

*Leigh v. Engle*, 727 F.2d 113 (7th Cir. 1984) ............................................................................ 10

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir. 1997) ...................................................... 28

*Martin v. Feilen*, 965 F.2d 660 (8th Cir. 1992) .................................................................... 10, 17

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ...................................................................... 27

*Randall v. Rolls-Royce Corp.*, 637 F.3d 818 (7th Cir. 2011) ...................................................... 24

*Ringswald v. County of DuPage,* 196 F.R.D. 509 (N.D.Ill. 2000) ............................................... 21

*Rogers v. Baxter Int'l Inc.,* 2006 WL 794734  (N.D.Ill. March 22, 2006) ................................... 29

*Spano v. Boeing Co.*, 633 F.3d 574 (7th Cir. 2011)................... 2, 3, 14, 17, 19, 21, 22, 23, 24, 27

*Stanford v. Foamex L.P.*, 263 F.R.D. 156 (E.D.Pa. 2009)............................................... 13, 14, 15

*Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555 (1931) ........................... 10

*Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326 (7th Cir. 1969)........................................ 21

*Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672 (7th Cir. 2001)..................................................... 3

*Wagner v. NutraSweet Co.,* 95 F.3d 527 (7th Cir. 1996)............................................................ 22

*Wahl v. Midland Credit Mgmt.,* 243 F.R.D. 291 (N.D.Ill. 2007) ................................................ 24

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. ___, 131 S.Ct. 2541 (2011) .................................... 3, 22

*West v. Prudential Secs., Inc.*, 282 F.3d 935 (7th Cir. 2002)......................................................... 3

*Yost v. First Horizon Nat'l Corp.*, 2011 WL 2182262 (W.D.Tenn. June 3, 2011) ...................... 14

**Statutes**

29 U.S.C. §1104(a)(1)................................................................................................ 12, 16

29 U.S.C. §1104(a)(1)(B) ................................................................................................. 12

29 U.S.C. §1109(a) ..................................................................................... 2, 16, 28, 29

29 U.S.C. §1132(a)(2)......................................................................................... 2, 14, 28

**Rules**

Fed.R.Civ.P. 23(a)(1)....................................................................................................... 21

Fed.R.Civ.P. 23(a)(4)....................................................................................................... 24

Fed.R.Civ.P. 23(b)(1) .................................................................................................. 1

Fed.R.Civ.P. 23(b)(1)(A) ........................................................................................ 1, 28

Fed.R.Civ.P. 23(b)(1)(B) .............................................................................. 1, 14, 27, 28

Fed.R.Civ.P. 23(b)(3) ............................................................................................ 29, 30

Fed.R.Civ.P. 23(c)(1)(C) ............................................................................................... 4

Plaintiffs file this memorandum in support of their second amended motion for class certification to certify two classes for their remaining claims in accordance with the Court's order of October 25, 2011. R. 291. Many of the facts at issue in this motion have been presented to the Court previously and are incorporated by this reference into this memorandum. *See* R. 271, 287. Only additional facts pertinent to the amended motion are addressed herein to focus on the issues raised by the Court's order. Plaintiffs first address the problems identified in the Court's order denying certification without prejudice (R. 291) (Part I) and then restate their proofs that the classes and Plaintiff Cathy Dunn meet each element of Rule 23(a) and are certifiable under Fed.R.Civ.P. 23(b)(1)(A) and (B) (Part II).

## I.     Addressing the problems raised in the Court's Order.

The Court rejected certification of Plaintiffs' proposed classes because they "build[] into the class definitions assumptions about the complicated and unsettled issues of loss and causation." R. 291 at 13–14. The Court held that "Plaintiffs here have not yet established that the proper measure of loss in this case is an alternative passive investment or that the Vanguard Funds are the appropriate specific alternatives." *Id.* at 14. The Court further noted that the proposed classes assumed without explanation that "all of the class members would have invested in the Vanguard Funds had they been offered in the Plan in place of the Funds." *Id.* at 16. In this section, Plaintiffs address these problems, focusing first on the Growth Equity Fund. Doing so will demonstrate why "loss and a causal connection between that loss and defendant's breach", *id.* at 15, not only can be resolved through a class action, but must be resolved through a class action to avoid inconsistent judgments over the same breach among individual participants and to avoid the practical dispositive effect of one participant's action on later participants' actions over the same breach. Fed.R.Civ.P. 23(b)(1); *cf*. R. 291 at 15.

Including the prudent alternative in the class definitions is required to limit the class to those

1

participants who were harmed by the breaches alleged in this case. *Spano* requires that a class exclude plan participants who "have no complaint about th[at] fund[], in light of the dates when they first invested and the date when they exited." *Spano v. Boeing Co.*, 633 F.3d 574, 587 (7th Cir. 2011). "A claim of imprudent management ... is not common if the alleged conduct harmed some participants and helped others[.]" *Id.* at 588.

> [A] fund that turns out to be an imprudent investment over a particular time for
> one participant may be a fine investment for another participant who invests in the
> same fund over a slightly different period. If both are included in the same class, a
> conflict will result and class treatment will become untenable.

*Id.* at 591.

Plaintiffs contend that Defendants imprudently managed the Growth Equity Fund from July 2, 2002 through June 30, 2005 by putting that Fund in the actively managed American Century Heritage Investors mutual fund[1] instead of an "indexed (*i.e.*, passive) investment[]" of the same investment style. *See* R. 255 at 33 (Order denying summary judgment), *George v. Kraft Foods Global, Inc.*, ___ F.Supp.2d ___, 2011 WL 2784153, *18 (N.D.Ill. July 14, 2011). To succeed on that claim Plaintiffs must prove "losses to the plan resulting from ... such breach", 29 U.S.C. §1109(a), which is an element of their claim under 29 U.S.C. §1132(a)(2). R. 291 at 14–15 (Mem. Opinion & Order) (quoting *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010). *Spano* requires that only those participants who suffered that loss be included in the class. That loss can be determined only by measuring how the same investments in the Growth Equity Fund would have performed had Defendants used a passive index of the same investment style instead of the American Century Heritage Investors mutual fund. Thus, defining the prudent alternative to the American Century Heritage Investors mutual fund is not only an

---

[1] The name of the Twentieth Century Heritage Investors mutual fund was changed to American Century Heritage Investors on March 1, 1999. R. 204-203 at 3 (1999 Prospectus). Because the Court has limited Plaintiffs' claims period to 2002, they refer to the mutual fund by the latter name.

2

element of Plaintiffs' claim but also is the element that defines Plaintiffs' classes under *Spano*. Defendants, in fact, previously insisted that "a class can only consist of those Plan participants whose accounts were invested in the Funds over periods of time when the Funds underperformed (net of fees) *compared to similar passively managed funds* and whose accounts would have performed better without the Funds in them." R. 220 at 6 (emphasis added).

Defining the prudent alternative necessarily entails this Court touching some of the merits of Plaintiffs' claims. It is necessary and proper for the Court to address those issues, however, and may conduct an evidentiary hearing to do so, if necessary. *See Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 674 (7th Cir. 2001) ("Resolution of this dispute is vital to any sensible decision about class certification."). "[T]he district judge is free to hold a hearing and resolve the dispute before allowing the case to proceed." *Id.* at 676–77; *see also West v. Prudential Secs., Inc.*, 282 F.3d 935, 938 (7th Cir. 2002) ("Tough questions must be faced and squarely decided, if necessary by holding evidentiary hearings and choosing between competing perspectives."). "The necessity of touching aspects of the merits in order to resolve preliminary matters ... is a familiar feature of litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. ___, 131 S.Ct. 2541, 2552 (2011) (citing *Szabo*).[2] *Spano* also confirms the propriety of delving into the merits if necessary to certify a class. "If some of the determinations required by Rule 23 cannot be made without a look at the facts, then the judge must undertake that investigation." *Spano*, 633 F.3d at 583.

---

[2] *Dukes* notes that many courts have misinterpreted *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974), to preclude any "preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *Dukes*, 131 S.Ct. at 2552 n.6 (quoting *Eisen*, 417 U.S. at 165). The Court noted as "[p]erhaps the most common example of considering a merits question at the Rule 23 stage" the fact plaintiff must prove an efficient market to show commonality and the certifiability of a securities fraud class, even though that also is an element to be proved at trial on the merits. *Id.*

The Court can amend the class definition at any time in the course of the proceedings before final judgment to reflect any change in the facts or law. Fed.R.Civ.P. 23(c)(1)(C). Determining the prudent alternative now, even preliminarily (after an evidentiary hearing, if necessary), so as to properly define the class, does not preclude a revision of that determination and redefinition of the class upon further development of the facts on the merits. *In re Motorola Sec. Litig.*, 644 F.3d 511, 518 (7th Cir. Ill. 2011) ("a district court has the authority to modify a class definition at different stages in litigation").

> **A.** **The "proper measure of loss in this case is an alternative passive investment", R. 291 at 14, for the Growth Equity Fund claim because participants invested in that Fund to invest in small-mid cap stocks and Defendants ultimately, yet belatedly, determined that the prudent way to provide that investment was through a passive index.**

Defendants sent Summary Plan Descriptions (SPDs) to participants to inform them of the investment options in the Plan. *See* R. 204-212 (2001 SPD), R. 204-215 (2003 SPD). The SPDs contain descriptions of each of the Plan's investment options and inform participants that these "descriptions are provided to help you make your investment decisions." R. 204-212 at 26; R. 204-215 at 17. The SPDs inform participants that the Growth Equity Fund is an investment in companies that "generally are smaller in size than the companies in the Equity Index Fund." R. 204-212 at 28, R. 204-215 at 19. The Equity Index Fund was an "investment in the companies in the Standard & Poor's 500 Stock Index (the S&P 500)." R. 204-212 at 28, R. 204-215 at 19. The Growth Equity Fund thus was a complement to the Equity Index Fund: a way to invest in a different area of the stock market than the S&P 500—small-mid size stocks with greater growth potentials than large corporations. The SPDs do not indicate that the Growth Equity Fund is an investment in active management or the American Century Heritage Investors mutual fund.

Defendants determined what would constitute the Growth Equity Fund and in 1994, decided to have it be an investment in the actively managed American Century Heritage Investors mutual

4

fund. R. 255 at 8–10, *George*, 2011 WL 2784153, *4–5. By 1999, however, Defendants had

determined while managing Kraft's defined benefit plans that they could not reasonably expect

active management to outperform passive management in equity investments, noting "the

challenge of selecting consistently successful active managers" and the "low costs of indexing",

and moved the defined benefit plans to passive indexes for U.S. stock investments. R. 255 at 18,

*George*, 2011 WL 2784153, *10 (*citing* R. 204-133 at 2 (Ex. 16.OO-9); *see* R. 204-133 at 3).

From 2001 through 2008 Defendants repeatedly confirmed "there is a low probability for active

equity management to consistently outperform indexing, net of fees." R. 211 ¶¶ 62–64, 75, 78,

80, 89, 100–01. By Defendants' own admission, then, the prudent alternative to the actively

managed American Century Heritage Investors mutual fund was a passive index of small-mid

cap stocks. The Court noted this in denying summary judgment on this claim.

> Based on, *inter alia*, the Investment Committee's discussions noting the
> "challenges of selecting consistently successful active managers, low costs of
> indexing, performance of indexing in down markets," ... a reasonable jury could
> conclude that, despite the differences between defined contribution and defined
> benefit plans, a prudent fiduciary would have offered indexed (*i.e.,* passive)
> investments rather than actively managed investments as Plan investment options
> in the market segments covered by the Funds.

R. 255 at 33, *George*, 2011 WL 2784153, *18 (quoting R. 204-133 at 2).

It was not until June 30, 2005, that Defendants finally made that prudent decision and

changed the Plan's small-mid cap investment option from the actively managed American

Century Heritage Investors mutual fund to the passively managed Russell Small Cap

Completeness Index. R. 211 ¶¶94–95, 98. At the same time it changed the name of the option

from Growth Equity Fund to US Mid/Small Cap Equity Index Fund. R. 204-193 at 10 (July 2005

Quarterly Update).[3] Defendants also changed the name of the Equity Index Fund to the US Large

---

[3] "Effective Thursday, June 30, 2005 the *Growth Equity* was no longer offered under the Thrift
Plan. It was replaced with a new fund, the *US Mid/Small Cap Equity Index Fund.*"

Cap Equity Index Fund, confirming that the small-mid cap and large cap options in the Plan were complementary. *Id.*; R. 204-193 at 7 (April 2005 Quarterly Update) ("The name is being changed to more accurately describe the investment holdings of this fund and to clearly identify its role relative to the Mid/Small Cap US Equity Index Fund.").

Despite the change in name of the Growth Equity Fund and switch to a passive index, this option remained an investment in the smaller stocks outside the S&P 500 index. As Defendants informed participants, the new Mid/Small Cap US Equity Index Fund was "composed of nearly all of the stocks in the U.S. Equity market that are not already held in the S&P 500", R. 204-193 at 10, just as the Growth Equity Fund was an investment in companies "generally ... smaller in size than the companies in the Equity Index Fund [S&P 500]", R. 204-212 at 28. Both Funds had the same investment objective of "capital growth and dividend income". *See* Exhibit 1 (KRAFTG0006578), Exhibit 2 (KRAFTG0581211). At that time, Defendants then ***automatically*** transferred all participant investments in the Growth Equity Fund to the U.S. Mid/Small Cap Equity Index Fund, further demonstrating that the two Funds were the same style, except the new fund was a passive version of that style. R. 204-193 at 7 ("All existing balances and investment elections in the Growth Equity Fund will be automatically transferred to the new Mid/Small Cap US Equity Index Fund on June 30, 2005."). Whether named the Growth Equity Fund or the Mid/Small Cap US Equity Index Fund, from 2002 (and before) through 2005, this investment option has always been the Plan's sole option for investing in the small-mid cap market outside the Equity Index Fund's S&P 500 index.

Participant investments before and after the change in this option confirm that the participants who invested in the Growth Equity Fund were seeking an investment in small-mid cap stocks and not an investment in active management or the American Century Heritage

Investors mutual fund. Net cash flows in the Growth Equity Fund in the year preceding the change were not significantly different from net cash flows in the Mid/Small Cap US Equity Index Fund in the year following the change. Exhibit 3 ¶¶13–18 (Second Declaration of Steve Pomerantz, Ph.D.). In fact, net cash flows into the Index Fund actually *increased*. *Id.* ¶17. This confirms that participants who invested in the Growth Equity Fund wanted an investment in small-mid cap stocks, for which the Growth Equity Fund and then the U.S. Mid/Small Cap Equity Index Fund were the only options in the Plan.[4] Plaintiff Cathy Dunn's investment actions also confirm that she invested in the Growth Equity Fund because it was a small-mid cap stock investment and not an American Century Heritage Investors mutual fund investment. From 2002 through 2010 she consistently allocated 5% of her Plan contributions to the Growth Equity Fund and the U.S. Mid/Small Cap Equity Index Fund. R. 237 (sealed) (Dunn investment history); *compare id.* at *6 *with id.* at *58.

Nothing supports Defendants' contention that "replacing the Funds with index funds would be against the preferences of participants who desired the risk and return characteristics" of the Growth Equity Fund. R. 285 at 10. The fact that participants actually continued to invest in the small-mid cap stock option after the switch to a passive index shows that contention is baseless. Moreover, if there were any significant difference in the "risk and return characteristics" between the Fund and the Fund, Defendants would not have automatically transferred participant investments from the former to the latter. R. 204-193 at 7. Moreover, Defendants did not indicate there was *any* difference in the "risk and return characteristics" between the Fund and the Index.

---

[4] This also shows the baseless speculation of Defendants' statement that "Analysis of Plan participants' actual investment behavior when the Growth Equity Fund was replaced with the U.S. Mid/Small Cap Equity Index Fund may reveal examples of participants who invested in the actively managed Growth Equity Fund but chose not to invest in the passively managed U.S. Mid/Small Cap Equity Index Fund." R. 285 at 10. If there are any such examples, Defendants have had ample opportunity to present them, but have failed to do so.

The 2001 and 2003 SPDs do not even describe the "risk and return characteristics" of the Growth Equity Fund. R. 204-212 at 28; R. 204-215 at 19. Defendants' Fund Fact Sheets indicate there was no difference in the "risk and return characteristics" of these two investments. *Compare* R. 204-160 at 27 (March 31, 2002) *with* R. 204-165 at 14 (June 30, 2005). The Sheets indicate *both* have "moderate to high risk over the short term because the value of the common stock of the ... companies that make up this Fund may rise or fall based on market conditions." R. 204-160 at 27, R. 204-165 at 14.[5] The Sheets indicate that *both* have "moderate-to-low risk over the long term because the returns (capital gains and dividends) from diversified stock funds have typically beaten inflation." R. 204-160 at 27, R. 204-165 at 14. Thus, "replacing the Funds with the index funds" was not "against the preferences of participants who desired the risk and return characteristics" of the Growth Equity Fund, R. 285 at 10, because the risk and return characteristics of both were the same.

All of this evidence confirms that throughout the class period, Defendants consistently included in the Plan an option to invest in smaller stocks outside the Plan's Equity Index Fund's S&P 500 index and that is what participants sought by investing in the Growth Equity Fund. Defendants' imprudence was in using active management for that option until June 30, 2005, not in providing a small-mid cap stock option. Since Defendants' breach was using active instead of passive management for the small-mid cap stock investment, the prudent alternative must be a passive investment in small-mid cap stocks. Since participants invested in the Growth Equity Fund for its small-mid cap stock strategy, the same participants would have invested in the Fund even had it been a passive index in July 2002. Thus, any loss participants suffered from their underperformance relative to that index was caused by Defendants' imprudent use of the actively

---

[5] At the ellipsis, the Index Fund Sheet refers to "approximately 2,500", R. 204-165 at 14. The Growth Equity Fund omits that phrase. R. 204-160 at 27.

8

managed American Century Heritage Investors mutual fund.

Defendants' arguments against a passive index as the prudent alternative rest upon the erroneous presumption that the prudent alternative was to provide no small-mid cap option at all.[6] Their expert's calculations of damages based on "the next closest investment already in the Plan" and "other funds in the Plan in proportion to their previous investments", R. 285 at 8 (David Ross), likewise presumes the prudent alternative to the actively managed American Century Heritage Investors mutual fund was no small-mid cap investment option in the Plan at all. But that is not what Plaintiffs contend Defendants should have done, nor is it what Defendants did in 2005. Instead, Plaintiffs contend that Defendants should have used a passive index for the Plan's small-mid cap stock investment, just as they did in June 30, 2005, and just as they did for the Plan's large cap stock investment.

From this evidence (and upon a further evidentiary hearing, if needed), the Court can determine that the "proper measure of loss in this case is an alternative passive investment[.]" R. 291 at 14. The Court can also determine that "all of the class members would have invested in [that passive investment] had [it] been offered in the Plan" in place of the Growth Equity Fund, *id.* at 16, because the evidence shows that is what participants did in June 2005 and that they equally would have done so in 2002 because they wanted an investment in small-mid cap stocks.

> **B.** **The Russell Small Cap Completeness Index that Defendants used to replace the Growth Equity Fund's active management in 2005 is a prudent alternative because Defendants could have made that replacement in 2002.**

In deciding on the prudent alternative by which to measure the Plan's losses from Defendants' imprudence (which also will define the participants who were harmed by

---

[6] Indeed, Defendants repeatedly misstate Plaintiffs' claim as being an argument for removal of the Growth Equity Fund altogether. R. 285 at 4 ("should have been removed"), 7 ("should not have been offered"), 8 ("if the challenged Funds were removed").

Defendants' breach for class certification purposes), "the District Court should presume that, but for the breach, the funds would have been invested in the most profitable of the alternatives and that the errant fiduciary bears the burden of proving that the fund would have earned less than this amount." *Dardaganis v. Grace Capital Inc.*, 889 F.2d 1237, 1244 (2d Cir. 1989); *see also Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 301 (3d Cir. 2007). Defendants have the burden of persuading the Court that participant losses were not caused by Defendants' breach of duty. *Martin v. Feilen*, 965 F.2d 660, 671 (8th Cir. 1992) (citing *Leigh v. Engle*, 727 F.2d 113, 138–39 (7th Cir. 1984). Defendants have not, nor can they, demonstrate that participants caused Defendants' breaches. Thus, the measure of damages from Defendants' breach "need not be exact—'it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate.'" *Id*. at 672 (quoting *Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 563, (1931)); *see also Diduck v. Kaszycki & Sons Contractors, Inc*., 974 F.2d 270, 285 (2d Cir. 1992).

While Plaintiffs contend that the Vanguard Mid Cap Index Fund is the "most profitable of the alternatives" (see Part C, *infra*), the Russell Small Cap Completeness Index also is a suitable alternative because it was a prudent passive alternative that Defendants ultimately, but belatedly, selected for the Plan. Defendants chose the Russell Small Cap Completeness Index to be the Plan's small-mid cap investment option on June 30, 2005. R. 204-193 at 7. In fact, Defendants considered only passive alternatives to the American Century Heritage Investors mutual fund, in line with the passive-only investment policy they adopted in 1999. R. 211 at 41 (App. 63 at KRAFTG0015051). Defendants could have made that switch to the Russell Small Cap Completeness Index on July 2, 2002, since that investment has been available since June 1994. Exhibit 4 (Russell Small Cap Completeness Index Strategy, Third Quarter 2003,

KRAFTG0251636). Since participants continued to invest in the Plan's small-mid cap stock option even after Defendants converted it to the Russell Small Cap Completeness Index in 2005, Ex. 3 ¶¶13–18 (Pomerantz), it is reasonable to conclude that participants would have invested in that Index in the same amounts as they invested in the Growth Equity Fund from July 2002 through June 2005. Thus, the Russell Small Cap Completeness Index is proper prudent alternative to calculate participant losses and define which participants were harmed from Defendants' imprudence and are members of Plaintiffs' class. Therefore, Plaintiffs request that the Court use the Russell Small Cap Completeness Index as the prudent alternative in the Growth Equity Fund Class definition.

### C. The Vanguard Mid Cap Index Fund also is a prudent alternative because it was an investment in the S&P 400 index of stocks outside the S&P 500 index.

The Vanguard Mid Cap Index Fund was a publicly traded, low-cost, passive index investment in the S&P MidCap 400 Index, an index of medium-size U.S. companies generally smaller than the companies in the S&P 500 index. Exhibit 5 at 13, B-46 (Vanguard Index Funds Prospectus, Form N-1A, Apr. 28, 2003). The Vanguard Mid Cap Index Fund thus provided the same investment style as the Growth Equity Fund (stocks outside the S&P 500) in a passive index package. It also provided a similar investment style as the Russell Small Cap Completeness Index, which likewise was "composed of nearly all of the stocks in the U.S. Equity market that are not already held in the S&P 500[.]" Exhibit 6 (June 30, 2005 Quarterly Update, KRAFTG0009754). Like the actively managed American Century Heritage Investors mutual fund, the Vanguard Mid Cap Index Fund was a publicly traded mutual fund. Thus, to the extent Defendants prudently concluded that a mutual fund structure was a preferable Plan investment vehicle in 2002, the Vanguard Mid Cap Index Fund provided that vehicle *and*

11

prudent passive management.[7]

The Vanguard Mid Cap Index Fund, then, also is a prudent alternative to the imprudent mutual fund Defendants used for the Growth Equity Fund. In fact, by tracking the S&P 400, S&P's own counterpart to the S&P 500 Index, it was an appropriate counterpart to the Plan's Equity Index Fund investment in the S&P 500 Index. To the extent, then, that the Court does not find the Russell Small Cap Completeness Index to be the proper prudent alternative because of Defendants' use of that Index in 2005, Plaintiffs request that the Court use the Vanguard Mid Cap Index Fund as the prudent alternative.

> **D.** **Because the prudent alternative for the Growth Equity Fund must be determined class-wide at the plan level, class certification of loss and causation issues is not only appropriate, it is necessary under Rule 23(b)(1)(A) and (B).**

Deciding what was the prudent alternative to Defendants' use of the actively managed American Century Heritage Investors mutual fund must be done at the Plan (and thus class) level because Defendants did not and could not make this decision for each individual participant. Defendants chose the investment options in this Plan for *all* participants. No participant had the right or ability to request his or her own personal investment option. No participant wanting to invest in small-mid cap stocks from 2002 to 2005 had any choice as to passive or active management; she had only the choice Defendants made for them. The prudent alternative that Defendants should have used is a determination that must be made for the Plan as a whole and not for each individual participant. *See* 29 U.S.C. §1104(a)(1)(B) ("a fiduciary shall discharge his *duties with respect to a plan* ... with the care, skill, prudence, and diligence under the

---

[7] Defendants contend that daily valuation was an early goal for the Plan and that mutual funds provided daily valuation, among other benefits. *See* R. 255 at 8, *George*, 2011 WL 2784153, *4; R. 204-29 at 4, ¶10. Defendants also acknowledged that Vanguard is a "mutual fund company widely acknowledged as a low cost provider of investment funds for 401(k) plans." Exhibit 7 (KRAFTG0089511).

circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims")(emphasis added).

If individual participants pursued individual actions for their own losses from Defendants' imprudent management of the Growth Equity Fund, each action necessarily would adjudicate what was the prudent alternative to the American Century Heritage Investors mutual fund in the course of determining the participant's loss. However, several individual actions on that common issue could lead to inconsistent adjudications (various courts finding various options to be the prudent alternative) and the initial decisions on that point would as a practical matter affect later decisions. If different courts concluded that different options were the prudent alternative, Defendants would be subjected to inconsistent or varying adjudications establishing incompatible standards of conduct. This is precisely the situation Rule 23(b)(1) addresses. It is precisely to avoid those problems that numerous courts recognize that such claims are "paradigmatic" class actions under Rule 23(b)(1). *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009).

> Because plaintiffs bring their claims on behalf of the Plan, adjudications of the representative plaintiffs' suit would, as a practical matter, be dispositive of the interests of the other participants' claims on behalf of the Plan. Further, adjudication of the claims involves the recovery and distribution of Plan assets on behalf of the Plan rather than determination of personal causes of action brought by individuals. As a result, separate actions by individual plaintiffs would impair the ability of other participants to protect their interests if the suit proceeded outside of a class context.

*Brieger v. Tellabs, Inc.*, 245 F.R.D. 345, 357 (N.D.Ill. 2007).

> When raising a plan-wide claim, a plaintiff is pursuing a claim on behalf of the *entire* plan, which necessarily includes discrete accounts within the plan. Accordingly, if a court entertaining an individual account claim were to reach a different conclusion from a court entertaining a plan-wide claim, the fiduciaries would be left with incompatible orders concerning the same account. For example, if Stanford were successful in his plan-wide claim, but "Participant A"

13

> were unsuccessful when raising the same claims in an individual account action, one court order would require defendants to reimburse Participant A while another court order would foreclose such recovery. Such competing orders lead to incompatible standards of conduct for the defendants.

*Stanford v. Foamex L.P.*, 263 F.R.D. 156, 173 (E.D.Pa. 2009); *see also id.* at 174 (citing similar decisions of "numerous courts"). Cases decided after *Spano* have come to similar conclusions. *Yost v. First Horizon Nat'l Corp.*, 2011 WL 2182262, *13–14 (W.D.Tenn. June 3, 2011); *In re YRC Worldwide, Inc. ERISA Litig.*, 2011 WL 1303367, *8–13 (D.Kan. Apr. 6, 2011).

*Spano* did not reject Rule 23(b)(1) certification of such claims. Instead, *Spano* specifically recognized the possibility of Rule 23(b)(1) certification of such claims.

> Nothing we have said should be understood as ruling out the possibility of class treatment for one or more better-defined and more-targeted classes. Whether, for such a class or classes, the strict requirements of Rule 23(b)(1) can be met will depend on the new class definitions.

*Spano*, 633 F.3d at 588. *Spano* noted that a class that includes participants who were helped by claimed imprudent management as well those who were harmed is not a class of such common interest that "an adjudication of one person's claim 'as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.'" *Id.* (quoting Fed.R.Civ.P. 23(b)(1) (B)). Since Dunn has limited her proposed class to those participants who were harmed by Defendants' imprudent management of the Growth Equity Fund (and provided an objective measure of that harm), she has established the "common interest" that *Spano* requires for Rule 23(b)(1)(B) certification.

In rejecting Dunn's attempt to enforce her Plan's cause of action under 29 U.S.C. §1132(a)(2) through a direct action rather than through a class action, this Court relied on *Fish v. Greatbanc Trust Co.*, 667 F.Supp.2d 949 (N.D. Ill. 2009). R. 291 at 18. In rejecting individual actions on behalf of a plan, Judge Shadur specifically noted that this could result in inconsistent

judgments. *Fish*, 667 F.Supp.2d at 951 n.3. That further reinforces the point that not only must the prudent alternative be determined for the entire Plan and thus for the class, it must be done through a mandatory Rule 23(b)(1) class and not a voluntary Rule 23(b)(3) class. Allowing any participant to opt out and pursue her own claim of imprudence regarding the Growth Equity Fund, even in seeking only her personal portion of the plan's losses, raises the same problems for the plaintiffs and defendants that Rule 23(b)(1) was designed to resolve.[8] *See also Stanford*, 263 F.R.D. at 174 ("the availability of an individual account claim under § 502(a)(2) does not alleviate the concerns cited by the numerous courts that have certified ERISA class actions pursuant to Rule 23(b)(1)(B) in situations where claims on behalf of the Plan are identical to those on behalf of an individual account.").

In light of the fact that the prudent alternative cannot be decided individually for each participant, Defendants' contentions that "participants might prefer different alternatives for different points in time depending on their individual investments" and that participants "may have vastly different opinions about when the Funds should be alleged to have been imprudent", R.285 at 9 (citing Turki), are entirely beside the point. The purpose of Rule 23(b)(1) is to prevent that from happening, both to protect individual participants from the effect of earlier decisions (23(b)(1)(B)) and to protect *Defendants* from inconsistent adjudications (23(b)(1)(A)).[9]

---

[8] Contrary to Judge Shadur's opinion, Rule 23.1 is limited to shareholder derivative actions. *Daily Income Fund Inc. v. Fox*, 464 U.S. 523 (1984); *Kamen v. Kemper Fin. Svcs. Inc.*, 908 F.2d 1338, 1347–50 (7th Cir. 1990), *reversed on other grounds* 500 U.S. 90 (1991); *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1462 (9th Cir. 1995) (ERISA §502(a)(2) claim "clearly does not fall within the terms of Rule 23.1", which "applies only to derivative actions 'brought by one or more *shareholders* or *members* to enforce a right of a *corporation* or of an *unincorporated association.*'") (citing Rule 23.1).

[9] While Defendants have argued that class certification is impossible because it precludes individual actions by each participant, Defendants likely would argue precisely the opposite were they faced with thousands of individual actions seeking thousands of different breach dates and

Defendants' contentions also ignore the fact that Defendants owed their fiduciary duties *to the Plan* and not to individual participants. *See*, *e.g.*, 29 U.S.C. §1104(a)(1) ("a fiduciary shall discharge his duties *with respect to a plan*") (emphasis added); *id.* §1109(a) ("Any person who is a fiduciary *with respect to a plan*") (emphasis added).

Since the prudent alternative to the American Century Heritage Investors mutual fund must be determined at the Plan level and thus for all participants, the losses for each participant will follow from that decision and must be determined by the same class action. The Court's determination that Defendants breached their fiduciary duties by using the American Century Heritage Investors mutual fund for the Growth Equity Fund from 2002 through June 2005 and determination of what was the prudent alternative necessarily determines each participant's loss. That is because each participant's loss is determined by how that participant's investments in the Growth Equity Fund performed under Defendants' imprudent use of the American Century Heritage Investors mutual fund compared to how the same investments would have performed had Defendants used a passive small-mid cap stock index.

As shown above, participants invested in the Growth Equity Fund for the small-mid cap investment style it provided. They continued to invest in the Plan's small-mid cap stock option even after Defendants converted it to a passive index and changed its name. This shows participants would have invested in the prudent alternative from July 2002 through June 2005 in the same way they invested in the Growth Equity Fund during that time. Each class member's loss, then, was caused not by their decision to invest in the Growth Equity Fund, but by Defendants' decision to use active management instead of an index in the Growth Equity Fund. Whatever "unique risk and return preferences, investment goals, and investment time horizons",

---

prudent alternatives and damages calculations, leading to the risk of thousands of conflicting judgments.

R. 285 at 9, there were for each participant from July 2002 through June 2005 were already reflected in their investment choices in that time period. There is no credible basis for contending any participant would have invested *less* in the Plan's small-mid cap option had Defendants prudently invested it in an index in 2002.[10]

This demonstrates that any participant who suffered a loss from Defendants' imprudent management of the Growth Equity Fund suffered that loss because of Defendants' imprudence in using active management instead of an index. Thus, class certification *is* appropriate and necessary for loss and causation issues even after *Spano*. *Cf.* R. 291 at 16.

### E. The facts that lead to the certifiability of the Growth Equity Fund Class apply equally to the Balanced Fund Class.

The same conclusions regarding the prudent alternative to the Growth Equity Fund apply to determining the prudent alternative to the actively managed Balanced Fund. Defendants' SPDs describe the Balanced Fund as "a diversified mix of U.S. and international stocks, U.S. and international investment-grade bonds and investment-grade money market instruments". 2001 SPD at 14 (R. 204-212 at 28); 2003 SPD at 14 (R. 204-215 at 19). The SPDs do not indicate what the Fund was invested in. *Id.* As with the Growth Equity Fund, participants who invested in the Balanced Fund were not seeking to invest in active management or any particular mutual fund, but instead an investment option that provided "a diversified mix of U.S. and international stocks, U.S. and international investment-grade bonds and investment-grade money market instruments".

Defendants controlled what constituted the Balanced Fund during the class period and they chose actively managed mutual funds, which used active management even for its large-cap

---

[10] Defendants have the burden of persuading the Court as to that contention. *Feilen*, 965 F.2d at 671. "Courts do not take kindly to arguments by fiduciaries who have breached their obligations that, if they had not done this, everything would have been the same." *Id.* at 672 (quoting *In re Beck Indus., Inc.*, 605 F.2d 624, 636 (2d Cir. 1979)).

stock investments instead of an S&P 500 index fund.[11] R. 211 ¶¶ 21, 24–25. Defendants, however, knew that "[l]arge cap is the most efficient sector of the market and the ability to add value by active management is very difficult." R. 211 ¶17. For that reason, Defendants used an index fund for the large cap stock Equity Index Fund. It was imprudent, then, to use active management for the Balanced Fund, particularly the large cap stock component of that Fund. R. 255 at 33, *George*, 2011 WL 2784153, *18; R. 291 at 4. The Vanguard Balanced Index Fund was a prudent mutual fund that was available in 2002, indeed as early as 1992, and provided the same "diversified mix of U.S. and international stocks, U.S. and international investment-grade bonds and investment-grade money market instruments" as the Balanced Fund, but through the use of indexes. *See* R. 197-1 ¶66. The Vanguard Balanced Index Fund, then, is a prudent alternative to Defendants' actively managed fund by which to measure participant losses and define class members harmed by Defendants' imprudence.

Plaintiffs do not contend that Defendants should have removed the Balanced Fund; they contend only that Defendants should have used passive indexes for the Fund instead of active management. For all of the reasons that apply to the Growth Equity Fund, determination of whether Defendants imprudently managed the Balanced Fund and what is the prudent alternative to Defendants' actively managed mutual fund are issues that must be determined at the plan and class level for all participants harmed by Defendants' breach, after an evidentiary hearing, if necessary. Determining the prudent alternative will also determine each participant's loss because each participant's loss will be determined by how their investments in the Balanced Fund would have performed had Defendants used the prudent alternative in that Fund. Therefore,

---

[11] In 2002 Defendants invested the Balanced Fund assets in the Deutsche Asset Management-Premier Class Fund. 2002 Fund Fact Sheet, R. 204-160 at 18. In 2003 they invested in the Scudder Asset Management Fund, R. 204-162 at 6, and then the Scudder Lifecycle Long Range Fund, R. 204-162 at 28.

the loss and causation issues in the Balanced Fund claim must be determined at the class level

under Rule 23(b)(1) for the same reasons that apply to the Growth Equity Fund.

## II.    Plaintiffs' classes and representative satisfy the requirements of Rule 23(a) and should be certified under Rule 23(b)(1)(A) or (B).

### A.    Plaintiffs' proposed classes.

#### 1.    The Growth Equity Fund Class.

Plaintiffs seek certification of the following class for their Growth Equity Fund claim:

> 1. All participants or beneficiaries of the Kraft Foods Global, Inc. Thrift Plan No. 125 who invested in the Growth Equity Fund between July 2, 2002 and June 30, 2005, and whose investment underperformed the Russell Small Cap Completeness Index. Excluded from the class are the Defendants and all of their officers and directors (named or unnamed).

Alternatively, Plaintiffs seek certification of this class:

> 2. All participants or beneficiaries of the Kraft Foods Global, Inc. Thrift Plan No. 125 who invested in the Growth Equity Fund between July 2, 2002 and June 30, 2005, and whose investment underperformed the passively managed Vanguard Mid Cap Index Fund. Excluded from the class are the Defendants and all of their officers and directors (named or unnamed).[12]

The class period commences on July 2, 2002 because the Court found that any claim that

Defendants breached their fiduciary duties before that date are time barred.[13] R. 255 at 30,

*George*, 2011 WL 2784153, *16. The class period ends on June 30, 2005 because that is when

the Growth Equity Fund was converted to a prudent index fund. R. 255 at 17, *George*, 2011 WL

2784153, *9. Each definition uses a different prudent alternative to measure losses and define

class members for the reasons stated *supra* at 11–12.

---

[12] If the Court concludes that *Spano*'s statements about separating losers from winners is dictum and is not required in a class definition, *cf. supra* at 1–2, then the Court can certify a single class using the same definitions but excluding the phrase ", and whose investment underperformed the passively managed Russell Small Cap Completeness Index /Vanguard Mid Cap Index Fund."

[13] Despite moving to define the class for this time period at this time, Plaintiffs reserve their right to challenge the Court's decision regarding the application of the six-year statute of limitations on appeal.

Plaintiff Cathy Dunn is the representative of each class because she invested in the Growth Equity Fund during the class period. *See* R. 237 (sealed) at *16. Defendants concede that Dunn's investment "underperformed the passively managed funds plaintiffs advocate" in this case. R. 220 at 9. Plaintiffs' expert, Dr. Steve Pomerantz, also has confirmed from that Dunn suffered losses from Defendants' breach under both prudent alternatives. Ex. 3 ¶12. Dunn relied on Defendants to "pick[] the very best" investment options in the Plan. R. 216 ¶161. She seeks to recover losses to the Plan incurred as a result of Defendants' breach and for injunctive relief to prevent further such breaches. R. 107 ¶81; R. 211 ¶108.[14]

### 2. The Balanced Fund Class.

For their Balanced Fund claim, Plaintiffs seek certification of this class:

> All participants or beneficiaries of the Kraft Foods Global, Inc. Thrift Plan No. 125 who invested in the Balanced Fund between July 2, 2002 and December 31, 2009, and whose investment in the fund underperformed the passively managed Vanguard Balanced Index Fund. Excluded from the class are the Defendants and all of their officers and directors (named or unnamed).[15]

As with the Growth Equity Fund Class, the class period commences on July 2, 2002 because of the Court's summary judgment decision regarding the statute of limitations. The class period ends on December 31, 2009 because that is the last calendar year for which Defendants provided discovery. *See* R. 172 (Sept. 24, 2010 discovery cut off). The Vanguard Balanced Index Fund is a prudent alternative that measures losses and defines class members for the reasons stated *supra* at 17–19.

Plaintiff Cathy Dunn is the representative of that class because she was invested in the Balanced Fund during the class period. R. 237 at *25. As with the Growth Equity Fund,

---

[14] Plaintiffs are not requesting that Gerald George or Timothy Streff be designated as class representatives for either class as this time.
[15] For the reasons stated in n.12, *supra*, the Court could exclude the phrase ", and whose investment in the fund underperformed the passively managed Vanguard Balanced Index Fund."

Defendants concede Dunn's investment in the Balanced Fund "underperformed the passively managed funds plaintiffs advocate" in this case. R. 220 at 9. Dr. Pomerantz confirms Dunn suffered losses from Defendants' breach. Ex. 3 ¶22. As noted above, Dunn relied on Defendants to uphold their fiduciary duties and, as a result of their failure to do so, seeks to recover the Plan's losses resulting from Defendants' breach and to obtain injunctive relief to ensure that the continuing breaches are stopped. R. 107 ¶81; R. 211 ¶108.

### B.     The classes and representative satisfy the elements of Rule 23(a).

#### 1.     Numerosity.

Each class satisfies the numerosity requirement under Fed.R.Civ.P. 23(a)(1). A class of 40 members is presumed sufficiently numerous to satisfy this element. *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969); *George v. Kraft Foods Global, Inc.*, No. 08-3799, 270 F.R.D. 355, 365 (N.D.Ill. 2010) ("*George II*") (quoting *Ringswald v. County of DuPage,* 196 F.R.D. 509, 512 (N.D.Ill. 2000)). Dr. Steve Pomerantz has concluded from Defendants' transaction records that each class includes thousands of participants who underperformed prudent alternatives during the class period. Ex. 3 ¶11, ¶21. Joinder of each of those class members as plaintiffs is impracticable.

#### 2.     Commonality.

"Rule 23(a)(2) does not demand that every member of the class have an identical claim. It is enough that there be one or more common questions of law or fact[.]" *Spano*, 633 F.3d at 585. In a defined contribution plan such as Plaintiffs', "fund participants operate against a common background." *Id.* The assertion a fiduciary "failed to satisfy its fiduciary duties in its selection of investment options, ... describe[s] problems that would operate across the plan rather than at the individual level." *Id.* at 586; *see also id.* at 588–89 ("[T]he package of investment options offered by each plan was the same for every participant. The question whether that package was

21

prudent, in light of ERISA's standards, is a common one"). Due to the nature of ERISA fiduciary breach claims such as those here, "commonality is quite likely to be satisfied[.]" *Schering*, 589 F.3d at 599 n.11; *see also Spano*, 633 F.3d at 586 ("We thus conclude, as did our colleagues in *Schering,* that the class met the commonality requirement of Rule 23(a)(2)").

As noted in Part I, two dominating issues of law and fact that are common to each class are whether Defendants breached their fiduciary duties in using active management and what are prudent alternatives by which to measure participant losses. *See also George II*, 270 F.R.D. at 366 (indicating other common issues). Each common question is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S.Ct. at 2551.

### 3. Typicality.

The "claims ... of the representative parties" must be "typical of the claims ... of the class." Fed.R.Civ.P. 23(a)(3). Claims are typical when they arise "from the same event or practice or course of conduct that gives rise to the claims of other class members and [the] claims are based on the same legal theory." *Arreola v. Godinez*, 546 F.3d 788, 798 (7th Cir. 2008). Typicality "should be determined with reference to the [defendants'] actions, not with respect to particularized defenses [they] might have against certain class members[.]" *CE Design v. King Architectural Metals, Inc.*, 637 F.3d 721, 725 (7th Cir. 2011) (quoting *Wagner v. NutraSweet Co.,* 95 F.3d 527, 534 (7th Cir. 1996)). To satisfy typicality in an ERISA fiduciary breach case such as this, "there must be a congruence between the investments held by the named plaintiff and those held by members of the class he or she wishes to represent." *Spano*, 633 F.3d at 586. Plaintiff Cathy Dunn's investment in each of the challenged funds provides such congruence.

**Growth Equity Fund Class**. This class includes only those participants who invested in the

22

Growth Equity Fund during the class period and who suffered harm from Defendants' imprudent use of active management in that Fund. Because Defendants' fiduciary duties in the management of this Fund (failing to use a passive index until June 30, 2005) were directed to all Plan participants and similarly affected participants whose investments in the Fund underperformed the prudent alternative, any one class member's claim for breach of that duty necessarily will be typical of the class. Since Ms. Dunn invested in the Fund during the class period and underperformed compared to a prudent alternative, her claim is typical of the class.

**Balanced Fund Class**. This class also includes only those participants who invested in the Balanced Fund during the class period and whose investment underperformed the prudent alternative. As with the Growth Equity Fund, because Defendants' fiduciary duties in the management of this Fund (failing to use a passive index) were directed to all Plan participants and similarly affected participants whose investments in the Fund underperformed the prudent alternative, any one class member's claim for breach of that duty necessarily will be typical of the class. Since Ms. Dunn invested in the Fund during the class period and underperformed compared to a prudent alternative, her claim is typical of the class.

Because each class includes only those participants who invested in the Growth Equity Fund or Balanced Fund during the class periods and whose investment underperformed a prudent investment alternative, *Spano*'s concern over the inclusion of "many participants in the past (and who knows about the future) [who] never held a single share in either or both of those funds," does not arise here. *Spano*, 633 F.3d at 586. Ms. Dunn suffered the same kind of harm from the same conduct as the unnamed class members. *Id*. Plan participants who timed their investment in the Growth Equity Fund or the Balanced Fund in such a way as to outperform prudent alternatives are excluded from the class definition, thereby avoiding the class conflicts at issue in

*Spano*.

### 4. Adequacy.

Rule 23(a)(4) requires that the Plaintiff representative of the class and her attorneys will

adequately represent the class. Fed.R.Civ.P. 23(a)(4).

> To determine if a named plaintiff has met the adequacy requirement, the Court
> must ask whether the individual: "(1) has antagonistic or conflicting claims with
> other members of the class; (2) has sufficient interest in the outcome of the case to
> ensure vigorous advocacy; and (3) has counsel that is competent, qualified,
> experienced and able to vigorously conduct the litigation." *Wahl v. Midland
> Credit Mgmt.,* 243 F.R.D. 291, 298 (N.D.Ill. 2007). It is "not difficult" for a
> plaintiff to satisfy her burden in establishing the adequacy requirement. *Id.*

*George II*, 270 F.R.D. at 368; *see also Herkert v. MRC Receivables Corp.*, 254 F.R.D. 344, 351

(N.D.Ill. 2008); *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011). Plaintiff Cathy

Dunn and her attorneys satisfy both aspects of the adequacy requirement.[16]

### a. Plaintiff Cathy Dunn is an adequate class representative.

In many cases, such as this one, "the requirement of typicality merges with the further

requirement that the class representative 'will fairly and adequately protect the interests of the

class.'" *CE Design*, 637 F.3d at 724 (quoting Rule 23(a)(4)). For the same reasons that Cathy

Dunn's claims are typical of the claims of the Growth Equity Fund and Balanced Fund classes,

she is an adequate representative of each class. She "invested in the same funds as the class

members" and thus there is "congruence between the investments held by the named plaintiffs

and those held by the class he or she wishes to represent." *Spano*, 633 F.3d at 586; Ex. 3 ¶12,

¶22.

The focus for adequacy of the representative in *Spano* was whether the class was going to be

represented by "someone who had a conflict of interest[.]" *Id.* at 587. The specific conflict for

---

[16] Plaintiffs previously demonstrated "sufficient interest in the outcome of the case to ensure
vigorous advocacy[.]" *George II*, 270 F.R.D. at 368; R. 147-2 – 147-4 (Plaintiffs' declarations).
Nothing in *Spano* changes that conclusion.

the plan-wide class addressed in *Spano* was the fact that the plan-wide class included members whose investments in the subject funds performed well relative to the alternative and thus "have no complaint about those funds[.]" *Id.* "It is not enough to say that the named plaintiffs want relief for the plan as a whole, if the class is defined so broadly that some members will actually be harmed by that relief." *Id.* Plaintiff Cathy Dunn has no such conflict because the classes are restricted to those participants whose investments in the Funds lost relative to prudent alternatives. Dunn's interests are not antagonistic to any class member. Dunn has the same interest as any class member—recovering Plan losses as a result of Defendants' breach of duty. She has no conflict with unnamed class members.

"Serious challenges to typicality and adequacy must be distinguished from petty issues manufactured by defendants to distract the judge from his or her proper focus under Rule 23(a)(3) and (4) on the interests of the class[.]" *CE Design*, 637 F.3d at 728. Since Defendants concede Cathy Dunn suffered losses in the Growth Equity Fund and Balanced Fund investments, just like the other class members, they cannot seriously challenge her typicality or adequacy. In their motion to vacate, Defendants contended Dunn was an inadequate representative for the Balanced Fund Class because she invested in that Fund "after she filed suit alleging that it was imprudent", R. 220 at 9, but that statement is misleading. Dunn invested in the Balanced Fund on March 15, 2007. R. 237 at *25. This case was filed on July 2, 2008, R. 1, based upon documents produced by these Defendants in *George v. Kraft Foods Global, Inc.,* No. 06-cv-1713 (N.D. Ill. Mag. J. Schenkier) (*George I*). Defendants did not fully disclose their breach of duty until they complied with that court's order to produce unredacted documents on April 4, 2008. Only then did those documents divulge Defendants' rejection of active management and policy to use passive investment instead. *George I* Doc. 114. That April 4, 2008 disclosure of Defendants'

breach of duty came *one year after* Dunn had invested in the Balanced Fund. *George I* Doc. 118. Suggesting that Dunn is inadequate because she invested in the Balanced Fund while Defendants' breach continued to conceal their breach is just the sort of "petty issue" that should be rejected. *CE Design*, 637 F.3d at 728.

Another such petty issue is Defendants' contention that Dunn is an inadequate representative of the Balanced Fund because she continued to be invested in that Fund after the filing of this lawsuit. The Balanced Fund is the only option in the Plan that provides "a diversified mix of U.S. and international stocks, U.S. and international investment-grade bonds and investment-grade money market instruments". 2001 SPD at 14 (R. 204-212 at 28); 2003 SPD at 14 (R. 204-215 at 19). Dunn's investment in the Balanced Fund thus is not a concession that it is prudent; it is the only choice available to participants seeking such a "diversified" investment. This only strengthens Plaintiffs' demand for equitable relief to convert this Fund to a passive index. Without that relief, participants seeking broad diversification will be left to suffer the gross underperformance of an actively managed option that Defendants have long conceded is imprudent.[17] *See* R. 255 at 33, *George*, 2011 WL 2784153, *18.

### b.  Plaintiffs' attorneys are competent and qualified to represent all class members.

This Court already found that "based on their experience in the area of complex ERISA litigation, Plaintiffs' attorneys are 'competent, qualified, and experienced' and will be able to vigorously conduct this litigation." *George II*, 270 F.R.D. at 368. Indeed, *Spano* agreed that

---

[17] Defendants previously argued that anyone who did not invest in their imprudent funds has no standing to bring this action. R. 158 at 9–10. Yet, Defendants also argued that anyone who invested in the imprudent funds cannot bring this action because such investment is a concession of the prudence of the funds. *Id*. at 11–12. Defendants thus have tried to use Rule 23 to bar *anyone* from suing plan fiduciaries over imprudent investment options. That is an abuse of the Rules and should be rejected. *See Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373 (1966) (Rules must be construed to avoid "procedural booby traps" that prevent litigants from "ever having their day in court").

Plaintiffs' attorneys are competent to represent a class of plan participants in that case with similar breach of fiduciary duty allegations. *Spano*, 633 F.3d at 586. Nothing in Plaintiffs' amended classes affects those conclusions.

### C. The classes should be certified under Rule 23(b)(1)(A) or (B).

As noted *supra* at 13, most courts recognize that ERISA fiduciary breach claims are paradigmatic class actions under Rule 23. *Schering*, 589 F.3d at 604 (citing cases); *see also George II*, 270 F.R.D. at 369 (quoting *Schering*, 589 F.3d at 604); *see also id.* at 370 (citing other cases). *Spano* did not reject the certifiability of classes such as Plaintiffs' under Rule 23(b)(1)(B), so long as a court could "find the necessary identity of interest among all class members." *Spano*, 633 F.3d at 588. *Spano* did not rule out "the possibility of class treatment for one or more better-defined and more-targeted classes." *Id.* Plaintiffs have now provided just such better-defined and more-targeted classes, limiting the Growth Equity Fund and Balanced Fund classes to those participants who invested in those funds during the time periods covered in the lawsuit and who suffered losses as a result of the alleged breach of fiduciary duties by Defendants (failing to use passive indexes). These classes therefore have the "congruence" and "identity of interest" required by *Spano* to satisfy Rule 23(b)(1)(B). Accordingly, an adjudication of one class member's claim "as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]" Fed.R.Civ.P. 23(b)(1) (B); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833–34 (1999); Fed.R.Civ.P. 23, Advisory Comm. Notes, 1966 Amend., subdiv. (b)(1)(B), 39 F.R.D. 69, 100–01 (actions "which charge[ ] a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or beneficiaries, and which require[ ] an accounting or like measures to restore the subject of the trust" are classic examples of a Rule 23(b)(1)(B) action). "Rule 23(b)(1)(A) 'takes

in cases where the party is obligated by law to treat the members of the class alike[.]" *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Because Defendants owed the same fiduciary duties to each participant who would pursue an individual adjudication, they are "so positioned that conflicting or varying adjudications in lawsuits with individual members of the class might establish incompatible standards to govern his conduct." 39 F.R.D. at 100. Plaintiffs' classes thus satisfy the requirements of Rule 23(b)(1)(A) and (B).

### D.    Alternatively, the classes should be certified under Rule 23(b)(3).

If the Court finds it necessary to provide participants the right to pursue their own claims for fiduciary breach under different standards than Plaintiffs in this case, and if the Court finds that such individual claims do not raise the problems addressed by Rule 23(b)(1), then the Court should certify Plaintiffs' classes under Rule 23(b)(3) and provide class members the opportunity to opt out of this action. The Court has rejected the possibility of Cathy Dunn enforcing her Plan's right to recover damages from Defendants under 29 U.S.C. § 1109(a) in a direct, individual action under 29 U.S.C. §1132(a)(2). R. 291 at 17–18. If the Court does not certify any class action, then it would force individual participants to endure a long, expensive, and difficult lawsuit over complicated ERISA fiduciary breaches to recover relatively small amounts. Ms. Dunn has only $8,420 – $12,355 in damages in the Growth Equity Fund and $6,509 in damages in the Balanced Fund. Ex. 3 ¶¶ 12, 22. While she is willing to pursue those claims even individually, other participants may not be able to. "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997); *see also Crabill v. Trans Union, L.L.C.,* 259 F.3d 662, 665 (7th Cir. 2001) ("the core function of [the class action] is to enable the litigation of claims too small to warrant the costs of prosecuting a separate suit for each claim"). Certifying a class

action, even under Rule 23(b)(3), will provide participants "economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated", *Amchem*, 521 U.S. at 615 (citation omitted), and enable them to enforce their rights to obtain for their Plan the relief provided by 29 U.S.C. §1109(a).

Rule 23(b)(3) allows a class action if "questions of law or fact common to class members predominate over any questions affecting only individual members, and ... a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). This inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623 (1997); *In re Mexico Money Transfer Litig.,* 267 F.3d 743, 746-47 (7th Cir. 2001). The predominance requirement is easily satisfied for a claim of fiduciary breach in the management of plan investment options. *See Rogers v. Baxter Int'l Inc.,* 2006 WL 794734 at *12 (N.D.Ill. March 22, 2006) (finding predominance and certifying a Rule 23(b)(3) class where the plaintiff claimed that "the defendants breached their fiduciary duties … by virtue of the way they managed or failed to manage the Plan"). The common questions of law and fact in these claims—whether Defendants breached their duties by using active management and what are the prudent alternatives by which to measure participant losses—predominate over any individual questions. Indeed, the only individual questions are how the recovered "losses to the Plans" (29 U.S.C. §1109(a)) are to be divided among the class members, an issue that is minor compared to the common issues and a matter of mechanical, pro-rata division.

Rule 23(b)(3)'s "superiority" requirement asks the Court to consider: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or

29

against class members; (C) the desirability of concentrating litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. Fed.R.Civ.P. 23(b)(3). Since individual participant claims are claims on behalf of the Plan and concern class-wide conduct by the Defendants, individual class members have little interest in prosecuting their own actions (and could choose to do so by opting out). Since this case is far along the litigation process, there is likely no interest in any participant starting her own litigation anew. Concentrating all individual claims over the same breaches and damages is desirable to provide uniformity of adjudications and avoid unbeneficial duplication of expenses and efforts. Since nearly all of the issues in Plaintiffs' claims are common and there are almost no individual issues, there likely are few if any difficulties in managing such a class action. The "class action would achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated" *Amchem*, 521 U.S. at 615, and thus is superior to leaving each individual participant on his or her own for pursuing his or her individual and relatively small share of the Plan's losses from Defendants' breach of fiduciary duties.

## CONCLUSION

For all of these reasons, the Court should certify Plaintiffs' class actions.

Respectfully submitted,

SCHLICHTER, BOGARD & DENTON

 /s/ Troy A. Doles
Jerome J. Schlichter, jschlichter@uselaws.com
Nelson G. Wolff, nwolff@uselaws.com
Troy A. Doles, tdoles@uselaws.com
Jason P. Kelly, jkelly@uselaws.com
120 W. Main Street, Ste. 208
Belleville, IL  62220
100 South Fourth Street, Ste. 900
St. Louis, MO 63102
Tel:  314-621-6115
Fax:  314-621-7151
Lead Counsel

Thomas R. Meites
TRMeites@mmmglaw.com
Meites, Mulder, Mollica & Glink
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
Tel:  312-263-0272
Fax:  312-263-2942
Local Counsel

## CERTIFICATE OF SERVICE

This is to certify that on November 15, 2011, a copy of the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

 /s/ Troy A. Doles